**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **VALORES MUNDIALES, S.L.** and **CONSORCIO ANDINO, S.L.**<br><br>*Plaintiffs and Arbitration Award Creditors*,<br><br>v.<br><br>**BOLIVARIAN REPUBLIC OF VENEZUELA**<br><br>*Defendant and Arbitration Award Debtor*. | No. 1:19-cv-00046-KBJ-RMM |

<u>**PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS OR,**</u>
<u>**IN THE ALTERNATIVE, SUMMARY JUDGMENT AND**</u>
<u>**SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**</u>

Miguel López Forastier
José E. Arvelo
Amanda Tuninetti
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, N.W.
Washington, D.C. 20001

*Counsel for Plaintiffs and Arbitration Award*
*Creditors Valores Mundiales, S.L. and Consorcio*
*Andino, S.L.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 3

I.    The ICSID Arbitration and Award ................................................................. 3

II.   The ICSID Annulment Proceeding ............................................................... 4

III.  This Action .................................................................................................... 6

ARGUMENT .................................................................................................................... 7

I.    Plaintiffs Are Entitled to Recognition and Enforcement of the ICSID Award ................... 7

II.   Defendant Has No Legally Cognizable Defenses to Enforcement. ................................. 10

III.  Post-Judgment Interest Must Accrue at the ICSID Award Rate ...................................... 14

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bayer CropScience AG v. Dow Agrosciences LLC*,
    680 F. App'x 985 (Fed. Cir. 2017) ...................................................................17

*Beer v. Islamic Republic of Iran*,
    789 F. Supp. 2d 14 (D.D.C. 2011) ...................................................................12

*Drasek v. Burwell*,
    121 F. Supp. 3d 143 (D.D.C. 2015) ...................................................................7

*Duke Energy Int'l Peru Invs. v. Republic of Peru*,
    904 F. Supp. 2d 131 (D.D.C. 2012) ...............................................................9, 15

*Enron Corp. and Ponderosa Assets L.P. v. Argentine Republic*,
    No. M-82 (S.D.N.Y. Nov. 20, 2007) ...............................................................16

*Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*,
    582 F.3d 393 (2d Cir. 2009)............................................................................12

*Funnekotter v. Republic of Zimbabwe*,
    09-cv-08168 (S.D.N.Y. Feb. 1, 2010).............................................................15

*Grenada v. Grynberg*,
    11-mc-00045 (S.D.N.Y. Apr. 29, 2011) .........................................................15

*Guaranty Trust Co. v. United States*,
    304 U.S. 126 (1938)........................................................................................13

*Hoteles Condado Beach v. Union De Tronquistas*,
    763 F.2d 34 (1st Cir. 1985) .............................................................................11

*Iran Aircraft Indus. v. Avco Corp.*,
    980 F. 2d 141 (2d. Cir. 1992)..........................................................................11

*United States ex rel. Kessler v. Watkins*,
    163 F.2d 140 (2d Cir. 1947)............................................................................13

*Liberian E. Timber Corp. (LETCO) v. Republic of Liberia*,
    650 F.Supp. 73 (S.D.N.Y. 1986).....................................................................16

*Mathews v. Eldridge*,
    424 U.S. 319 (1976)........................................................................................14

*Micula v. Gov't of Romania*,
  404 F. Supp. 3d 265 (D.D.C. 2019) ................................................................................9, 10

*Miminco, LLC v. Democratic Republic of Congo*,
  79 F. Supp. 3d 213 (D.D.C. 2015) ..........................................................................................16

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
  2015 WL 926011 (S.D.N.Y. Mar. 4, 2015) ...........................................................................15

*\*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
  863 F.3d 96 (2d Cir. 2017)......................................................................................... *passim*

*Mobil Cerro Negro Ltd. v. Bolivarian Republic of Venezuela*,
  87 F. Supp. 3d 573 (S.D.N.Y. 2015).......................................................................................13

*OI European Grp. B.V. v. Bolivarian Republic of Venezuela*,
  2019 WL 2185040 (D.D.C. May 21, 2019)........................................................10, 11, 12, 16

*Parsons & Whittemore Ala. Mach. & Servs. Corp. v. Yeargin Constr. Co.*,
  744 F.2d 1482 (11th Cir. 1984) ..............................................................................................16

*Price v. Socialist People's Libyan Arab Jamahiriya*,
  294 F.3d 82 (D.C. Cir. 2002) ..................................................................................................12

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
  566 U.S. 639 (2012)..................................................................................................................17

*Republic of Iraq v. ABB AG*,
  768 F.3d 145 (2d Cir. 2014).....................................................................................................13

*Schuler v. PricewaterhouseCoopers, LLP*,
  514 F.3d 1365 (D.C. Cir. 2008) ................................................................................................7

*Sempra Energy Int'l v. Argentine Republic*,
  No. M-82 (S.D.N.Y. Nov. 15, 2007) ......................................................................................16

*\*TECO Guatemala Holdings, LLC v. Republic of Guatemala*,
  414 F. Supp. 3d 94 (D.D.C. 2019) ................................................................................. *passim*

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
  2018 WL 6605633 (D.D.C. Dec. 17, 2018).............................................................................9

*Tidewater Investment SRL et al v. Bolivarian Republic of Venezuela*,
  17-cv-01457(TJK) (D.D.C. Dec. 17, 2018) ...........................................................................15

*Tricon Energy v. Vinmar Int'l*,
  718 F.3d 448 (5th Cir. 2013) ..................................................................................................16

*Westinghouse Credit Corp. v. D'Urso*,
    371 F.3d 96 (2d. Cir. 2004).................................................................16

*Whitney v. Robertson*,
    124 U.S. 190 (1888)...........................................................................17

**Statutes**

9 U.S.C. § 10.................................................................................11, 12, 16

*22 U.S.C. § 1650a ................................................................... *passim*

28 U.S.C. § 1330.....................................................................................7

28 U.S.C. § 1605(a) ...............................................................................7

28 U.S.C. § 1961.............................................................................7, 16, 17

**Other Authorities**

Fed. R. Civ. P. 56...............................................................................2, 7

Fed. R. Civ. P. 12(c) ...........................................................................2, 7

U.S. Constitution.................................................................................12

Restatement (Third) of Foreign Relations Law (1987)................................17

Gary B. Born, International Arbitration: Law and Practice (2d ed. 2015) ....................................4

## INTRODUCTION

Well over a year ago, Plaintiffs commenced this action to enforce the pecuniary obligations imposed on Defendant — the Bolivarian Republic of Venezuela — in an arbitration award issued in July 2017 (the "Award") under the Convention on the Settlement of Investment Disputes Between States and Nationals of Other States (the "ICSID Convention"). The pecuniary obligations imposed by arbitral awards issued under the ICSID Convention "shall be enforced" by U.S. courts and given the same full faith and credit as if the award were a final state-court judgment. 22 U.S.C. § 1650a(a). Defenses available to prevent recognition and enforcement of other arbitral awards are not available for awards under the ICSID Convention. *See id.* So long as the court has jurisdiction and the award is authentic, ICSID awards must be recognized and enforced as a matter of law. Because this is the case here, Plaintiffs are entitled to a judgment that recognizes and enforces the Award. Compl. at 8 (ECF No. 1) ("Prayer for Relief").

After defaulting on its obligation to respond to Plaintiffs' complaint and failing to appear in this case for over seven months after being served, Defendant concedes that this Court has jurisdiction and that the Award is authentic. *See* Answer ¶¶ 5–7, 13 (ECF No. 21). It argues, however, that the Award should not be recognized or enforced because doing so would violate due process. *Id.* at 6. This argument is legally and factually baseless, and should be rejected.

The Award became enforceable more than 18 months *before* Juan Guaidó was recognized as the Interim President of Venezuela, and *after* the conclusion of a lengthy arbitration proceeding in which Defendant was duly represented by counsel and had every opportunity to present its case. Yet, Defendant claims that the Award was obtained in violation of due process because representatives of Guaidó's Interim Government failed to displace counsel for Venezuela designated by the regime of Nicolás Maduro — not in the underlying arbitration — but in a post-

- 1 -

Award annulment proceeding that is currently pending.[1]  This in no way demonstrates that the Award was obtained in violation of due process.  But even assuming, *arguendo*, that the Award were so tainted, Defendant's "due process" defense could not defeat judgment in Plaintiffs' favor under the strict statutory command of 22 U.S.C. § 1650a.

Defendant's additional request for the Court to disregard a portion of the pecuniary obligations of the Award — the interest rate applicable until its effective payment — would similarly contravene the statutory requirement to enforce all of the "pecuniary obligations" imposed in that award.  *See* 22 U.S.C. § 1650a.

Plaintiffs have been and continue to be prejudiced by Defendant's dilatory conduct.  The events giving rise to Defendant's liability — measures that have been adversely affecting Plaintiffs' investments in Venezuela since at least 2009 — occurred more than a decade ago.  The Award remains unpaid more than two years after it was issued.  Defendant failed to make a timely appearance in this case, forcing Plaintiffs to seek default judgment, and needlessly prolonging this proceeding and increasing Plaintiffs' costs to prosecute it.[2]  All the while, Defendant's creditors vie for a place on the long list of those attempting to recover against what appears to be a limited pool of assets in the United States.

Since all material facts are undisputed and Defendant lacks any legally cognizable defense, there is no reason to delay judgment in Plaintiff's favor any longer.  Pursuant to Federal Rules of

---

[1] *See* D's Mem. in Opposition to Pls' Mot. for Default Judgment & in Support of Mot. to Set Aside Clerk's Entry of Default, at 10 (ECF No. 20-1) [hereinafter "D's Mem."].

[2] While Defendant has not demonstrated that the default should be set aside and that default judgment should be denied, the relief sought in this motion renders these issues moot.

Civil Procedure 12(c) and 56, as well as Local Rule 7(h), Plaintiffs hereby move for judgment on the pleadings or, in the alternative, summary judgment.

## **STATEMENT OF FACTS**[3]

### I.    The ICSID Arbitration and Award

On May 10, 2013, Plaintiffs commenced an arbitration against Defendant before the International Centre for Settlement of Investment Disputes ("ICSID"), which administers arbitration proceedings under the ICSID Convention.  ICSID Convention, Arts. 1, 25; Award ¶¶ 1, 8 (ECF No. 1-1); PSUMF ¶ 3.  Plaintiffs are two Spanish shareholders of Venezuelan companies dedicated to the production and commercialization of corn and wheat flour, among other products, in Venezuela.  Award ¶¶ 79–80, 82–84 (ECF No. 1-1).  They brought the ICSID arbitration against Defendant because their Venezuelan companies had been adversely affected by an expropriation decree, the imposition of government administrators, and related government measures.  *Id.* ¶¶ 88–120.  A three-member arbitral tribunal was constituted (the "Tribunal"), and the parties engaged in two rounds of briefing, a week-long jurisdictional and merits hearing featuring multiple expert and fact witnesses, and post-hearing briefings.  *Id.* ¶¶ 26, 37–78.

The Tribunal issued its Award in favor of Plaintiffs on July 25, 2017.  *Id.* at 1; PSUMF ¶ 4.  The Tribunal concluded that Defendant's measures against Plaintiffs' companies in Venezuela breached its obligations under the Agreement on Promotion and Reciprocal Protection of Investments between the Kingdom of Spain and the Republic of Venezuela.  *See* Award ¶¶ 544–88 (ECF No. 1-1).  The Tribunal ordered Defendant to pay Plaintiffs (i) compensation in the

---

[3] To the extent the Court considers this motion as one for summary judgment, material facts summarized below are included in the enclosed Plaintiffs' Statement of Undisputed Material Facts ("PSUMF") submitted pursuant to Local Rule 7(h).

amount of $430.4 million, plus compound interest at a rate of Libor plus two percent from January 22, 2013 until the date of payment; and (ii) $5,925,705.14 in partial reimbursement of Plaintiffs' attorneys' fees and costs. *Id.* ¶ 834; PSUMF ¶ 5.

True and certified copies of the Award have been submitted to this Court, *see* ECF. No. 1-1, 16-2, and Defendant does not dispute their authenticity, *see* Answer ¶¶ 13–17 (ECF. No. 21) (referring the Court to Exhibit A of Plaintiffs' Complaint "for a complete and accurate statement of [the Award's] contents"). *See also* PSUMF ¶ 10.

## II.    The ICSID Annulment Proceeding

Under the ICSID Convention, awards are "binding on the parties" and are "not subject to any appeal or to any other remedy except those provided for in th[e] Convention." ICSID Convention, Art. 53(1). Instead of an appeal, a party may request annulment of an ICSID award only in limited circumstances, such as if the tribunal was not properly constituted or "manifestly exceeded its powers." ICSID Convention, Art. 52(1); *see* Gary B. Born, International Arbitration: Law and Practice at 356 (2d ed. 2015) ("An ICSID [Annulment] Committee is not a court of appeal. [ . . . ] [I]t is limited to the specific (and narrow) grounds of annulment set forth in Article 52(1) [of the ICSID Convention] . . . and cannot revise a tribunal's decision even if it believes the merits have been wrongly decided.").

On November 22, 2017, Defendant submitted a request to the ICSID Secretary General for annulment and a stay on enforcement of the Award. PSUMF ¶¶ 6–7; Decision on Stay ¶¶ 2–4 (Ex. A to the enclosed Declaration of Miguel López Forastier ("López Forastier Decl."). ICSID issued an automatic, provisional stay of enforcement pursuant to Rule 54(2) of the ICSID Arbitration Rules, and a three-member *ad hoc* committee was constituted to hear Defendant's annulment request (the "Committee"). PSUMF ¶¶ 7–8; Decision on Stay ¶¶ 5–7. The Committee lifted the stay on enforcement on September 6, 2018, finding no reasons to continue the stay pending its

decision on annulment and noting in particular "the difficulties encountered [by other award creditors] in ensuring compliance with the ICSID awards issued against Venezuela . . . ." Decision on Stay ¶¶ 107–08. The lifting of the stay obligated Defendant to comply with the Award immediately. *See* ICSID Convention, Art. 53. Defendant refused to comply, and that failure forced Plaintiffs to commence this action.

On March 28, 2019, after the Parties had concluded the written phase of the annulment proceeding, the Committee received a letter from José Ignacio Hernández claiming exclusive authority to represent Venezuela in all ICSID proceedings. Proc. Res. No. 2 ¶¶ 1–2 (ECF No. 20-7). The Committee suspended the last phase of the annulment proceeding — the hearing that had been scheduled for May 2019 — to consider Mr. Hernández's letter, and established a briefing schedule on the issue of Venezuela's representation in the proceeding. *Id.* ¶ 3. The Committee invited Defendant's then-counsel, Plaintiffs, and Mr. Hernández to file a submission by May 16, 2019 and a reply by June 27, 2019. *See id.* ¶¶ 7–8. Mr. Hernández failed to submit a reply. *Id.* ¶ 8.

On August 29, 2019, the Committee concluded that Mr. Hernández had failed to carry his burden to show that, under international law, he had become the authorized representative of Venezuela before the Committee. *Id.* ¶¶ 47–50. The Committee highlighted that it was undisputed, including by Mr. Hernández, that Venezuela's representation had been "correctly constituted at the beginning of the annulment proceeding" and that, at least until Mr. Hernández's appointment, "the representation of the Venezuelan State during the annulment proceeding has corresponded to the legitimate exercise of powers of the National Attorney General's Office [of Venezuela]." *Id.* ¶¶ 40, 44.

Contrary to Defendant's allegations (D's Mem. at 1, 7 (ECF No. 20-1)), the record does not show that the Maduro regime "abandoned" the annulment proceeding. On November 11, 2019, the Committee stayed that proceeding "for non-payment of the required advances pursuant to ICSID Administrative and Financial Regulation 14(3)(d) and (e)." *See* ICSID Case No. ARB/13/11, Case Details (Ex. B to López Forastier Decl.).

## III.    This Action

Plaintiffs filed this action on January 8, 2019 to recognize and enforce the pecuniary obligations of the Award. Compl. (ECF No. 1); PSUMF ¶ 10. Service was effected on Defendant through diplomatic means on July 26, 2019, and Defendant's answer was due by September 24, 2019. Cert. of Dipl. Note (ECF No. 10); Second Status Report ¶ 3 (ECF No. 11); PSUMF ¶ 11. Defendant failed to appear and to submit a responsive pleading by the due date, forcing Plaintiffs to move for default judgment on October 24, 2019, after the clerk had entered default. Mot. for Def. Judg. (ECF No. 16); Default Entry (ECF No. 15).

Over four months later, on March 2, 2020, Defendant entered an appearance in this case and filed an answer. *See* ECF No. 17–19, 21. Without seeking leave, Defendant also filed an untimely opposition to Plaintiffs' Motion for Default Judgment. *See* ECF No. 20-1; LCvR 7(b) (requiring opposition briefs to be filed within 14 days after motion); General Order and Guidelines for Civil Cases before Judge Ketanji Brown Jackson, App'x 5(a)(iv) (requiring leave to file out of time).[4] In addition, Defendant moved to vacate the Clerk's entry of default.[5] *See* ECF No. 20.

---

[4] Because the opposition was untimely, Plaintiffs have not filed a reply.

[5] Plaintiffs believe that this issue is moot in light of the relief they seek here but reserve the right to oppose Defendant's motion should the Court decide to consider it on the merits.

## ARGUMENT

Defendant's belated Answer confirms that all material facts relating to Plaintiffs' claim for enforcement of the Award are undisputed and that Defendant lacks a valid defense to that claim. Defendant concedes that the ICSID Award is authentic and that this Court has jurisdiction under 22 U.S.C. § 1650a(b), and 28 U.S.C. §§ 1330(a) and 1605(a)(1), (6). *See* Answer ¶¶ 5–6, 13–17 (ECF No. 21). Defendant's sole asserted defense — that enforcement of the Award would violate due process — finds no support in the law governing U.S. courts' recognition and enforcement of ICSID awards, or in the facts. Defendant's additional request that the Court replace the interest rate on damages set forth in the Award with the post-judgment rate under 28 U.S.C. § 1961 also runs contrary to the requirements of 22 U.S.C. § 1650a: the "pecuniary obligations" of the Award, including the interest it sets, "shall" be enforced.

Plaintiffs are therefore entitled to judgment as a matter of law, and this Court should enter judgment recognizing and enforcing the pecuniary obligations that the Award imposed on Defendant. Judgment on the pleadings under Rule 12(c) is appropriate when the moving party demonstrates "that no material fact is in dispute and that it is entitled to judgment as a matter of law." *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1370 (D.C. Cir. 2008); *see* Fed. R. Civ. P. 12(c). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Drasek v. Burwell*, 121 F. Supp. 3d 143, 152 (D.D.C. 2015) ("The Court's role . . . is not to determine the truth of the matter, but instead to decide only whether there is a genuine issue of material fact for trial.") (internal quotations omitted).

## I. Plaintiffs Are Entitled to Recognition and Enforcement of the ICSID Award.

The ICSID Convention and its enabling statute, 22 U.S.C. § 1650a, govern the recognition and enforcement of awards issued under the ICSID Convention. The ICSID Convention provides

that "[e]ach Contracting State shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." ICSID Convention, Art. 54(1). The United States has been a "Contracting State" since 1966,[6] and Congress codified this treaty obligation into U.S. law under 22 U.S.C. § 1650a. This statute provides in relevant part:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID C]onvention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the [C]onvention.

This framework reflects a central feature of the ICSID Convention: that awards are final and binding, and not subject to any appeal or to any other remedy except those provided for in the Convention. ICSID Convention, Art. 53(1), 52 (enumerating the specific grounds on which a party may request annulment of an award); *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 101 (2d Cir. 2017) ("[A] party dissatisfied with an award may challenge it . . . only through proceedings at [ICSID] and not collaterally in the courts of member states."); *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 100–01 (D.D.C. 2019) (describing the "clearly defined" remedies that are "internal to the ICSID process").

The role of U.S. courts, therefore, is "limited to the 'recognition or enforcement' of an award," *TECO Guatemala*, 414 F. Supp. 3d at 101, where an enforcing court "may do no more

---

[6] *E.g.*, ICSID, List of Contracting States and Other Signatories of the Convention at 5 (as of April 12, 2019), https://icsid.worldbank.org/en/Documents/icsiddocs/List%20of%20Contracting%20States%20and%20Other%20Signatories%20of%20the%20Convention%20-%20Latest.pdf.

than examine the judgment's authenticity and enforce the obligations imposed by the award," *Mobil Cerro Negro*, 863 F.3d at 102. *See also Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 275 (D.D.C. 2019) ("A federal court is 'not permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award.' . . . This limited role 'reflects an expectation [under the Convention] that the courts of a member nation will treat the award as final.'") (citing *Mobil Cerro Negro*, 863 F. 3d at 102, 121).

To recognize and enforce an ICSID award, a court need only make sure (i) that it has subject-matter and personal jurisdiction; (ii) that the award is authentic; and (iii) that its enforcement order is consistent with the award. *TECO Guatemala*, 414 F. Supp. 3d at 101 (citing *Mobil Cerro Negro*, 863 F.3d at 112, 121). Once these elements are established, the language of § 1650a is clear and mandatory: courts *shall* enforce the pecuniary obligations set forth in the award and *shall* give it full faith and credit. 22 U.S.C. § 1650a(a); *see Duke Energy Int'l Peru Invs. v. Republic of Peru*, 904 F. Supp. 2d 131, 132–33 (D.D.C. 2012) (the court is "*required* by statute to give [an ICSID award] full faith and credit and confirm it accordingly") (citing 22 U.S.C. § 1650a) (emphasis in original); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018) ("[T]he language of § 1650a appears to envision no role for this Court beyond ensuring its own jurisdiction over this action and the validity of [petitioner's] entitlement to any unpaid claims under the Award.").

Here, it is undisputed that the Tribunal has subject matter jurisdiction, as well as personal jurisdiction over Defendant. *See* Answer ¶¶ 5–6 (ECF No. 21). It is also undisputed that the Award is a final and authentic award rendered pursuant to the ICSID Convention, *id.* ¶¶ 13–17, and that it is not subject to a stay on enforcement, *id.* ¶ 21, Decision on Stay (ECF No. 1-2). *See also TECO Guatemala*, 414 F. Supp. 3d at 97 ("[e]xcept to the extent that enforcement has been

stayed [within an ICSID proceeding], the tribunal's award remains binding") (internal quotation marks omitted); *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 2019 WL 2185040, at *1 (D.D.C. May 21, 2019) (same).  What is left to comply with the mandate of the ICSID Convention and its enabling statute is for this Court to enter judgment enforcing the pecuniary obligations of the Award.  *See* Compl. at 8 (ECF No. 1) ("Prayer for Relief").

## II.    Defendant Has No Legally Cognizable Defenses to Enforcement.

Defendant's sole asserted defense cannot prevent judgment in Plaintiffs' favor.  According to Defendant, enforcing the Award would violate due process of law.  *See* Answer at 6 (ECF No. 21); D's Mem. at 8 (ECF No. 20-1).  This argument finds no support in any applicable statute or case law and should be rejected for at least four reasons.

*First*, as discussed above, a federal court is obligated by the plain language of 22 U.S.C. § 1650a to recognize and enforce the pecuniary obligations of an ICSID award.  Federal courts have no authority to refuse enforcement on the basis of a due process inquiry into the underlying ICSID proceedings.  Courts have so held in analogous circumstances.  In *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, for example, the court rejected as a matter of law Guatemala's argument that fraud was a defense to enforcement of the ICSID award against it, noting that "[n]othing in the ICSID Convention permits a member-state's courts to vacate an award. . . .  [A] party's remedy lies with internal ICSID mechanisms."  414 F. Supp. 3d at 103. The court emphasized the "limited role" of enforcing courts under the ICSID Convention and described Guatemala's asserted defense as an "attempt to revisit issues decided by the ICSID tribunal and *ad hoc* [annulment] committee [that] is at odds with the purpose of the treaty and the clear terms of the implementing legislation."  *Id.*

This and other rulings underscore the clear rule that U.S. courts are "not permitted to examine an ICSID award's merits."  *Id.* at 97; *accord Micula*, 404 F. Supp. 3d at 275.  "ICSID's

enabling statute makes clear that the Court may not re-examine the propriety of the award." *OI European Grp.*, 2019 WL 2185040, at *4 (D.D.C. May 21, 2019); *see also Mobil Cerro Negro*, 863 F.3d at 118, 121 (an ICSID-award debtor is not permitted to make "substantive challenges to the award" but can challenge "the authenticity of the award presented for enforcement").  Because Defendant's asserted defense would require the Court to exceed its limited statutory role by examining the propriety of the Award, it should be rejected as a matter of law.

*Second*, contrary to Defendant's allegations, defenses to enforcement available to award-debtors under the Federal Arbitration Act ("FAA") are not available to ICSID award-debtors.  The ICSID enabling statute forbids reliance on those defenses by expressly providing that the FAA "shall not apply to enforcement of awards rendered pursuant to the [ICSID C]onvention." 22 U.S.C. § 1650a(a).  The defenses available to challenge enforcement of an award subject to the FAA include those based on due process considerations.  *See* 9 U.S.C. §§ 10(a), 207.  The cases on which Defendant relies, D's Mem at 11 (ECF No. 20-1), fall into this category and are inapposite.  *See Iran Aircraft Indus. v. Avco Corp.*, 980 F. 2d 141, 146 (2d. Cir. 1992) (refusing enforcement pursuant to Article V(1)(b) of the New York Convention where award debtor was denied "the opportunity to present its claim in a meaningful manner"); *Hoteles Condado Beach v. Union De Tronquistas*, 763 F.2d 34, 40–42 (1st Cir. 1985) (vacating award under § 10 of the FAA where the arbitrator was guilty of misconduct in refusing to hear relevant evidence and the parties were denied "a full and fair hearing on the dispute").

As an ICSID award-debtor in this case, Defendant is not entitled to these defenses to enforcement under the FAA.  In cases like this one, courts have uniformly given effect to the command of the ICSID enabling statute and rejected attempts to import FAA standards to the enforcement of ICSID awards.  *See, e.g.*, *TECO Guatemala*, 414 F. Supp. 3d at 101 ("By placing

ICSID awards beyond the scope of the FAA, Congress rendered these grounds of attack unavailable to ICSID award-debtors in federal court enforcement proceedings.") (internal quotations omitted); *accord OI European Grp.*, 2019 WL 2185040, at *4; *Mobil Cerro Negro*, 863 F.3d at 120–21. As Senator Fulbright put it when introducing the ICSID enabling statute:

> The Federal Arbitration Act permits the courts to vacate an arbitration award on grounds of corruption, fraud, partiality, misconduct, or other prejudicial conduct of an arbitrator, or where the arbitrators exceed their power. Under Article 52 of the [ICSID] Convention such challenges to an award may be raised only through the annulment proceedings provide for in the Convention. *To permit those issues to be examined by the courts at the enforcement stage would be contrary to the provisions of the Convention.*

112 Cong. Rec. 13148–13149 (1966) (emphasis added). Allegations that the ICSID proceedings did not comply with due process are therefore immaterial to this Court's recognition and enforcement obligations under 22 U.S.C. § 1650a.

*Third*, Defendant's argument that an ICSID award must "satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law" (D's Mem. at 9 (ECF No. 20-1)) is equally unsupported by law. This case arises under a federal statute and does not implicate the Fourteenth Amendment. *Beer v. Islamic Republic of Iran*, 789 F. Supp. 2d 14, 20 (D.D.C. 2011) (quoting *SEC v. Lines Overseas Mgmt., Ltd.*, 2007 WL 581909, at *2 (D.D.C. Feb. 21, 2007) ("It is well established that when, as here, a federal statute provides the basis for jurisdiction, the constitutional limits of due process derive from the Fifth, rather than the Fourteenth, Amendment.")). In any event, foreign states are not "persons" protected by the due process clauses of the U.S. Constitution. *Price v. Socialist People's Libyan Arab Jamahiriya*, 294 F.3d 82, 96 (D.C. Cir. 2002); *Frontera Res. Azerbaijan Corp. v. State Oil Co. of Azerbaijan Republic*, 582 F.3d 393, 399 (2d Cir. 2009) (following *Price*).

- 12 -

Moreover, case law on enforcement of ICSID awards confirms that the limited exceptions to the Constitution's requirement of full faith and credit do not apply here. Under the full faith and credit doctrine, a "recognizing" court need not enforce the "rendering" court's underlying judgment only if the rendering court would itself decline to enforce that judgment. *See TECO Guatemala*, 414 F. Supp. 3d at 103. So long as ICSID treats the award as binding — as is the case here — "so must the federal district court." *Id.* Put otherwise, the exceptions to the full faith and credit doctrine "have no bearing in the context of an ICSID award because, under the ICSID Convention, an ICSID award necessarily reflects consent by both parties to ICSID's jurisdiction, follows a merits arbitration, represents a final judgment not subject to substantive challenge within the courts of a contracting state, and equates to a judgment entered by a state's highest court." *Mobil Cerro Negro Ltd. v. Bolivarian Republic of Venezuela*, 87 F. Supp. 3d 573, 598 n.32 (S.D.N.Y. 2015), *rev'd on other grounds*, 863 F.3d 96 (2d Cir. 2017).

*Finally*, the political situation in Venezuela is immaterial to whether the Award is entitled to enforcement pursuant to the ICSID Convention and its enabling statute. "[T]he obligations of a foreign state are unimpaired by a change in that state's government." *Republic of Iraq v. ABB AG*, 768 F.3d 145, 164 (2d Cir. 2014); *see also Guaranty Trust Co. v. United States*, 304 U.S. 126, 137 (1938) ("[T]he rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent it."); *United States ex rel. Kessler v. Watkins*, 163 F.2d 140, 143 (2d Cir. 1947) (though a foreign government changes, "the nation remains, with rights and obligations unimpaired"). Defendant's rights and obligations stemming from the ICSID proceeding that Plaintiffs initiated back in 2013, including the pecuniary obligations of the Award, flow to Defendant as a state, without regard to its disputing interim and de facto governments.

There is no dispute that Defendant was properly represented by counsel legitimately authorized to act on its behalf in the arbitration proceeding that resulted in the Award and in all critical stages of the annulment proceeding.  *See* Proc. Res. No. 2 ¶¶ 40, 44 (ECF No. 20-7) (it was undisputed that Venezuela's representation had been "correctly constituted at the beginning of the annulment proceeding" and that at least until Mr. Hernández's appointment, "the representation of the Venezuelan State during the annulment proceeding has corresponded to the legitimate exercise of powers of the National Attorney General's Office").  And, even if Defendant believes the Committee wrongly decided the issue of representation, there is no due process violation where the Committee provided the representative of Guaidó's Interim Government a full and fair opportunity to be heard, having gone so far as to suspend the scheduled hearing to allow all parties to brief the issue of Defendant's representation (an opportunity that Mr. Hernández did not fully pursue).  *Id.* ¶¶ 3, 8; *see Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").

Defendant's sole asserted defense to enforcement is thus legally and factually unfounded. It reflects an improper effort to relitigate the underlying ICSID proceedings in this Court, in clear contravention of the ICSID Convention and its enabling statute, and contrary to numerous precedents of this and other federal courts.  The Court should decline this invitation and enter judgment for Plaintiffs without further delay.

### III.    Post-Judgment Interest Must Accrue at the ICSID Award Rate.

The ICSID Convention and enabling statute require U.S. courts to give full effect to the pecuniary obligations set forth in an ICSID award.  22 U.S.C. § 1650a(a); ICSID Convention, Art. 53(1).  These obligations include interest applied to the principal compensation awarded by ICSID tribunals.  Here, the Award expressly provides that Defendant "shall pay compound interest at

Libor + 2% rate from January 22, 2013 until the date of payment."  Award ¶ 834 (ECF No. 1-1).

Altering this holding would effectively modify the pecuniary obligations of the Award.

Pursuant to 22 U.S.C. §1650a, "[t]he pecuniary obligations imposed by [an ICSID] award *shall be enforced*." (emphasis added).  Accordingly, where an award "expressly directs" that a given interest rate run "until payment," applying a different interest rate  "asks the Court to modify the terms of the ICSID panel's Award," which is "flatly precluded by the principles governing recognition of ICSID awards."  *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 2015 WL 926011, at *1–2 (S.D.N.Y. Mar. 4, 2015).  "Any other reading of the Court's obligations would flout the plain language of the enabling statute." *Id.*; *see also Duke Energy*, 904 F. Supp. 2d at 132–34 (if "the ICSID Award is sufficiently clear for this Court to determine the applicable interest rate . . . this Court is *required* by statute to . . .  confirm it accordingly.").  In other words, "the Tribunal's ruling [on interest] is binding and conclusive[]." *Duke Energy*, 904 F. Supp. 2d at 134.

Courts enforcing ICSID awards therefore regularly order post-judgment interest to be paid according to the rate specified in the award. *See, e.g.*, *Tidewater Investment SRL et al v. Bolivarian Republic of Venezuela*, 17-cv-01457(TJK) (D.D.C. Dec. 17, 2018) (ECF No. 20) (entering judgment for plaintiffs, "plus interest accruing at the rate of 4.5% per annum . . . to the date of payment"); *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 2015 WL 926011 (S.D.N.Y. Mar. 4, 2015); *Grenada v. Grynberg*, 11-mc-00045 (S.D.N.Y. Apr. 29, 2011) (ECF No. 3) (ordering "post-Award interest as provided in the [ICSID] Award at a rate of 3.25% [ . . . ] continuing until payment in full of the Award"); *Funnekotter v. Republic of Zimbabw*e, 09-cv-08168 (S.D.N.Y. Feb. 1, 2010) (ECF No. 11) ("In accordance with . . . the [ICSID] Award, Petitioners are awarded 10% interest compounded every six months . . . until full payment of those

amounts."); *Liberian E. Timber Corp. (LETCO) v. Republic of Liberia*, 650 F.Supp. 73, 75 (S.D.N.Y. 1986) (the court entered judgment for the full amount of the award, "including interest, based upon and as specified in the award issued by the ICSID arbitration panel").

Defendant's argument that post-judgment interest should accrue at the rate set forth in 28 U.S.C. § 1961 is contrary to this authority and dependent on inapposite comparisons to enforcement of arbitral awards under the FAA.[7]  Courts enforcing arbitral awards under the FAA have applied the post-judgment interest rate under § 1961 because they have found that it is required by the terms of the FAA.  *See Parsons & Whittemore Ala. Mach. & Servs. Corp. v. Yeargin Constr. Co.*, 744 F.2d 1482, 1484 (11th Cir. 1984) (per curiam) ("9 U.S.C. § 13 . . . provides that a judgment entered by a federal court confirming, modifying, or correcting an arbitration award 'shall [ . . . ] be subject to all provisions of law relating to[] a judgment in an action.'"); *see also Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–02 (2d. Cir. 2004) (applying § 1961 rate to arbitral award after confirmation under the FAA); *Tricon Energy v. Vinmar Int'l*, 718 F.3d 448, 459–60 (5th Cir. 2013) (applying § 1961 rate to arbitral award confirmed under the New York Convention, Chapter 2 of the FAA).  By contrast, when they recognize and enforce ICSID arbitral awards, courts are directed by §1650a not to apply the FAA

---

[7] Defendant identifies a single case, *OI European Grp. B.V. v. Bolivarian Republic of Venezuela*, 2019 WL 2185040 (D.D.C. May 21, 2019), where the district court displaced an ICSID tribunal's awarded interest rate with the § 1961 rate.  D's Mem. at 16 (ECF No. 20-1).  Plaintiffs are not aware of any other case that has followed this approach, which should be rejected for the reasons discussed herein.  Other courts have applied the § 1961 rate to judgments enforcing ICSID awards only where the award itself did not provide for any post-award interest.  *See Miminco, LLC v. Democratic Republic of Congo*, 79 F. Supp. 3d 213, 217–18, 220 (D.D.C. 2015); *Enron Corp. and Ponderosa Assets L.P. v. Argentine Republic*, No. M-82 (S.D.N.Y. Nov. 20, 2007) (*available at* Case 1:14-cv-08163-PAE, ECF No. 45-15, filed Feb 27, 2015); *Sempra Energy Int'l v. Argentine Republic*, No. M-82 (S.D.N.Y. Nov. 15, 2007) (*available at* Case 1:14-cv-08163-PAE, ECF No. 45-17, filed Feb. 27, 2015).

and to enforce all "pecuniary obligations" of such awards.  *See Bayer CropScience AG v. Dow Agrosciences LLC*, 680 F. App'x 985, 1001 (Fed. Cir. 2017) (enforcing the § 1961 rate on an award enforced under the New York Convention, but distinguishing ICSID awards and noting that "the Federal Arbitration Act's enforcement provisions do not apply to the ICSID Convention").

Here, the express terms of the Award impose on Defendant the obligation to pay Plaintiffs interest at a rate of Libor plus two percent until full satisfaction of the Award, and the Court is required by 22 U.S.C. § 1650a to enforce that pecuniary obligation.  To the extent there is any conflict between the requirements of § 1650a and 28 U.S.C. § 1961, § 1650a must control.  *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (it is "a commonplace of statutory construction that the specific governs the general").  This is particularly the case where, as here, the later-in-time statute implements a U.S. treaty obligation.  *See Whitney v. Robertson*, 124 U.S. 190, 194 (1888) (If a treaty and a statute are inconsistent, "the one last in date will control the other . . . ."); Restatement (Third) of Foreign Relations Law § 114 (1987) ("Where fairly possible, a United States statute is to be construed so as not to conflict with international law or with an international agreement of the United States.").

The United States has strong interests in ensuring the proper interpretation and implementation of the ICSID Convention, and it has cautioned courts that applying the § 1961 rate to ICSID awards would put the United States in conflict with its treaty obligations.  *See* Brief for the U.S. Government as Amicus Curiae, *Mobil Cerro Negro*, 863 F.3d 96 (15-cv-00707) 2016 WL 1319293, 21–22 ("Modification of the 'pecuniary obligations imposed by [the] award' is beyond the authority granted to district courts by the ICSID enabling statute. . . .  The district court, *like many other courts enforcing ICSID awards*, correctly applied the rate dictated by the arbitral

tribunal, and not the § 1961 rate.") (emphasis added).  If accepted, Venezuela's position would place the United States in violation of its obligations under the ICSID Convention.

The Award should therefore be enforced in a judgment that adopts all of the pecuniary obligations imposed therein, including the interest rate applicable to the compensation Defendant owes to Plaintiffs.

## <u>CONCLUSION</u>

The law governing U.S. courts' recognition and enforcement of ICSID awards is clear.  To recognize an ICSID award, a court need only ensure (i) that it has subject-matter and personal jurisdiction; (ii) that the award is authentic; and (iii) that its enforcement order is consistent with the award.  Here, Defendant has conceded this Court's jurisdiction and the authenticity of the Award, Defendant has no legally cognizable defenses to recognition and enforcement, and judgement in Plaintiff's favor would be fully consistent with the mandate of the Award.  Because there are no material facts in dispute, Plaintiffs respectfully request that the Court enter judgment for Plaintiffs and against Defendant as set forth in the Complaint.

Dated: March 16, 2020                        Respectfully submitted,

/s/ Miguel López Forastier
Miguel López Forastier
D.C. Bar No. 464654
mlopezforastier@cov.com
José E. Arvelo
D.C. Bar No. 981920
jarvelo@cov.com
Amanda Tuninetti
D.C. Bar No. 1521002
atuninetti@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, N.W.
Washington, D.C.  20001
Tel:  202-662-5464
Fax:  202-778-5185

*Counsel for Plaintiffs and Arbitration*
*Award Creditors Valores Mundiales,*
*S.L. and Consorcio Andino, S.L.*
