**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**VALORES MUNDIALES, S.L.** and
**CONSORCIO ANDINO, S.L.**

*Plaintiffs and Arbitration Award Creditors*,

v.

**BOLIVARIAN REPUBLIC OF VENEZUELA**

*Defendant and Arbitration Award Debtor.*

---

No. 1:19-cv-00046-KBJ-RMM

<u>**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS OR, IN THE ALTERNATIVE, SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

Miguel López Forastier
José E. Arvelo
Amanda Tuninetti
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, N.W.
Washington, D.C. 20001

*Counsel for Plaintiffs and Arbitration Award
Creditors Valores Mundiales, S.L. and Consorcio
Andino, S.L.*

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 3

I.     Plaintiffs Are Entitled to Enforcement of the Award as a Matter of Law. ......................... 3

II.    Post-Judgment Interest Must Accrue at the Rate Imposed in the ICSID Award. ............. 15

CONCLUSION ............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. McCurry*,
    449 U.S. 90 (1980)................................................................................................10

*District of Columbia Court of Appeals v. Feldman*,
    460 U.S. 462 (1983)..............................................................................................10

*Factor v. Laubenheimer*,
    290 U.S. 276 (1933)..............................................................................................18

*Guaranty Trust Co. of N.Y. v. United States*,
    304 U.S. 126 (1938)..........................................................................................12, 13

*Johnson v. De Grandy*,
    512 U.S. 997 (1994)..............................................................................................10

*United States ex rel. Kessler v. Watkins*,
    163 F.2d 140 (2d Cir. 1947)..................................................................................14

*Micula v. Gov't of Romania*,
    104 F. Supp. 3d 42 (D.D.C. 2015) ..........................................................................8

*Micula v. Gov't of Romania*,
    404 F. Supp. 3d 265 (D.D.C. 2019) ............................................................5, 6, 7, 8

*Miminco, LLC v. Democratic Republic of Congo*,
    79 F. Supp. 3d 213 (D.D.C. 2015) ........................................................................15

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
    2015 WL 926011 (S.D.N.Y. Mar. 4, 2015) ................................................... *passim*

*Mobil Cerro Negro, Ltd. v. v. Bolivarian Republic of Venezuela*,
    863 F.3d 96 (2d Cir. 2017)............................................................................ *passim*

*OI European Grp. v. Bolivarian Republic of Venezuela*,
    2019 WL 2185040 (D.D.C. May 21, 2019).................................................... *passim*

*Parsons & Whittemore Ala. Mach. & Servs. Corp. v. Yeargin Constr. Co.*,
    744 F.2d 1482 (11th Cir. 1984) ............................................................................17

*Pennzoil Co. v. Texaco, Inc.*,
    481 U.S. 1 (1987)..................................................................................................11

*Republic of Iraq v. ABB AG*,
    768 F.3d 145 (2d Cir. 2014)................................................................12

*Rooker v. Fidelity Trust Co.*,
    263 U.S. 413 (1923)..................................................................10

\*TECO Guatemala Holdings, LLC v. Republic of Guatemala,
    414 F. Supp. 3d 94 (D.D.C. 2019) ................................. *passim*

*Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*,
    2018 WL 6605633 (D.D.C. Dec. 17, 2018)..............................................7

*Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*,
    718 F.3d 448 (5th Cir. 2013) ................................................................17

*Westinghouse Credit Corp. v. D'Urso*,
    371 F.3d 96 (2d Cir. 2004)................................................................17

## Statutes

\*22 U.S.C. § 1650a ..................................................................... *passim*

28 U.S.C. § 1961 ................................................................14, 15, 17, 18

Federal Arbitration Act ................................................................6, 9, 17

## Other Authorities

Restatement (Third) of Foreign Relations Law (1987)................................14

Christoph H. Schreuer et al., The ICSID Convention: A Commentary (2d ed.
    2009) ..................................................................4, 5, 18

Roger P. Alford, *Federal Courts, International Tribunals, and the Continuum of Deference*, 43 Va. J. Int'l L. 675 (2003) ..................................................4, 6, 11, 19

**INTRODUCTION**

Defendant's brief opposing judgment in Plaintiffs' favor confirms that material facts are undisputed and that it lacks a valid defense to enforcement of the ICSID award ("Award") here.[1] That Award is indisputably final and binding.  Defendant, a sovereign state, has conceded that no sovereign immunity precludes jurisdiction here.   And the applicable statute is unambiguous, though not in the way Defendant claims.  Under that statute, an ICSID award creates a right arising under a treaty of the United States, and courts "shall enforce the pecuniary obligations" of that award and give them the same full faith and credit as if the award were a final judgment of a state court.  22 U.S.C. § 1650a(a).

To avoid enforcement of the Award, Defendant offers a selective and distorted reading of § 1650a that transforms its pro-enforcement mandate into a shield against enforcement that no court has ever recognized.  Defendant insists that, because ICSID awards must be given full faith and credit as if they were state-court judgments, enforcement of the pecuniary obligations they impose may be challenged in U.S. courts on due process grounds.  But this argument is belied by the statutory text, which unconditionally states that those obligations "*shall* be enforced" and additionally requires that they be given the same deference as "*final*" state-court judgments. 22 U.S.C. § 1650a(a) (emphasis added).

Defendant's reading of the statute is also contrary to the case law on the enforcement of ICSID awards, including the cases it cites and misrepresents in its brief.  As those cases make clear, "courts are . . . not permitted to examine an ICSID award's merits;" instead, "they may do

---

[1] *See* D's Mem. of Points and Authorities in Support of its Cross-Mot. for Summary Judgment and in Opposition to Plaintiffs' Mot. for Judgment on the Pleadings or, in the Alternative, Summary Judgment (ECF No. 25-1) [hereinafter "D's Mem."].

no more than examine the judgment's authenticity and enforce the obligations imposed in the award" so long as there is no immunity from jurisdiction.  *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 102 (2d Cir. 2017).  Since the Award's authenticity and jurisdiction are undisputed, the pecuniary obligations it imposes must be enforced.

Even assuming, *arguendo*, that the Court may consider grounds of attack against an ICSID award under the "full faith and credit" doctrine, Defendant's sole purported defense still fails. Under longstanding Supreme Court jurisprudence, federal courts are expressly barred from reviewing state court judgments — just as under § 1650a, they are barred from reviewing ICSID awards.

In any event, Defendant has identified no due process violation.  Plaintiffs seek enforcement of the Award against the Award-debtor: the Bolivarian Republic of Venezuela ("Venezuela" or "Defendant").  As a party to the underlying ICSID proceedings, Venezuela has not been denied any opportunity to be heard in the annulment proceeding that Venezuela continues to prosecute before the ICSID annulment committee (the "Annulment Committee").  U.S. law on recognition of the Interim Government does not change this fact and is immaterial.  Venezuela remains one sovereign State, and the legal rights and obligations of a sovereign State do not change with its government.

Put simply, Defendant has presented no legally or factually cognizable defense to enforcement of the Award.  All material facts remain undisputed, and Plaintiffs are entitled to judgment as a matter of law.

The judgment must reflect all the pecuniary obligations imposed by the Award, including the interest awarded by the ICSID tribunal "until the date of payment."  Award ¶ 834 (ECF No. 1-1).  This Court should decline Defendant's invitation to replace this pecuniary obligation

with a different one, thus defying the clear statutory mandate of § 1650a and the nearly unanimous practice of courts enforcing ICSID awards.   The sole case on which Defendant relies is unpersuasive and an outlier.  Post-judgment interest must accrue at the rate provided in the Award.

## ARGUMENT

## I.     Plaintiffs Are Entitled to Enforcement of the Award as a Matter of Law.

Defendant's sole asserted defense against enforcement of the pecuniary obligations of the Award — that doing so would violate due process — is untenable under the text and purposes of the ICSID Convention and its enabling statute, and finds no support in any case law on the enforcement of ICSID awards in U.S. courts.  Even if the "full faith and credit" language of the ICSID enabling statute opened the door to substantive defenses to enforcement (it does not), Defendant could not escape enforcement of the Award here.  Under basic principles of federal law, federal courts may not review state court judgments for alleged due process violations.  And regardless, there was no such violation in the pending annulment proceeding, where Venezuela — the sole *party* prosecuting that proceeding (not the "Interim Government" or the "Maduro government") — has never been denied its right to be heard.

*The ICSID Convention and its enabling statute require enforcement of the pecuniary obligations imposed by the Award and preclude Defendant's novel defense to enforcement*.  No court has done what Defendant asks the Court to do here:  refuse enforcement of a concededly authentic ICSID award in a case where there is jurisdiction.[2]  With good reason:  the text of the

---

[2] *See* Plaintiffs' Motion for Judgment on the Pleadings or, in the Alternative, Summary Judgment and Supporting Memorandum of Points and Authorities at 7 (ECF No. 24) [hereinafter "Pls.' Mot.].

ICSID Convention and its enabling statute unambiguously mandate enforcement in these circumstances.

Under Article 53 of the ICSID Convention, Venezuela (as a State party to the Convention) committed not to challenge an ICSID award in court.  ICSID Convention, Art. 53(1) (an ICSID "award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention").  And, pursuant to Article 54, each State party to the Convention (including the United States) "shall recognize an award rendered pursuant to this Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." *Id.*, Art. 54(1).

Under the plain meaning of this text, a State is required not just to recognize the binding nature of ICSID awards but also to give their pecuniary obligations the same force as a final domestic judgment that is not subject to appeal or further review.  Merriam-Webster Dictionary, https://www.merriam-webster.com (last accessed Apr. 6, 2020) (defining "enforce" as to "give force to" something); *id.* (defining "final" as "not to be altered or undone"); *see also* Christoph H. Schreuer et al., The ICSID Convention: A Commentary at 1142 (2d ed. 2009) ("A final court decision is one against which no ordinary remedy is available.  A judgment by a lower court that is subject to appeal or another form of review would not qualify as 'final.'"); Roger P. Alford, *Federal Courts, International Tribunals, and the Continuum of Deference*, 43 Va. J. Int'l L. 675, 699 (2003) [hereinafter "Alford"] ("[D]irect recognition and enforcement of the [ICSID] decision is guaranteed without reservation.  No other model comes close to this degree of deference.  Other models posit direct recognition and enforcement, but they are subject to significant reservations.").

As this text makes clear, one of the purposes of the ICSID Convention was to ensure and facilitate enforcement of ICSID awards.  Under it, the courts of State parties are "not permitted to

examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award." *Mobil Cerro Negro*, 863 F.3d at 102; *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 97 (D.D.C. 2019); *Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 275 (D.D.C. 2019); *see also* Schreuer, The ICSID Convention at 1139 (observing that, pursuant to Article 54, courts may not "examine the fairness and propriety of the proceedings before the ICSID tribunal"). Instead, "under the Convention's terms, [courts of State parties] may do no more than examine the judgment's authenticity and enforce the obligations imposed by the award," so long as those courts have jurisdiction. *Mobil*, 863 F.3d at 102; *Micula*, 404 F. Supp. 3d at 275; *accord TECO Guatemala*, 414 F. Supp. 3d at 101 ("[T]he Court's role in enforcing an ICSID arbitral award is therefore exceptionally limited . . . ."); *see* Pls.' Mot. at 7 (ECF No. 24).

This core obligation of the ICSID Convention was codified in 22 U.S.C. § 1650a(a). While Defendant selectively relies on a portion of this provision, its full text plainly embodies the same pro-enforcement character of Articles 53 and 54(1) of the ICSID Convention:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID C]onvention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the [C]onvention.

22 U.S.C. § 1650a(a).

The statute thus begins by recognizing that an ICSID award "create[s] a right arising under a treaty of the United States" and then mandates that this right be given effect. *Id.* In language that Defendant glosses over, the statute makes clear that the "pecuniary obligations imposed by [the ICSID] award *shall be enforced*," without exception. *Id.* (emphasis added). It then adds —

using the conjunction "and" — language that mirrors Article 54(1) of the ICSID Convention: those pecuniary obligations also "shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." *Id.* This means that the pecuniary obligations of an ICSID award must be given the same force and effect as a final — that is, unappealable and unreviewable — state court judgment. *See Micula*, 404 F. Supp. 3d at 275–76 (quoting *Mobil Cerro Negro*, 863 F.3d at 102) (explaining that the courts' role under § 1650a "is limited" and "reflects an expectation [under the Convention] that the courts of a member nation will treat the award as final"); Alford, at 691–92 (observing that the "full faith and credit obligation . . . promot[es] the finality of a tribunal award in all signatory states").

Defendant turns this statute on its head by contending that its reference to "full faith and credit" implies that courts may *deny* enforcement of an ICSID award. According to Defendant, federal courts do not grant state court judgments full faith and credit if the judgment debtor's due process rights were violated in the state court proceeding. D's Mem. at 12. Even if that were true (it is not, as discussed below), Defendant's attempt to shoe-horn this purported defense to the enforcement of state court judgments into § 1650a fails because it is contrary to the statutory text. Section 1650a unambiguously requires *both* enforcement of an ICSID award ("[t]he pecuniary obligations imposed by [the ICSID] award shall be enforced") *and* giving such an award the full faith and credit given to a *final* state court judgment. 22 U.S.C. § 1650a(a).

Defendant's argument is also at odds with the statute's express exclusion of due process-related and other defenses available against enforcement of non-ICSID awards. *See* 22 U.S.C. § 1650a(a) ("The Federal Arbitration Act (9 U.S.C. 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the [C]onvention."); *Mobil Cerro Negro*, 863 F.3d at 120–21; *TECO*

*Guatemala*, 414 F. Supp. 3d at 101.   Its novel interpretation of § 1650a(a) as a shield to enforcement should be rejected.

   ***Case law on the enforcement of ICSID awards lends no support for Defendant's position.***   U.S. courts enforcing ICSID awards have uniformly interpreted § 1650a as bestowing upon courts an "exceptionally limited" role in recognition and enforcement.   *TECO Guatemala*, 414 F. Supp. 3d at 101 (citing *Mobil Cerro Negro*, 863 F.3d at 102).   This limited role disallows second-guessing the propriety of an ICSID award and requires enforcement so long as there is jurisdiction and the award is authentic.   *OI European Grp. v. Bolivarian Republic of Venezuela*, 2019 WL 2185040, at *4 (D.D.C. May 21, 2019) ("ICSID's enabling statute makes clear that the Court may not re-examine the propriety of the award."); *Tidewater Inv. SRL v. Bolivarian Republic of Venezuela*, 2018 WL 6605633, at *6 (D.D.C. Dec. 17, 2018) ("[T]he language of § 1650a appears to envision no role for this Court beyond ensuring its own jurisdiction over this action and the validity of [Plaintiff's] entitlement to any unpaid claims under the Award.").

   Defendant cites to the Second Circuit's decision in *Mobil Cerro Negro* and to Judge Mehta's decision in *Micula* to support its position that the Court's role is not so limited and encompasses a more probing review of ICSID awards.   D's Mem. at 9.   Defendant misreads these cases, which actually *confirm* Plaintiffs' articulation of the courts' limited role under § 1650a.

   In *Mobil Cerro Negro*, the Second Circuit held that ICSID award creditors could not enforce awards through *ex parte* proceedings that did not comply with the personal jurisdiction, service, and venue requirements of the Foreign Sovereign Immunities Act ("FSIA").   863 F.3d at 124.   In holding that ICSID award creditors must file a plenary civil action to enforce the award, the Second Circuit nevertheless made clear that courts may do no more than examine the award's authenticity and enforce it, so long as there is jurisdiction.   *Id*. at 102, 117–18.   The procedural

requirements associated with filing a plenary action have no bearing on the court's inability, pursuant to the ICSID Convention and its enabling statute, to undertake substantive review of the award. As the Second Circuit put it:

> Litigation on actions to enforce awards need not be protracted. That the action might be referred to as "plenary" as opposed to "summary" does not portend a proceeding in which the court must entertain all manner of substantive defenses, or even defenses cognizable under the Federal Arbitration Act. Used in this context, the word "plenary" signals merely the need for commencing an action under Federal Rule of Civil Procedure 3, service of the complaint in compliance with Rule 4 (as modified by the FSIA), and the opportunity for the defendant sovereign to appear and file responsive pleadings. To initiate such an action, an ICSID award-creditor may file a complaint in district court, detailing the terms of the award, establishing proper venue, and furnishing a certified copy of the award. After the complaint is filed and service effected, the award-creditor may file a motion for judgment on the pleadings, for instance, or a motion for summary judgment. The ICSID award-debtor would be a party to the action and would be able to challenge the United States court's jurisdiction to enforce the award—for instance, on venue grounds—*but would not be permitted to make substantive challenges to the award.*

*Id.* at 117–18 (emphasis added). Judge Mehta endorsed this view in *Micula.* 404 F. Supp. 3d 265, 275 (D.D.C. 2019); *see also Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 51–52 (D.D.C. 2015) (requiring a plenary enforcement procedure does not conflict with or abrogate the United States' obligations under Article 54 to "recognize" and "enforce" ICSID awards "as if it were a final judgment of a court in that State").

The Second Circuit highlighted the legislative history of § 1650a(a) to conclude that "this provision was intended to immunize ICSID awards from substantive assault outside the ICSID tribunal." *Mobil Cerro Negro*, 863 F.3d at 117. It also cited to the General Counsel of the Treasury's statements during Congressional debate on the ICSID enabling statute, explaining that, "[i]n . . . an enforcement action, the district court would be required to give full faith and credit to the arbitral award. *Essentially, this means that district courts would be precluded from inquiring*

*into the merits of the underlying controversy*." *Id.* (emphasis added) (citing 89 Cong. Rec. 2–3 (1966) (statement of Hon. Fred B. Smith, Gen. Counsel, Dep't of Treasury)). There can be no doubt that *Mobil Cerro Negro* supports Plaintiffs' position that, where, as here, an ICSID award is authentic and the court has jurisdiction to enforce it, § 1650a(a) mandates that judgment be entered in the plaintiff-award-creditor's favor. Pls.' Mot. at 7.

Defendant's counsel acknowledged as much in a public comment on the Second Circuit's *Mobil Cerro Negro* decision. They opined that, "[u]nder the[] procedures [described by the Second Circuit], the award debtor may contest the U.S. court's jurisdiction to enforce the award, such as on venue grounds, and make non-merits challenges to the ICSID award, such as to question the finality of the award, but, *consistent with the ICSID Convention, the debtor may not challenge the merits of the award*."[3]

The law on enforcement of ICSID awards is thus clear. As required, Plaintiffs initiated a civil action to enforce the Award, established its authenticity, and secured jurisdiction under the FSIA. Pls.' Mot. at 7; *see* Def.'s Response to Pls.' Statement of Material Facts at 2–4 (ECF No. 25-2) (further conceding these facts). This is enough to entitle Plaintiffs to judgment enforcing the pecuniary obligations of the Award.

*Even if Defendant's interpretation of the reference to state-court judgments in § 1650a were correct (it is not), its due process "defense" would still fail.* As noted, Defendant seizes on the reference to "full faith and credit as if the award were a final [state-court] judgment" in

---

[3] Sullivan & Cromwell LLP, "*Exxon Mobil v. Venezuela* Decision: U.S. Court of Appeals for the Second Circuit Decides that Actions To Enforce ICSID Arbitration Awards Must Comply with the U.S. Foreign Sovereign Immunities Act, July 13, 2017, *available at* https://www.sullcrom.com/arbitration-exxon-mobil-v-venezuela-decision-us-court-of-appeals-for-the-second-circuit (last accessed Apr. 4, 2020).

§ 1650a(a) to argue that courts tasked with enforcing ICSID awards should look to the standards governing enforcement of U.S. state court judgments. D's Mem. at 1. Defendant cites no authority to support this position, which, as explained above, turns the clear pro-enforcement mandate of § 1650a(a) on its head. But even assuming, *arguendo*, that the Court must treat an ICSID award like a state court judgment in all respects, Defendant's argument still fails.

Under longstanding Supreme Court jurisprudence, federal courts have no authority to "review final judgments of a state court in judicial proceedings." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923) (federal district courts have no jurisdiction to "entertain a proceeding to reverse or modify" a state court judgment). The Supreme Court has described the *Rooker-Feldman* doctrine as providing that "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States District Court based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994); *see also* Erwin Chemerinsky, Federal Jurisdiction (6th Ed. 2012) §8.1.

The cases Defendant cites do not support the novel proposition that federal courts may refuse enforcement of a state court judgment on the basis of an independent due process inquiry into the state court proceedings. *See* D's Mem. at 2–3. In *Kremer v. Chemical Construction Corp.*, the Supreme Court *rejected* the petitioner's request for federal review of the state court decision, concluding that the 1964 Civil Rights Act did not provide a "right to relitigate in federal court an issue resolved by a state court." 456 U.S. 461, 473 (1982). Similarly, *Allen v. McCurry* establishes that collateral estoppel *prevents* relitigation of state court proceedings in federal courts. 449 U.S. 90, 105 (1980); *see also* Chemerinsky § 8.10. The Second Circuit's holding in *Texaco Inc. v. Pennzoil* — on which Defendant relies for the proposition that a federal court may enjoin

- 10 -

enforcement of a state court judgment that violated due process (D's Mem. at 3, 9–10) — was reversed by the Supreme Court, which held that the district court *should not have heard* the state-court judgment debtor's claims that the state-court proceedings violated federal due process. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987).  And *Cohen v. Board of Trustees* is entirely inapposite, as it did not concern a federal court's review of a state court judgment.  311 F. Supp. 3d 242 (D.D.C. 2018).

Thus, to the extent the Court is inclined to take guidance from the law on enforcement of state court judgments under the Full Faith and Credit Clause of the U.S. Constitution, that jurisprudence confirms that the Court lacks authority to refuse enforcement on the basis of an independent due process inquiry into the underlying proceedings.

Instead, contrary to Defendant's argument, the reference to "full faith and credit" in § 1650a(a) has the effect of guaranteeing the finality of ICSID awards, not empowering federal courts to undertake a review of those awards or the proceedings in which they were rendered.  As Professor Roger Alford explains:

> The full faith and credit obligation addresses [the problem of compliance] by promoting the finality of a tribunal award in all signatory states.  The sovereign interests of the forum state where enforcement is sought are not a basis for re-litigating claims or collaterally attacking judgments rendered.  Once an ICSID decision becomes final and binding, it becomes so not only for the parties, but also for the forum where enforcement is sought.  As an ICSID tribunal put it, "the Convention excludes any attack on the award in national courts."

Alford at 692.

Additionally, as the court in *TECO* explained, when federal courts enforce state court judgments, they apply 28 U.S.C. § 1738, which provides that state court judgments must be given the same full faith and credit as they "have by law or usage in the courts of such State."  *TECO Guatemala*, 414 F. Supp. 3d at 103.  "By extension, therefore, if the state court—or, here, the

- 11 -

ICSID—would treat the judgment—or, here, the award—as binding, so must the federal district court." *Id.*  This point was made clear by the Supreme Court in *Kremer*:  a federal court need not accord full faith and credit to a state court judgment only if *the state itself* would view that judgment as constitutionally infirm.  456 U.S. at 482 ("A State may not grant preclusive effect *in its own courts* to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment.") (emphasis added).  Defendant does not contend that the ICSID Annulment Committee would deem its own decision on Venezuela's representation as infirm under the ICSID Convention; nor could it because that decision was legitimately issued under that treaty.

> ***Even if enforcement of an ICSID award could be refused for due process violations in the pending ICSID annulment proceeding, there has been no such violation here.***  Defendant has shown no due process violation as a factual matter.  Plaintiffs seek enforcement of the Award against the Award debtor, which is the Bolivarian Republic of Venezuela, not a particular government which may purport to represent it.  *See Guaranty Trust Co. of N.Y. v. United States*, 304 U.S. 126, 137 (1938) ("[T]he rights of a sovereign state are vested in the state rather than in any particular government which may purport to represent it."); *Republic of Iraq v. ABB AG*, 768 F.3d 145, 164 (2d Cir. 2014) ("[T]he obligations of a foreign state are unimpaired by a change in that state's government.").  As a party to the ICSID proceedings, Venezuela has not been denied any opportunity to defend itself against Plaintiffs' claims or to prosecute its annulment request against the Award.  *See* Award at 2–11 (ECF No. 1-1) (describing the procedural history of the arbitration proceedings and Venezuela's participation in those proceedings); ICSID Case No. ARB/13/11, Case Details (Procedural Details tab), https://icsid.worldbank.org/en/Pages/cases/

casedetail.aspx?CaseNo=ARB/13/11 (last accessed Apr. 6, 2020) (detailing Venezuela's participation in the arbitration proceeding and prosecution of the annulment proceeding).

Venezuela has therefore not been denied the opportunity to be heard in the annulment proceeding.  Contrary to Defendant's allegations, the ICSID Annulment Committee did not "refuse to recognize the legitimacy of the Interim Government."  D's Mem. at 6.  Instead, the Annulment Committee gave Mr. Hernández, as representative of the Interim Government, an opportunity to brief the issue of representation and to demonstrate that, pursuant to the applicable rules, he was authorized to displace Venezuela's long-standing counsel.  Proc. Res. No. 2 ¶¶ 3, 8 (ECF No. 20-7).  After Mr. Hernández failed to submit a reply brief, the Annulment Committee concluded that he had not carried his burden to show that, under international law, he had become the sole authorized representative of Venezuela for purposes of displacing counsel that Venezuela had duly appointed and that had been prosecuting its case since the start of the annulment proceeding.  *Id.* ¶¶ 49, 51 (ECF No. 20-7) ("Mr. Hernández's presentation is not enough to justify a change of procedural representation in this case.  [ . . . ]  Therefore, the procedure must continue with the representation of the Republic already constituted in the file.").  This Court may not, consistent with the ICSID Convention and § 1650a, second-guess this decision, which was properly made under the ICSID Convention and its rules.

The fact that the Interim Government has been recognized by the United States as the proper representative of Venezuela is entirely immaterial here.  While U.S. law requires *U.S. courts* to follow the direction of the Executive in recognizing foreign governments, that law does not bind an international tribunal constituted under the ICSID Convention applying international law.  *Guaranty Trust*, 304 U.S. at 138 (the Executive's action in recognizing a foreign government

- 13 -

"is conclusive on all *domestic courts*") (emphasis added); *see also The Maret*, 145 F.2d 431, 443 (3d Cir. 1944) (non-recognition by the Executive binds "the courts of this country").

Critically, as explained, Plaintiffs seek enforcement of the Award against the Bolivarian Republic of Venezuela, the party to the ICSID proceedings and the award-debtor here, not the Interim or Maduro Governments. *See United States ex rel. Kessler v. Watkins*, 163 F.2d 140, 143 (2d Cir. 1947) (though a foreign government changes, "the nation remains, with rights and obligations unimpaired"); Restatement (Third) of Foreign Relations Law (1987) § 201 (a government is part of the definition of "State" but is not synonymous with "State"); *id.* § 203 (recognition of a government is formal acknowledgment that a particular regime is the effective government of a state; a state can recognize or treat an entity as a state while denying that a particular regime is its government). While Plaintiffs made this point in their motion (Pls.' Mot. at 13), Defendant failed to address it. Instead, Defendant conceded the fact that *Venezuela* is the party to the ICSID annulment proceeding. Def.'s Response to Pls.' Statement of Material Facts ¶¶ 2, 6–8 (ECF No. 25-2).

In summary, Defendant's sole purported defense to preclude enforcement of the Award is legally and factually unfounded. If accepted, Defendant's argument would deprive legitimate ICSID award-debtors of their right to enforce an ICSID award in the United States when political turmoil afflicts the award-debtor as it has afflicted Venezuela. To accept Defendant's argument would also be equivalent to questioning the merits of a legitimate ruling of an ICSID body in ongoing proceedings. This is precisely the kind of review that is proscribed by the ICSID Convention and its enabling statute. The Court would be charting new ground if it were to endorse Defendant's novel argument, which should be rejected.

**II.      Post-Judgment Interest Must Accrue at the Rate Imposed in the ICSID Award.**

Defendant insists that, if the Award is enforced, the Court should replace the interest rate set in the Award with the post-judgment interest rate under 28 U.S.C. § 1961.  Def.'s Mem. at 14–15.  Defendant invites the Court to do this by following the unpublished decision in *OI European Group B.V. v. Bolivarian Republic of Venezuela*, 2019 WL 2185040 (D.D.C. May 21, 2019), in which the court applied the § 1961 interest rate rather than the rate specifically set in the ICSID award at issue.  Respectfully, this decision is contrary to the ICSID Convention, its enabling statute, and the near-unanimous practice of courts enforcing ICSID awards.  This Court should not follow it.

*OI European Group* is the only case in which a court has applied the post-judgment interest rate of § 1961 when enforcing an ICSID award that specifically provides the applicable interest rate until full satisfaction of the award.  The court in that case noted that "it appears . . . that once the [ICSID a]ward is confirmed, it merges with the judgment and § 1961 applies."  *OI European Group*, 2019 WL 2185040, at *6.  To support this view, the court cited *Miminco, LLC v. Democratic Republic of Congo*, 79 F. Supp. 3d 213, 217–18, 220 (D.D.C. 2015).  But, as Plaintiffs explained in their motion (Pls.' Mot. at n.7), the award in *Miminco* specified *no* interest rate at all, leading the court to apply pre-judgment interest as a matter of discretion and post-judgment interest under § 1961.  79 F. Supp. 3d at 218.  By *displacing* the interest rate set in an ICSID award, *OI European Group* charted new ground and contradicted the only other (and more persuasive) decision to have squarely addressed the issue in the ICSID context.  *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 2015 WL 926011 (S.D.N.Y. Mar. 4, 2015).

The court's approach in *OI European Group* failed to give due account to the treaty and statutory requirement that the "pecuniary obligations imposed by [ICSID] award[s]" "*shall*" be enforced.  ICSID Convention, Art. 54(1) ("Each Contracting State shall . . . enforce the pecuniary

obligations imposed by [the ICSID] award . . ."); 22 U.S.C. § 1650a(a) ("The pecuniary obligations imposed by [the ICSID] award shall be enforced . . .").  As the court in *Mobil Cerro Negro* aptly observed, "'pecuniary' means 'of, relating to, or consisting of money; monetary,' and interest is monetary, for it involves the payment of money."  2015 WL 926011, at *2 (citing, *inter alia*, Black's Law Dictionary (10th ed., 2014)).  Thus, under the plain terms of the ICSID Convention and its enabling statute, courts must give effect to the interest rate set in the ICSID award. Applying a different rate would instead disturb the pecuniary obligations imposed by the ICSID award, potentially resulting (as here) in a reduction of those obligations.  *See id.* at *1–2; Brief of the United States as Amicus Curiae, *Mobil Cerro Negro*, 863 F.3d 96 (15-cv-00707) 2016 WL 1319293, at *21 ("The rate of interest applied to the principal of the Award is 'pecuniary' as it translated directly into an amount of money Venezuela must pay.  Indeed, the modification of that rate could lessen the total amount of the [a]ward by millions of dollars.").

The reference to "full faith and credit as if the award were a final [state-court] judgment" in the ICSID enabling statute does not give license to disregard this treaty and statutory mandate. *Contra OI European Group*, 2019 WL 2185040, at *7.  That text in no way detracts from the mandate in the first clause of the sentence requiring that the pecuniary obligations of the ICSID award be enforced.  22 U.S.C. § 1650a(a) ("The pecuniary obligations imposed by [the ICSID] award shall be enforced *and* shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States.") (emphasis added). As explained above, the reference to state-court judgments embodies the pro-enforcement obligation set forth in the ICSID Convention to treat ICSID awards as final and unreviewable domestic judgments.  *Supra* at 3–5, 8–11.  It does not open the door for domestic courts to set aside part of the award's otherwise binding monetary terms.

The court in *OI European Group* disclaimed that it was disregarding the pecuniary obligations imposed by the ICSID award because that award "ma[de] no mention of what interest applies 'post-judgment,' and the courts of this country have found that the words 'until payment' [used in the award] do not preclude application of § 1961." 2019 WL 2185040, at *7. But the case law cited by the court for that conclusion is inapposite because it dealt with the enforcement of *non-ICSID* awards, to which the ICSID enabling statute *does not* apply. Pls.' Mot. at 16–17. When an ICSID award holds — as the Award here does — that interest should apply "until payment," it is imposing a pecuniary obligation on the award-debtor to pay interest at that rate until it fully satisfies the award — not until the award is converted into a judgment of a U.S. court. Courts may not review or disregard this obligation and instead must give it full force and effect. *See* 22 U.S.C. § 1650a(a); *Mobil Cerro Negro*, 2015 WL 926011, at *1–2.

The statutory command of § 1650a is not displaced by the common law doctrine of merger whereby a plaintiff's original claim is "merged" into the judgment — the doctrine that *OI European Group* and Defendant rely on to apply § 1961. 2019 WL 2185040, at *6; D.'s Mem. at 15. Courts have invoked the merger doctrine to apply the § 1961 rate to judgments enforcing arbitral awards *only* for arbitration awards confirmed under the Federal Arbitration Act ("FAA"). *See Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448 (5th Cir. 2013); *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 102 (2d Cir. 2004). That is because the FAA specifically provides that a judgment confirming an arbitration award under the Act "shall . . . be subject to all provisions of law relating to[] a judgment in an action." 9 U.S.C. § 13; *see Parsons & Whittemore Ala. Mach. & Servs. Corp. v. Yeargin Constr. Co.*, 744 F.2d 1482, 1484 (11th Cir. 1984) (per curiam). Section 1650a contains no such requirement; instead, it expressly disclaims that the provisions of the FAA

apply to ICSID awards.  22 U.S.C. § 1650a(a).  *OI European Group* overlooked this critical distinction between ICSID and non-ICSID awards.

Having agreed to arbitrate its dispute with Plaintiffs before ICSID, Defendant "cannot now choose to apply the rules of a different arbitral regime, the FAA, so as to avoid a term of the ICSID panel's Award (the interest rate until payment) that it now rues."  *Mobil Cerro Negro*, 2015 WL 926011, at *3 (internal citations omitted).

Finally, the *OI European Group* decision failed to consider that a U.S. court's refusal to give effect to the interest rate specified in an ICSID award would place the United States in breach of its treaty obligations under the ICSID Convention.  *See* 2019 WL 2185040, n.9 (acknowledging the canon of statutory construction that a U.S. statute should be "construed so as to not conflict with international law or international agreement," but failing to address whether the court's interpretation of § 1650a would breach the ICSID Convention).  The United States has explained that Defendant's argument "should be rejected because its interpretation of § 1961 and the merger doctrine conflicts with the United States' treaty obligations.  Modification of the 'pecuniary obligations imposed by [the] award' is beyond the authority granted to district courts by the ICSID enabling statute."  Brief of the United States as Amicus Curiae, *Mobil Cerro Negro*, 2016 WL 1319293, at *21.  The United States' position interpreting the ICSID Convention deserves weight, *see Factor v. Laubenheimer*, 290 U.S. 276, 295 (1933), and is consistent with how the treaty has been long construed, *see* Schreuer, The ICSID Convention at 1128 ("Failure of a State party to the Convention to recognize and enforce an award would be a breach of a treaty obligation.").

Defendant argues that applying the § 1961 rate to ICSID awards is consistent with the United States' obligations under the ICSID Convention because the Convention "appears to contemplate that different countries may enforce the award differently."  Def.'s Mem. at 17 (citing

*OI European Group*).  Defendant relies on the phrase "as if it were a final judgment of a court in that State" within Article 54(1) of the ICSID Convention, but — read in context and consistent with the object and purpose of the treaty — that phrase does not allow different countries to enforce ICSID awards in a way that alters the pecuniary obligations those awards impose.  *See* Alford at 687–93.  While State parties to the Convention may apply different *procedures* to enforce the pecuniary obligations of an ICSID award, *see* ICSID Convention, Art. 54(2) (allowing each State party to designate the competent court or authority for recognition and enforcement), they may not apply monetary terms — including interest — different from those set forth in that award, *Mobil Cerro Negro*, 2015 WL 926011, at *2 (concluding that Venezuela's attempt to apply § 1961 "unavoidably seeks substantive review of a part of the ICSID Award—its interest rate provisions. The Court lacks authority to undertake such review.").

If accepted, Defendant's request would have the perverse effect of encouraging non-compliance with the Award.  The measures that led to the issuance of the Award were adopted by Venezuela more than a decade ago.  Pls.' Mot. at 2 (ECF No. 24).  Plaintiffs suffered and continue to suffer substantial damages as a consequence of those measures.  *Id.* at 2–4.  Even though the Award became enforceable in July 2017, Venezuela has yet to pay the amounts ordered therein. Compl. ¶ 26 (ECF No. 1); *see also* ECF No. 16-1, ¶ 11.  Because Defendant has refused to pay the Award voluntarily, Plaintiffs were forced to commence this action.  If Defendant has taken no steps to pay the compensation ordered in the Award accruing interest at the rate set by the ICSID Tribunal, it will be even less inclined to pay the judgment, which, if Defendant gets its way, would accrue interest at a much lower interest rate "until final payment."  This was not the pecuniary obligation that the Award imposed on Venezuela.

The Award must be enforced in a judgment that reflects the pecuniary obligations imposed therein, including the interest rate applicable to the compensation Defendant owes to Plaintiffs.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter judgment for Plaintiffs and against Defendant as set forth in the Complaint.

Dated: April 6, 2020                     Respectfully submitted,

/s/ Miguel López Forastier
Miguel López Forastier
D.C. Bar No. 464654
mlopezforastier@cov.com
José E. Arvelo
D.C. Bar No. 981920
jarvelo@cov.com
Amanda Tuninetti
D.C. Bar No. 1521002
atuninetti@cov.com
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, N.W.
Washington, D.C.  20001
Tel:  202-662-5464
Fax:  202-778-5185

*Counsel for Plaintiffs and Arbitration Award Creditors Valores Mundiales, S.L. and Consorcio Andino, S.L.*