## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **VALORES MUNDIALES, S.L.,**<br><br>-and-<br><br>**CONSORCIO ANDINO, S.L.,**<br><br>*Plaintiffs,*<br><br>v.<br><br>**BOLIVARIAN REPUBLIC OF VENEZUELA,**<br><br>*Defendant.* | No. 1:19-cv-0046-KBJ-RMM |

## REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT BOLIVARIAN REPUBLIC OF VENEZUELA'S <u>CROSS-MOTION FOR SUMMARY JUDGMENT</u>

Sergio J. Galvis
Joseph E. Neuhaus (*pro hac vice*)
James L. Bromley (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  212-558-4000
Facsimile:  212-558-3588
galviss@sullcrom.com
neuhausj@sullcrom.com
bromleyj@sullcrom.com

Dated:  April 20, 2020

Judson O. Littleton
D.C. Bar No. 1027310
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006-5215
Telephone:  202-956-7500
Facsimile:  202-293-6330
littletonj@sullcrom.com

*Attorneys for Defendant Bolivarian Republic of Venezuela*

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................2

I.     ENFORCEMENT OF THE AWARD WOULD VIOLATE FUNDAMENTAL
PRINCIPLES OF PROCEDURAL DUE PROCESS INCORPORATED INTO
THE ICSID ENABLING STATUTE. ...............................................................................2

        A.     Plaintiffs' Tortured Reading of § 1650a Is Foreclosed by the Statute's
Plain Language and Inconsistent With the ICSID Enforcement Scheme. ...............2

        B.     ICISID Awards, Like State Court Judgments, Are Entitled to Full Faith &
Credit Only If They Comply With Procedural Due Process. ..................................6

        C.     Enforcement of the Award Would Give Effect to Illegitimate Acts of the
Maduro Regime in Violation of U.S. Law on Recognition of Foreign
Governments. .....................................................................................................10

II.    THE POST-JUDGMENT INTEREST THAT PLAINTIFFS SEEK IS BARRED
AS A MATTER OF LAW................................................................................................11

CONCLUSION........................................................................................................................13

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Cohen v. *Bd. of Tr. of the Univ. of the Dist. of Columbia*,
   311 F. Supp. 3d 242 (D.D.C. 2018) ........................................................................9

*District of Columbia Court of Appeals v. Feldman*,
   460 U.S. 462 (1983) ...................................................................................6, 7

*Hege v. Aegon USA, LLC*,
   780 F. Supp. 2d 416 (D.S.C. 2011) ........................................................................8

*Kremer v. Chemical Construction Corp.*,
   456 U.S. 461 (1982) ...............................................................................4, 8, 10

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
   863 F.3d 96 (2d Cir. 2017) ...........................................................3, 4, 5, 12

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
   2015 WL 926011 (S.D.N.Y. Mar. 4, 2015) ....................................................11

*Nat'l Socialist Party v. Skokie*,
   432 U.S. 43 (1977) ....................................................................................7

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
   491 U.S. 350 (1989) ..................................................................................7

*OI European Group B.V. v. Bolivarian Republic of Venezuela*,
   2019 WL 2185040 (D.D.C. May 21, 2019) ..........................................11, 12, 13

*Pennzoil Co. v. Texaco, Inc.*,
   481 U.S. 1 (1987) ................................................................................5, 6, 7

*Romstadt v. Apple Computer, Inc.*,
   948 F. Supp. 701 (W.D. Ohio 1996) ........................................................................8

*Rooker v. Fidelity Trust Co.*,
   263 U.S. 413 (1923) ....................................................................................6

*Sprint Comms., Inc. v. Jacobs*,
   571 U.S. 69 (2013) ...................................................................................7, 8

*TECO Guatemala Holdings LLC v. Republic of Guatemala*,
   414 F. Supp. 3d 94 (D.D.C. 2019) ........................................................................9

*Texaco Inc. v. Pennzoil Co.,
    626 F. Supp. 250 (S.D.N.Y. 1986) .......................................................................9

*Texaco Inc. v. Pennzoil Co.,
    784 F.2d 1133 (2d Cir. 1986).............................................................................9

United States v. Igbonwa,
    1996 WL 515517 (E.D. Pa. Aug. 26, 1996) ........................................................8

Williams v. North Carolina,
    317 U.S. 287 (1942).............................................................................................8

**Statutes**

*22 U.S.C. § 1650a ................................................................................... passim

28 U.S.C. § 1738.................................................................................................1, 8

*28 U.S.C. § 1961.............................................................................................11, 12

28 U.S.C. § 1963.....................................................................................................4

**Other Authorities**

Convention on the Settlement of Investment Disputes Between States and
    Nationals of Other States, Mar. 18, 1956
     17 U.S.T. 1270 ........................................................................................ passim

Richard J. Coll, United States Enforcement of Arbitral Awards Against Sovereign
    States: Implications of the ICSID Convention, 17 Harv. Int'l. L. J. 401 (1976) ......................4

Dorothy Black Franzoni, International Law – Enforcement of International
    Center for Settlement of Investment Disputes Arbitral Awards in the United
    States, 18 Ga. J. Int'l & Comp. L. 101 (1988) ..........................................................4

Christoph H. Schreuer, The ICSID Convention:  A Commentary (2d ed. 2009) ........................5, 7

Defendant Bolivarian Republic of Venezuela (the "Republic" or "Venezuela") respectfully submits this reply memorandum of points and authorities in support of the Republic's cross-motion for summary judgment.[1]

## INTRODUCTION

Plaintiffs' opposition ("Opp.") portrays this case as a bogeyman that threatens to upend the ICSID enforcement scheme and turn the "pro-enforcement mandate" of the ICSID Convention and its enabling statute "on its head." (Opp. at 10.)  But no amount of hyperbole or handwringing can rewrite the plain language of the ICSID enabling statute.  The statutory interpretation presented in this case is straightforward and governed by first principles.  The enabling statute means what it says.  And Congress understood what it was doing when it drafted the statute to reference the established body of law interpreting the Full Faith and Credit Clause of the Constitution and its statutory corollary, 28 U.S.C. § 1738.

Plaintiffs' manufactured fears are in any case unfounded.  Enforcement of ICSID awards—like federal review of state court judgments—is highly deferential, and the grounds for refusing enforcement are exceptionally limited, *but not absolute*.  This is an unusual case.  The Interim Government is the only legitimate government of Venezuela and unquestionably the sole government whose actions U.S. courts can recognize.  Yet the Interim Government was denied access to the very ICSID annulment procedures that justify this high degree of deference.  Further, the ICSID committee's refusal to recognize the Interim Government rested on the illicit proclamations of a Venezuelan judicial body comprised of criminals and cronies of Maduro, eight

---

[1]     Unless otherwise indicated, capitalized terms have the same meaning as in the Republic's Memorandum of Points and Authorities in Support of Defendant Bolivarian Republic of Venezuela's Cross-Motion for Summary Judgment, and in Opposition to Plaintiffs' Motion for Judgment on the Pleadings Or, in the Alternative, Summary Judgment ("Br."), ECF 25-1.

of whom have been subject to OFAC sanctions since May 2017, and one of whom—the Chief Justice—has been criminally charged in the United States.  Enforcement of the award here would give effect to the repugnant acts of an illegitimate regime that U.S. courts may not recognize.

A U.S. court surely would not afford full faith and credit to a state court judgment rendered in such a procedure.  Likewise, nothing in the ICSID Convention nor its enabling statute require this Court to enforce the Award here.  Instead, both the ICSID Convention and its enabling statute instruct domestic courts to enforce an ICSID award "as if" it were a final state court judgment.  ICSID Convention art. 54(1); 22 U.S.C. § 1650a.  And federal courts may not enforce state court judgments that denied a litigant procedural due process.  For the same reason, the Award should not be enforced.

## ARGUMENT

I. **ENFORCEMENT OF THE AWARD WOULD VIOLATE FUNDAMENTAL PRINCIPLES OF PROCEDURAL DUE PROCESS INCORPORATED INTO THE ICSID ENABLING STATUTE.**

A. **Plaintiffs' Tortured Reading of § 1650a Is Foreclosed by the Statute's Plain Language and Inconsistent With the ICSID Enforcement Scheme.**

The ICSID enabling statute, 22 U.S.C. § 1650a, provides:

> An award of an arbitral tribunal pursuant to chapter IV of the [ICSID C]onvention shall create a right arising under a treaty of the United States.  *The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States*.  The Federal Arbitration Act (9 U.S.C. 1 *et seq*.) shall not apply to enforcement of awards rendered pursuant to the [ICSID C]onvention.

(Emphasis added.)

Plaintiffs contend that the statutory language separately requires (i) enforcement of the pecuniary obligations of the award *and* (ii) that the award be given the same full faith and credit as a state court judgment.  (Opp. at 5-6.)  In other words, on Plaintiffs' reading, the phrase "as if

the award were a final judgment . . . of one of the several states" modifies the phrase "full faith and credit" but not "shall be enforced."

This is a plain misreading of the statute that, unsurprisingly, the Second Circuit has rejected. *See Mobil Cerro Negro, Ltd.* v. *Bolivarian Republic of Venezuela*, 863 F.3d 96, 121 n.21 (2d Cir. 2017) ("[W]e think the better reading gives more weight to the final phrase: that is, that federal courts are directed *both* to "'enforce[]'" ICSID awards 'as if they were a final judgment of one of the several States' *and* to give such awards 'full faith and credit'—that is, *res judicata* effect.").

Plaintiffs' reading would mean that the statutory implementation of the ICSID Convention goes beyond the Convention itself, a result for which Plaintiffs offer no support. The Convention does not require that ICSID awards be enforced, full stop, as Plaintiffs would have it. Rather, the Convention instructs member states to "recognize an award rendered pursuant to this Convention as binding and *enforce* the pecuniary obligations imposed by that award within its territories *as if it were a final judgment of a court in that State*." ICSID Convention art. 54(1) (emphasis added). There is utterly no doubt that the term "enforce" in Article 54 is modified by "as if it were a final judgment of a court in that State."

Moreover, Article 54(1) of the Convention goes on to state, "A Contracting State with a federal constitution may enforce such an award in or through its federal courts and may provide that such courts shall treat the award as if it were a final judgement of the courts of a constituent state." As the Second Circuit explained in *Mobil Cerro*, quoting the legislative history of § 1650a, the United States suggested this provision in the Convention, 863 F.3d at 118, making even plainer that the intention was for awards to be *enforced* under the same standards and

procedures as enforcement of judgments of the several states, namely, the standards of the Full Faith and Credit Clause.

Plaintiffs' tortured reading of the statute appears to arise not from any reasonable principle of statutory construction, but rather from a desire to minimize the statute's reference to full faith and credit doctrine, which—though highly deferential—does not afford preclusive effect to judgments that deprive a litigant of procedural due process.   *See, e.g.*, *Kremer* v. *Chemical Construction Corp.*, 456 U.S. 461, 481 (1982) (state court proceedings entitled to full faith and credit only if they "satisfy the minimum procedural requirements" of due process).   But Plaintiffs cannot escape the plain language of the statute, which evinces Congress's clear intent to bring the ICSID enforcement scheme within well-established principles of federal enforcement of state court judgments.   *See Mobil Cerro*, 863 F.3d at 123 ("It is significant that Congress chose not to incorporate the well-established, streamlined, and unitary federal registration procedures of 28 U.S.C. § 1963 into Section 1650a, preferring instead to refer generally to the full faith and credit doctrine and preexisting federal practice for addressing state court judgments.").

Indeed, while no court has previously had occasion to rule on a due process objection to enforcement of an ICSID award, commentators have long recognized the implications of § 1650a's reference to full faith and credit.   *See* Richard J. Coll, *United States Enforcement of Arbitral Awards Against Sovereign States:  Implications of the ICSID Convention*, 17 Harv. Int'l. L. J. 401, 411 (1976) ("As a consequence of the use of the Constitutional language of the full faith and credit clause, the federal court is empowered to investigate matters of both the ICSID tribunal's jurisdiction and *whether the proceedings satisfied standards of procedural fairness*.") (emphasis added); Dorothy Black Franzoni, *International Law – Enforcement of International Center for Settlement of Investment Disputes Arbitral Awards in the United States*, 18 Ga. J. Int'l & Comp.

L. 101, 107 (1988) (§ 1650a "brings the awards within the full faith and credit clause of the 14th Amendment").[2]

Nor is the Republic's proposed reading "at odds" with § 1650a's exclusion of the grounds for attack available under the FAA, as Plaintiffs contend. (Opp. at 6). The requirement that an ICSID award comply with due process does not arise from the FAA at all; it flows necessarily from the statute's reference to established principles of full faith and credit jurisprudence, which, as explained in the Republic's prior briefs and below, has long recognized that judgments rendered without procedural due process are not entitled to preclusive effect. (Repub. Br. to Vacate Default at 8-9; Br. at 10-11Br. at 8.)

Moreover, as the Second Circuit explained in *Mobil Cerro*, "the exclusion of the substantive attacks available under the FAA from ICSID award actions does not . . . imply an intention that a foreign sovereign award-debtor be denied notice of the action to enforce the award *and the occasion to make non-merits challenges to the award*." 863 F.3d at 121 (emphasis added). Perhaps recognizing as much, Plaintiffs labor to portray the Republic's due process argument as an attack on the substantive merits of the Award. (*See, e.g.*, Opp. at 7-9.) It is not. Rather, the procedural due process right to "a meaningful opportunity for appellate review" does not implicate the merits of the underlying dispute. *Pennzoil Co.* v. *Texaco, Inc.*, 481 U.S. 1, 21 (1987) (Brennan, J., concurring in judgment) ("Texaco filed the § 1983 action only to protect its federal

---

[2]    Professor Schreuer likewise notes in his treatise on the ICSID Convention that "the equalization of an ICSID award with a judgment of a state court combined with the reference to the full faith and credit clause of the Constitution . . . creates the impression that the federal courts have the power to review the ICSID tribunals' jurisdiction and *to investigate whether the proceedings satisfied standards of procedural fairness.*" Christoph H. Schreuer, The ICSID Convention: A Commentary 1144 (2d ed. 2009) (emphasis added). While he finds this conclusion "doubtful" under the Convention, because it would, among other things, call for a claimant to bring a new action in federal court, that view has been rejected by the Second Circuit. *Mobil Cerro*, 863 F.3d at 117-18.

constitutional right to a meaningful opportunity for appellate review, not to challenge the merits of the Texas suit").

## B.  ICISID Awards, Like State Court Judgments, Are Entitled to Full Faith & Credit Only If They Comply With Procedural Due Process.

According to Plaintiffs, federal courts "lack[] authority to refuse enforcement" of both state court judgments and ICSID awards "on the basis of an independent due process inquiry into the underlying proceedings."  (Opp. at 11.)   That is simply incorrect, and is contradicted by the doctrines and cases Plaintiffs cite.

*First*, Plaintiffs' reliance on the so-called *Rooker-Feldman* doctrine[3] misstates the doctrine.  As the Supreme Court explained in *Exxon Mobil Corp.* v. *Saudi Basic Indus. Corp.* (a case that Plaintiffs do not cite), the *Rooker-Feldman* doctrine applies only in the "limited circumstances" where a litigant asks a federal district court to exercise appellate review over a state court judgment.  544 U.S. 280, 283-84 (2005).  This is because federal district courts are courts of general—not appellate—jurisdiction.  *Id*. at 283 (observing that appellate jurisdiction over state court judgments is vested solely in the U.S. Supreme Court pursuant to 28 U.S.C. § 1257).  *Rooker-Feldman* does not stand for the broad proposition advanced by Plaintiffs (Opp. at 10) that "federal courts have no authority" to deny full faith and credit to state court judgments based on deprivation of due process.

*Rooker-Feldman* does not apply where, as here, a party is seeking "only to protect its federal constitutional right to a meaningful opportunity for appellate review, not to challenge the merits of the [underlying action]."  *Pennzoil*, 481 U.S. at 21 (Brennan, J., concurring in judgment).  As Justice Brennan, who authored *Feldman*, explained, this is because  a due process

---

[3]      *See District of Columbia Court of Appeals* v. *Feldman*, 460 U.S. 462 (1983); *Rooker* v. *Fidelity Trust Co.*, 263 U.S. 413 (1923).

challenge based on deprivation of "a meaningful opportunity for appellate review" is "separable from and collateral to" the merits of the underlying state court judgment. *Id.* (citing *Nat'l Socialist Party* v. *Skokie*, 432 U.S. 43, 44 (1977)). Indeed, although the *Pennzoil* majority did not address *Rooker-Feldman*, five justices concluded in separate opinions concurring or concurring in judgment that the district court's review was *not* barred by the *Rooker-Feldman* doctrine.[4]

Like *Pennzoil*, this case falls squarely outside the purview of *Rooker-Feldman*. Just as Texaco sought to protect its right to meaningful appellate review in *Pennzoil*, this action is based on the ICSID committee's denial of the Republic's right to be heard in the review procedures made available within ICSID, the very existence of which justify the deference owed to ICSID awards. *See* Schreuer, The ICSID Convention*, at 1118. Notwithstanding Plaintiffs' incorrect arguments to the contrary (Opp. at 6, 10), the Republic does not challenge the substance of the Award nor the ICSID committee's determination on the merits, which are "separable from and collateral to" the due process challenge. *Pennzoil*, 481 U.S. at 21 (Brennan, J., concurring in judgment).[5]

---

[4]    *Pennzoil*, 481 U.S. at 18 (Scalia, J., concurring, joined by O'Connor, J.) ("I do not believe that the so-called *Rooker-Feldman* doctrine deprives the Court of jurisdiction to decide Texaco's challenge to the constitutionality of the Texas stay and lien provisions."); *id.* at 21 (Brennan, J., concurring in judgment) (*Rooker-Feldman* did not bar federal court review ); *id.* at 28 (Blackmun, J., concurring in judgment) (federal collateral review was not barred by *Rooker-Feldman* "for the reasons given by Justice Brennan"); *id.* at 31 n.3 (Stevens, J., concurring in judgment) ("For the reasons stated by Justice Brennan and Justice Scalia, I do not believe that the [*Rooker-Feldman* doctrine] bars the federal courts from considering Texaco's claims.") (internal citations omitted).

[5]    Notably, the Court's holding in *Pennzoil* did not reach the lower courts' due process analysis. Instead, the Court concluded that the district court should have abstained from deciding Texaco's due process claims under *Younger* v. *Harris*, 401 U.S. 37 (1971). 481 U.S. at 10. *Younger* abstention is grounded in traditional equity concerns and principles of comity that require federal courts to refrain from enjoining pending state criminal prosecutions. *New Orleans Pub. Serv., Inc.* v. *Council of City of New Orleans*, 491 U.S. 350, 364 (1989) ("*NOPSI*"). The Supreme Court has extended *Younger* abstention to include three categories of specifically enumerated "exceptional circumstances": (i) where a case would result in "federal intrusion into ongoing state criminal proceedings," (ii) in certain "civil enforcement proceedings" that are "akin to a criminal prosecution," and (iii) in "pending civil proceedings involving certain orders . . . uniquely in furtherance of the state court's ability to perform their judicial functions." *Sprint Comms., Inc.* v. *Jacobs*, 571 U.S. 69, 78 (2013) (holding that these three categories "define *Younger's* scope") (internal citations omitted). The *Pennzoil* court's abstention falls within the third category, because Texaco's challenge implicated Texas's "requirement for the posting of bond pending appeal," *NOPSI*, 491 U.S. at 368, which is the "process[] by which the State compels compliance with the judgments of its courts." *Pennzoil*, 481 U.S. at 13-14. This case would not fall within any of these categories: it is not a criminal or quasi-criminal enforcement proceeding, and, unlike Texaco in *Pennzoil*, the Republic is not challenging any order "uniquely in furtherance of [ICSID's] ability

*Second*, Plaintiffs mischaracterize full faith and credit jurisprudence, going so far as to describe as a "novel proposition" the longstanding principle that a state court judgment is entitled to full faith and credit only if it complies with procedural due process.  (Opp. at 10.)  The Supreme Court in *Kremer* was explicit:  under the Full Faith and Credit Act, 28 U.S.C. § 1738, a state court proceeding must "satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law."  456 U.S. at 481.  The hallmark of procedural due process is "a full and fair opportunity to litigate the claim."  *Id.* at 481 & n.24.  To be sure, plenty of courts—including *Kremer*—have determined on the facts before them that a particular state court proceeding satisfied due process.  *See id.* at 485.  But Plaintiffs' suggestion that, as a result, federal courts broadly "lack[] authority to refuse enforcement on the basis of an independent due process inquiry into the underlying proceedings" (Opp. at 11) flies in the face of *Kremer* and long-recognized doctrine. *See Williams* v. *North Carolina*, 317 U.S. 287, 306 (1942) (Frankfurter, J., concurring) (observing that a state court judgment is entitled to full faith and credit only to the extent it "meet[s] the tests of justice and fair dealing that are embodied in the historic phrase, 'due process of law.'").  Federal courts can, and do, refuse full faith and credit to state court judgments that fail to satisfy procedural due process.  *See*, *e.g.*, *Hege* v. *Aegon USA, LLC*,  780 F. Supp. 2d 416, 425-35 (D.S.C. 2011) (state court class action settlement order not entitled to full faith and credit because it failed to comply with due process); *Romstadt* v. *Apple Computer, Inc.*, 948 F. Supp. 701, 709-10 (W.D. Ohio 1996) (same); *United States* v. *Igbonwa*, 1996 WL 515517, at *7 (E.D. Pa. Aug. 26, 1996) (because state court forfeiture orders "were entered in violation of Mr. Igbonwa's due process

---

to perform [its] [quasi-]judicial functions."  *See Sprint*, 571 U.S. at 78.  The Republic is simply asking this Court to decline to convert into a federal court judgment an award obtained in violation of the U.S. courts' conceptions of due process.

rights, they must not be accorded full faith and credit"), *rev'd on other grounds*, 120 F.3d 437 (3d Cir. 1997).

For the same reason, this Court can, and should, refuse to enforce the Award because it was rendered in a proceeding that denied the Interim Government an opportunity to be heard. In particular, as explained in the Republic's prior briefing (Repub. Br. to Vacate Default at 9-11; Br. at 10-11), due process is violated where a litigant is denied the right to pursue an available appeal. *See Cohen* v. *Bd. of Tr. of the Univ. of the Dist. of Columbia*, 311 F. Supp. 3d 242, 256 (D.D.C. 2018) (provisions of collective bargaining agreement that effectively denied the right to appeal a public university's employment decision violated procedural due process);[6] *Texaco Inc.* v. *Pennzoil Co.*, 626 F. Supp. 250, 257 (S.D.N.Y. 1986), *aff'd, Texaco Inc.* v. *Pennzoil Co.*, 784 F.2d 1133 (2d Cir. 1986), *rev'd on other grounds by Pennzoil*, 481 U.S. at 10. Although, as discussed *supra*, the Supreme Court reversed the Second Circuit's *Texaco* decision on *Younger* abstention grounds, the Court's holding did not cast doubt on the lower courts' due process analysis.

*Finally*, nothing in *TECO Guatemala Holdings LLC* v. *Republic of Guatemala,* 414 F. Supp. 3d 94 (D.D.C. 2019), counsels a different result. The *TECO* court looked to federal treatment of state court judgments to conclude that the proper avenue for the plaintiff to challenge an ICSID award on the basis of fraud was within ICSID itself, through Article 51 of the Convention. *Id.* at 103. Under this same reasoning, the ICSID committee's denial of the Interim Government's right to participate in ICSID's annulment process, like a state court's denial of the right to participate in an appeal, violates due process. (Br. at 12.) Moreover, neither *TECO* nor

---

[6]     Plaintiffs contend that *Cohen* is inapposite because "it did not concern a federal court's review of a state court judgment." (Opp. at 11.) That misses the point. *Cohen* is relevant because it confirms that denial of an effective right to appeal violates due process.

*Kremer* contemplates that a federal court would defer to whatever a state court said was a valid judgment.   Rather, *Kremer* observed that looking to a state court's procedures that provide for review of judgments was bounded by the requirements of due process:

> The State must, however, satisfy the applicable requirements of the Due Process Clause.   A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to accord full faith and credit to such a judgment.

456 U.S. at 482-83.

Likewise here, the fact that the ICSID annulment committee chose not to allow the Interim Government's authorized representative to appear does not mean that federal courts have no power to ask whether that procedure accorded with due process.   Rather, the ICSID award— just like a state judgment—is granted preclusive effect and enforced only if it "satisf[ies] the applicable requirements of the Due Process Clause."  *Id.*   Here, where an appeal was otherwise available but denied to the representative of the respondent that U.S. courts are required to recognize, those requirements were not met.

## C.  Enforcement of the Award Would Give Effect to Illegitimate Acts of the Maduro Regime in Violation of U.S. Law on Recognition of Foreign Governments.

Plaintiffs admit that the President's recognition of the Interim Government binds U.S. courts. (Opp. at 13.)   But Plaintiffs fail to acknowledge that, as a consequence of that recognition, U.S. courts also may not give effect to the acts of an illegitimate regime.  *The Maret*, 145 F.2d 431, 442 (3d Cir. 1944) (refusing to recognize supplier's lien on nationalized ship, and holding, "[s]ince the decrees of nationalization and transfer made by the Soviet Republic of Estonia may not be recognized, we cannot hold that the supplies furnished to the Maret were furnished upon the order of her owner").   Enforcing the Award in this case would do just that:  as described

in the Republic's prior briefs,[7] the ICSID committee's refusal to recognize Mr. Hernández was premised on a decision from the Venezuelan Supreme Tribunal of Justice that lacks any validity. (Repub. Br. to Vacate Default at 6, 14; Br. at 6 n.9.)  The Supreme Tribunal is widely recognized as illegitimate internationally and—most importantly here—in the U.S., where eight of the Supreme Tribunal's Justices have been subject to OFAC sanctions since May 2017, and the Chief Justice was among those criminally charged with narco-terrorism, corruption, drug trafficking and other crimes by the U.S. Department of Justice on March 26, 2020.[8]  Recognizing the Award here would give effect to those illegitimate acts.  *See OI European Group B.V.* v. *Bolivarian Republic of Venezuela*, 2019 WL 2185040, at \*5 n.4 (D.D.C. May 21, 2019) (observing that another ICSID panel's refusal to recognize the Interim Government was not "consistent with the D.C. Circuit precedent that the Court is bound to follow").

## II.   THE POST-JUDGMENT INTEREST THAT PLAINTIFFS SEEK IS BARRED AS A MATTER OF LAW.

Just two courts have squarely decided the question of whether the federal mandatory post-judgment interest rate provided in 28 U.S.C. § 1961 applies to ICSID awards. (Opp. at 15.)  The first court to address the question was the Southern District of New York, which concluded in *Mobil Cerro Negro, Ltd.* v. *Bolivarian Republic of Venezuela* that applying § 1961 to an ICSID award would be inconsistent with the pecuniary obligations of the award, in violation of the ICSID Convention and § 1650a.  2015 WL 926011, at \*2 (S.D.N.Y. Mar. 4, 2015).  But that

---

[7]   Plaintiffs claim that the Republic's cross-motion failed to address their argument that the U.S. Government's recognition of the Interim Government is immaterial.  (Opp. at 14.)  That is incorrect.  (*See* Br. at 13-14 & n.14.)

[8]   *See* U.S. Dep't of Treasury, *Treasury Sanctions Eight Members of Venezuela's Supreme Court of Justice* (May 18, 2017), https://www.treasury.gov/press-center/press-releases/Pages/sm0090.aspx; U.S. Dep't of Justice, *Nicolás Maduro and 14 Current and Former Venezuelan Officials Charged with Narco-Terrorism, Corruption, Drug Trafficking and Other Criminal Charges* (March 26, 2020), https://www.justice.gov/opa/pr/nicol-s-maduro-moros-and-14-current-and-former-venezuelan-officials-charged-narco-terrorism.

case was reversed by the Second Circuit, in a decision that expressly declined to decide the interest rate issue. *Mobil Cerro Negro*, 863 F.3d at 125. The second is a decision by a court of this District, in which Judge Jackson considered the Southern District of New York's reasoning but reached the opposite conclusion. *OI European Group*, 2019 WL 2185040, at *7. *OI European Group*—an in-District decision and the only case to address this question that remains good law—certainly is not, as Plaintiffs argue, "an outlier." (Opp. at 3.)

Plaintiffs urge this Court not to follow *OI European Group*, pressing the same tortured reading of § 1650a discussed above, namely, that the statute's phrase "as if the award were a final judgment . . . of one of the several states" modifies only the phrase "full faith and credit," but not "shall be enforced." § 1650a; Opp. at 16 ("That text in no way detracts from the mandate in the first clause of the sentence requiring that the pecuniary obligations of the ICSID award be enforced."). As discussed *supra*, that interpretation is inconsistent with the common-sense meaning of the language of the statute, with the ICSID Convention's own enforcement scheme and with the uniform views of academic commentators.

Plaintiffs' remaining arguments similarly fail, for the reasons set forth in the Republic's prior briefs. *First*, Plaintiffs reiterate their argument that application of the merger doctrine is limited to arbitration awards confirmed under the FAA. (Opp. at 17.) But as Judge Jackson explained in *OI European Group*, application of § 1961 "does not find authority in the FAA—it is a common law doctrine that applies to all money judgments recovered in a federal district court." 2019 WL 2185040, at *7; Br at 17. *Second*, application of § 1961 to ICSID awards would not, as Plaintiffs assert, "place the United States in breach of its treaty obligations under the ICSID Convention." (Opp. at 18.) Rather, the plain language of Article 54 of the ICSID Convention "appears to contemplate that different countries may enforce the award differently."

*OI European Group*, 2019 WL 2185040, at *7; Br. at 17.  Plaintiffs contend that the ICSID Convention permits variation only in the *procedures* to enforce the award (Opp. at 19), but that interpretation has no support in the plain language of either the Convention or the implementing statute.

For these reasons, and those set forth in the Republic's prior briefs (Br. at 14-17; Repub. Br. to Vacate Default at 15-16), the Court should apply § 1961's mandatory post-judgment interest rate.

## CONCLUSION

For the foregoing reasons, the Court should grant the Republic's cross-motion for summary judgment and dismiss the complaint with prejudice.

| | |
|---|---|
| */s/ Joseph E. Neuhaus* | */s/ Judson O. Littleton* |
| Joseph E. Neuhaus (*pro hac vice*) | Judson O. Littleton |
| Sergio J. Galvis | D.C. Bar No. 1027310 |
| James L. Bromley (*pro hac vice*) | SULLIVAN & CROMWELL LLP |
| SULLIVAN & CROMWELL LLP | 1700 New York Avenue, N.W., Suite 700 |
| 125 Broad Street | Washington, D.C.  20006-5215 |
| New York, New York  10004 | Telephone:  202-956-7500 |
| Telephone:  212-558-4000 | Facsimile:  202-293-6330 |
| Facsimile:  212-558-3588 | littletonj@sullcrom.com |
| neuhausj@sullcrom.com | |
| galviss@sullcrom.com | |
| bromleyj@sullcrom.com | *Attorneys for Defendant Bolivarian* |
| | *Republic of Venezuela* |

Dated:  April 20, 2020