**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| VALORES MUNDIALES, S.L., | |
| -and- | |
| CONSORCIO ANDINO, S.L., | No. 1:19-cv-0046-FYP-RMM |
| *Plaintiffs,* | |
| v. | |
| BOLIVARIAN REPUBLIC OF VENEZUELA, | |
| *Defendant.* | |

**DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S**
**PROPOSED FINDINGS AND RECOMMENDATIONS**

Sergio J. Galvis
Joseph E. Neuhaus (*pro hac vice*)
James L. Bromley (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  212-558-4000
Facsimile:  212-558-3588
galviss@sullcrom.com
neuhausj@sullcrom.com
bromleyj@sullcrom.com

Judson O. Littleton
D.C. Bar No. 1027310
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006-5215
Telephone:  202-956-7500
Facsimile:  202-293-6330
littletonj@sullcrom.com

*Attorneys for Defendant Bolivarian*
*Republic of Venezuela*

Dated:  August 17, 2022

# TABLE OF CONTENTS

*Page*

INTRODUCTION ....................................................................................................1

BACKGROUND ....................................................................................................2

LEGAL STANDARD ............................................................................................5

OBJECTIONS........................................................................................................5

BASES OF OBJECTIONS ....................................................................................6

I.  THE R&R FAILS TO RECOGNIZE THAT PREVENTING THE REPUBLIC
FROM EXERCISING ITS RIGHT TO APPEAL WAS A DENIAL OF DUE
PROCESS UNDER APPLICABLE FEDERAL LAW (R&R § II.A) ..............6

    A.  The Relevant Due Process "Floor" Applicable to the ICSID Annulment
Proceedings Is the Right to an Effective Appeal ......................................7

    B.  The Magistrate Judge Improperly Failed to Conduct Her Own Assessment
of Whether the Award Violates the Republic's Due Process Right to an
Effective Appeal ......................................................................................9

II.  THE R&R FAILS TO APPLY THE CORRECT POST-JUDGMENT INTEREST
RATE UNDER 28 U.S.C. § 1961 (R&R § II.B) .............................................12

CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

*Page(s)*

CASES

*Cleveland Bd. Of Educ.* v. *Loudermill*,
470 U.S. 532 (1985)................................................................................................................7

*\*Cohen* v. *Bd. Trustees of Univ. of D.C.*,
311 F. Supp. 3d 242 (D.D.C. 2018) ............................................................. *passim*

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
932 F.3d 126 (3d Cir. 2019).............................................................................................3, 7

*Deutsche Bank AG (London Branch)* v. *Central Bank of Venezuela*
[2022] EWHC 2040 ..............................................................................................................4

*\*Guaranty Tr. Co.* v. *United States*,
304 U.S. 126 (1938).....................................................................................................3, 7, 11

*\*Hausler et al.* v. *The Republic of Cuba, et al.*,
Case No. 08-cv-20197-AJ (S.D. Fla. Aug. 20, 2008) ......................................13, 14

*\*Janet Ray Weininger* v. *Fidel Castro, et al.*,
Case No. 05-civ-7214-VM (S.D.N.Y. June 29, 2007)......................................13, 14

*Miminco, LLC* v. *Democratic Republic of the Congo*,
79 F. Supp. 3d 213 (D.D.C. 2015) .............................................................................13

*Mobil Cerro Negro, Ltd.* v. *Bolivian Republic of Venezuela*,
863 F.3d 96 (2d Cir. 2017).................................................................................................15

*\*OI European Group* v. *Bolivarian Republic of Venezuela*,
2019 WL 2185040 (D.D.C. May 21, 2019) ................................................11, 12, 13

*Siag* v. *Arab Republic of Egypt*,
2009 WL 1834562 (S.D.N.Y. June 19, 2009) .........................................................13

*\*Texaco Inc.* v. *Pennzoil Co.*,
626 F. Supp. 250 (S.D.N.Y. 1986) ..............................................................5, 7, 8, 9

*Texaco Inc.* v. *Pennzoil Co.*,
784 F.2d 1133 (2d Cir. 1986)..........................................................................................5, 8

*The Maret*,
145 F.2d 431 (3d Cir. 1944)............................................................................................11

*Williams* v. *North Carolina*,
    317 U.S. 287 (1942)..................................................................................7, 10

**STATUTES**

9 U.S.C. § 13...........................................................................................................15

22 U.S.C. § 1650a................................................................................................6, 13

28 U.S.C. § 1961.............................................................................................. *passim*

**OTHER AUTHORITIES**

Christoph G. Schreuer, *The ICSID Convention: A Commentary* (2d ed. 2009) ...........................7

Fed. R. Civ. P. 72..................................................................................................1, 5

Local R. Civ. P. 72.3.............................................................................................1, 5

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and Local Civil Rule 72.3(b), Defendant Bolivarian Republic of Venezuela respectfully objects to portions of the August 3, 2022 Report and Recommendation (the "R&R")[1] of the Hon. Robin M. Meriweather, United States Magistrate Judge.  (ECF No. 33.)  Specifically, for the reasons set forth below, the Republic requests that this Court (1) reject the Magistrate Judge's recommendation to grant Plaintiffs' Motion for Summary Judgment, and instead (2) issue an order granting the Republic's Cross-Motion for Summary Judgment.

## INTRODUCTION

In the R&R, the Magistrate Judge recommends that this Court enforce an ICSID award against the Republic notwithstanding the fact that the sole legitimate government of Venezuela recognized by U.S. courts was denied the right to participate in the annulment procedures afforded to every party to an ICSID arbitration.  The Magistrate Judge then recommends that this Court order the Republic to pay the full amount of the ICSID award, including post-judgment interest at a rate that far exceeds the rate Congress prescribed for other federal court judgments.  Because both of these recommendations rest on fundamental legal errors, this Court should reject them.

*First*, the R&R's due process analysis is fundamentally flawed.  Rather than fulfill its obligation to conduct its own inquiry into whether the ICSID annulment proceedings satisfied federal due process standards, the R&R instead simply examines whether the ICSID annulment

---

[1]     The Republic's briefs in this action are referred to as:  Brief in Support of the Republic's Motion to Set Aside the Default (ECF No. 20-1) ("Br. to Vacate Default"), Brief in Support of the Republic's Cross-Motion for Summary Judgment (ECF No. 25-1) ("S.J. Br.") and Reply in Support of the Republic's Cross-Motion for Summary Judgment (ECF No. 31) ("S.J. Reply Br.").  All other capitalized terms shall have the same meaning as set forth in the Republic's briefs, unless otherwise indicated.

committee's decision comports with *ICSID's* due process standards.  As a result, the R&R impermissibly overlooks the due process violation that occurred here when the Special Attorney General of the Interim Government, the only individual that U.S. law recognizes as having authority to represent Venezuela, was denied the right to participate in the annulment proceedings. Because a federal court would not afford full faith and credit to a state court judgment in such circumstances, this Court should not enforce the award here.

*Second*, the R&R erroneously concludes that 28 U.S.C. § 1961, which sets the default post-judgment interest rate applicable to money judgments obtained in federal court, does not apply to the enforcement of ICSID awards.  The Magistrate Judge incorrectly believed this conclusion followed from the ICSID enabling statute's direction that federal courts enforce an ICSID award "as if" it were a state court judgment.  But that instruction in fact points the opposite direction, because—contrary to the Magistrate Judge's apparent misunderstanding—federal courts *also* apply the § 1961 post-judgment interest rate when enforcing state court judgments.  Under the R&R's own reasoning, then, § 1961 should likewise apply to any award in this action.

## BACKGROUND

On July 25, 2017, the ICSID tribunal issued an award against Venezuela.  S.J. Br. at 3.  On May 20, 2018, then-incumbent president Nicolás Maduro declared victory in a rigged and widely discredited election.  S.J. Br. at 4.  In response, on January 23, 2019, the president of the democratically elected Venezuelan National Assembly, Juan Guaidó, assumed the office of Interim President of the Republic pursuant to Article 233 of the Venezuelan Constitution.  *Id.*  That same day, President Trump recognized Mr. Guaidó as the Interim President of Venezuela and declared the Maduro regime illegitimate.  *Id.*  The Biden administration has maintained this

policy.[2]  The Department of Justice has also brought criminal charges against Maduro and more than a dozen of his cronies for running a decades-long "narco-terrorism partnership."  S.J. Br. at 2.  As a consequence of the U.S. government's recognition, U.S. courts are required to recognize the Interim Government as the sole legitimate representative of Venezuela.  *See Guaranty Tr. Co.* v. *United States*, 304 U.S. 126, 138 (1938) (executive branch's "action in recognizing a foreign government" "is conclusive on all domestic courts"); *see also Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 932 F.3d 126, 135 n.2 (3d Cir. 2019) (following *Guaranty Trust* and recognizing the Guaidó government "as authorized to speak and act on behalf of Venezuela").  To facilitate the transition to the Guaidó government, the National Assembly enacted the Democracy Transition Statute, which appointed Mr. José Ignacio Hernández as Special Attorney General of Venezuela and gave him the exclusive authority to represent Venezuela in international arbitrations.  S.J. Br. at 5.

Meanwhile, in November 2017, the Maduro government had initiated an ICSID annulment proceeding regarding the award in this case.  *Id.* at 4.  In March 2019, Mr. Hernández submitted a letter to the ICSID Secretary-General explaining that he had been appointed Special Attorney General of the Republic, and that pursuant to the Democracy Transition Statute, he had exclusive power to represent the Republic in actions against it.  *Id.* at 6.  The ICSID Secretary-General sent this letter to the ICSID annulment committee in this case.  *Id.*

In August 2019, the ICSID annulment committee nonetheless denied Mr. Hernández the right to represent the Republic in the annulment proceedings, instead allowing a

---

[2]      *See* The White House, *Readout of President Biden's Call with Venezuelan Interim President Juan Guaidó* (June 8, 2022), https://www.whitehouse.gov/briefing-room/statements-releases/2022/06/08/readout-of-president-bidens-call-with-venezuelan-interim-president-juan-guaido/.

representative of the illegitimate Maduro regime to represent Venezuela.  *Id.*  In reaching this decision, the ICSID annulment committee relied on a ruling from the Venezuelan Supreme Tribunal of Justice purporting to declare the Democracy Transition Statute invalid.  Br. to Vacate Default at 6.  The Supreme Tribunal has been widely recognized internationally as a corrupt and illegitimate institution.  *Id.*  In fact, eight of the Supreme Tribunal's Justices have been subject to OFAC sanctions since May 2017—almost two years before the ruling on which the ICSID annulment committee relied—based on the U.S. Treasury Department's determination that the Tribunal's rulings had "usurped the authority of Venezuela's democratically-elected legislature."[3] The Chief Justice of the Supreme Tribunal has even been criminally charged with conspiracy and money laundering in connection with "the corrupt receipt or intended receipt of tens of millions of dollars and bribes to illegally fix dozens of civil and criminal cases in Venezuela."[4]

The annulment proceeding concluded in December 2021, when the committee denied the Maduro regime's annulment application.  R&R at 7.  This decision concluded the ICSID proceedings, and the Court then referred the parties' motions to the Magistrate Judge for a report and recommendation.  On August 3, the Magistrate Judge issued the R&R, which recommended

---

[3]     *See* U.S. Dep't of Treasury, *Treasury Sanctions Eight Members of Venezuela's Supreme Court of Justice* (May 18, 2017), https://home.treasury.gov/news/press-releases/sm0090.

[4]     U.S. Dep't of Justice, *Nicolás Maduro Moros and 14 Current and Former Venezuelan Officials Charged with Narco-Terrorism, Corruption, Drug Trafficking and Other Criminal Charges* (Mar. 26, 2020), https://www.justice.gov/opa/pr/nicol-s-maduro-moros-and-14-current-and-former-venezuelan-officials-charged-narco-terrorism. Notably, in a recent decision, London's High Court refused to recognize the decisions of the Supreme Tribunal purporting to declare the Democracy Transition Statute (and the appointment of Mr. Hernández as Special Attorney General) invalid, holding that to do so would conflict with the British government's recognition of the Interim Government, and because the decisions involved procedural "failings" that were in each case "serious clear breaches of natural and substantial justice and a denial of a fair trial."  *Deutsche Bank AG (London Branch)* v. *Central Bank of Venezuela* [2022] EWHC 2040 at ¶¶ 218, 239.

(1) granting Venezuela's motion to set aside the clerk's entry of default, (2) denying Venezuela's summary judgment motion, (3) granting Plaintiffs' summary judgment motion, and (4) ordering Venezuela to pay post-judgment interest at the rate specified in the arbitral award—Libor +2% from January 23, 2013—rather than the mandatory federal rate under 28 U.S.C. § 1961.

## LEGAL STANDARD

Following a magistrate judge's submission of a report and recommendation with respect to a dispositive motion, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). Upon receipt of objections, a district judge "shall make a de novo determination of those portions of a magistrate judge's findings and recommendations to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings and recommendations of the magistrate judge, or may recommit the matter to the magistrate judge with instructions." Local R. Civ. P. 72.3(c).

## OBJECTIONS

The Republic respectfully objects to Sections II.A and II.B of the R&R's Discussion, as well as to its Conclusion. The Republic's specific objections are listed below, followed by a discussion of the bases for the objections.

1. The Magistrate Judge erroneously concluded that the Republic's due process rights were not violated in the ICSID annulment proceedings. *See Texaco Inc.* v. *Pennzoil Co.*, 626 F. Supp. 250, 256–58 (S.D.N.Y. 1986), *aff'd*, 784 F.2d 1133 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1 (1987); *Cohen* v. *Bd. Trustees of Univ. of D.C.*, 311 F. Supp. 3d 242, 256–57 (D.D.C. 2018). (R&R § II.A)

2. The Magistrate Judge erroneously concluded that the mandatory federal post-judgment interest rate under 28 U.S.C. § 1961 does not apply to the enforcement of ICSID awards. (R&R § II.B)

**BASES OF OBJECTIONS**

I.   **THE R&R FAILS TO RECOGNIZE THAT PREVENTING THE REPUBLIC FROM EXERCISING ITS RIGHT TO APPEAL WAS A DENIAL OF DUE PROCESS UNDER APPLICABLE FEDERAL LAW (R&R § II.A).**

Under the ICSID Convention, contracting states are required to "recognize an award rendered pursuant to [the ICSID Convention] as binding and enforce the pecuniary obligations imposed by that award within its territories *as if it were a final judgment of a court in that State*." *See* Convention on the Settlement of Investment Disputes between States and Nationals of Other States, art. 54, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention") (emphasis added). The ICSID enabling statute in the United States requires courts to afford ICSID awards "the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a.

As the Magistrate Judge correctly recognized, § 1650a requires federal courts enforcing ICSID awards to conduct the same full faith and credit inquiry they would apply to an authenticated state court judgment. R&R at 13–14. The Magistrate Judge also correctly recognized that, although a federal court conducting that inquiry generally will look first to whether the state court itself would decline to enforce the judgment, federal courts also conduct a limited, independent review of "the judgment-rendering jurisdiction's procedures to ensure they satisfy a constitutional floor of due process." R&R at 15 (quoting *Kremer* v. *Chem. Const. Corp.*, 456 U.S. 461, 480–85 (1982)). But the Magistrate Judge then failed to conduct that due process inquiry. Rather, the R&R concluded simply that it could not "second-guess" the ICSID annulment committee's determination that the Interim Government was not entitled to represent Venezuela in the annulment proceeding. R&R at 18. That decision is erroneous because it neglects the federal court's own independent obligation to ensure that the "constitutional floor of due process" was satisfied, and ignores the principle that *federal courts*—regardless of what the ICSID annulment

-6-

committee decided—must recognize the Interim Government as the legitimate representative of Venezuela. *See, e.g.*, *Guaranty Trust*, 304 U.S. at 138; *Crystallex*, 932 F.3d at 135 n.2. Because the Interim Government was indisputably denied the right to participate in the annulment proceeding, the award does not meet the basic floor of due process.

A.   *The Relevant Due Process "Floor" Applicable to the ICSID Annulment Proceedings Is the Right to an Effective Appeal.*

An ICSID award, like a state court judgment, is entitled to full faith and credit only to the extent it "meet[s] the tests of justice and fair dealing that are embodied in the historic phrase 'due process of law.'" *Williams* v. *North Carolina*, 317 U.S. 287, 306 (1942) (Frankfurter, J., concurring). As explained in the Republic's briefs (Br. to Vacate Default at 9–12; S.J. Br. at 9–14), it is well-established that the denial of a meaningful opportunity to be heard is a due process violation. *See Cohen*, 311 F. Supp. 3d at 255–56; s*ee also Cleveland Bd. Of Educ.* v. *Loudermill*, 470 U.S. 532, 546 (1985). Although due process does not require a right to appeal, when a state chooses to create a right of appeal, due process *does* guarantee the right to effectively pursue that appeal. *See Texaco*, 626 F. Supp. at 256. As relevant here, the ICSID Convention creates a right of review through annulment procedures.[5]

Yet in this case, ICSID denied Venezuela a meaningful opportunity to be heard when it improperly refused to allow the Interim Government to participate in the annulment proceedings. The Interim Government of President Juan Guaidó is the legitimate government of Venezuela and the only entity entitled to represent Venezuela in U.S. courts. Br. to Vacate Default

---

[5]   Indeed, the deference owed by enforcing courts to ICSID awards under the Treaty is based on the existence of that appeal right. *See* Christoph G. Schreuer, *The ICSID Convention: A Commentary* 1118 (2d ed. 2009) (explaining that the drafters of the ICSID Convention agreed to "limiting or eliminating the grounds for [domestic court] review" "in view of the internal review system provided by the ICSID Convention").

at 2–3.  Rather than allow the Interim Government's authorized representative, Special Attorney General José Ignacio Hernández, to represent Venezuela before the annulment committee, ICSID—relying on a decision from the undemocratic and illegitimate Venezuelan Supreme Tribunal—allowed the corrupt Maduro regime to represent Venezuela's interests in the annulment proceedings.  Br. to Vacate Default at 5–6.  The Maduro regime's attempt to annul the award was ultimately unsuccessful.  R&R at 7.

Under established principles recognized by federal courts, this effective denial of the Republic's right to pursue an appeal violated its due process rights.  For example, in *Texaco, Inc.* v. *Pennzoil Co.*, the District Court for the Southern District of New York enjoined Pennzoil from enforcing a Texas state court judgment against Texaco.  626 F. Supp. at 251.  Texaco argued that the supersedeas bond and lien provisions of Texas law—which would have required the company to post a bond of more than $11 billion in order to seek appellate review of the judgment against it—violated the Due Process Clause by effectively precluding Texaco from exercising its right to appeal in the Texas courts and, if necessary, to the U.S. Supreme Court.  *Id.*  The district court agreed, finding that the prohibitive Texas bond requirement violated due process by rendering Texaco's right to appeal "meaningless."  *Id.* at 257.  The district court did not simply defer to Texas state court procedures that required the posting of the bond in order to obtain a stay pending appeal—or to the Texas state court's application of those procedures in that case—but conducted its own independent due process inquiry. The Second Circuit affirmed, concluding that "due process requires that, once the state has created a right of appeal, it must 'offer each defendant a fair opportunity to obtain an adjudication on the merits of his appeal.'"  784 F.2d at 1154.

Similarly, in *Cohen*, this Court concluded that a terminated tenured university professor was denied procedural due process where his union declined to pursue an available

arbitral appeal of the university's decision.  311 F. Supp. 3d at 256.  Denying a motion to dismiss a Section 1983 claim, the Court held that the provisions of the collective bargaining agreement that effectively denied the professor the ability to pursue his own appeal of the university's termination decision violated the professor's due process rights.  *Id.* at 245, 256.  Notably, the Court thought it insufficient that the professor had an earlier opportunity to overturn the union's decision by appealing to the University president; all that mattered is that the agreement barred the professor from obtaining "independent review of the merits of [the] termination decision" if the union decided not to appeal.  *Id.* at 256.

In short, the lessons of *Texaco* and *Cohen* are that due process is violated where a party is denied an effective right to appeal a decision against it that is available to others, and that affording appeal rights to another—even one deemed by the state or state agency to be a proper representative of the party—does not cure that fundamental due process violation.

B.     *The Magistrate Judge Improperly Failed to Conduct Her Own Assessment of Whether the Award Violates the Republic's Due Process Right to an Effective Appeal.*

The R&R brushes aside these important due process principles, concluding that *Texaco* and *Cohen* are "inapposite" because "[s]ufficient procedures were observed in the ICSID arbitration."  R&R at 16, 18.  The R&R recommends that because "*ICSID decided* the question about Venezuela's proper representation for purposes of the ICSID arbitration and *consistent with ICSID's arbitration rules and procedures*," this Court should "refuse[] to second-guess the Committee's decision" and go no further.  R&R at 17–18 (emphasis added).

But the constitutional due process "floor" is an independent federal law requirement that the Court must assess for itself—it may not simply defer to ICSID's determination.  Just as the *Texaco* court did not simply consider whether the supersedeas bond procedures as applied to Texaco complied with Texas law, it is not enough for this Court to simply evaluate whether the

ICSID annulment committee's conclusion conformed to "ICSID's arbitration rules and procedures." The Court must make its *own* determination as to whether the ICSID proceedings in this case satisfied the constitutional floor of due process.

Suppose, for instance, that a state court decided that a single 20-second commercial during the Super Bowl was sufficient "notice" to a defendant that he had been sued, and entered a default judgment against him on that basis. Or, closer to the facts here, suppose that a lawyer who had been fired by his client nevertheless appeared to represent the client in state court, and the court entered a judgment against the client based on that lawyer's purported representation at a hearing. A federal court deciding whether to grant full faith and credit to those state court judgments would not simply defer to the *state courts'* determinations of those parties' rights under state law. It would instead engage in its own inquiry into whether the state court proceedings and resulting judgments "meet the tests of justice and fair dealing that are embodied in the historic phrase 'due process of law.'" *Williams*, 317 U.S. at 306. The R&R impermissibly fails to conduct that independent inquiry.

The clear conclusion of that independent inquiry is that the award against the Republic is not entitled to full faith and credit in this Court, because it violates due process principles. The Interim Government was indisputably denied *any* opportunity to participate in the annulment proceeding because the annulment committee failed to recognize the legitimacy of Mr. Hernández, and instead allowed the illegitimate Maduro regime to represent Venezuela. In so doing, the annulment committee relied on a decision from the corrupt Venezuelan Supreme Tribunal involving "clear breaches of natural and substantial justice." S.J. Br. at 6 n.9; *see also supra* n.4. The R&R's conclusion that the due process inquiry begins and ends with the ICSID

annulment committee's fundamentally flawed decision that the Maduro regime was entitled to represent the Republic is thus incorrect.

As a matter of U.S. law, the acts of the Maduro regime are not the acts of the Venezuelan government, and the opportunity to appeal that the ICSID annulment committee offered that regime cannot meet due process standards (any more than the union's decision not to appeal satisfied due process in *Cohen* or the judgment rendered after representation by a terminated lawyer in the hypothetical above would constitute an opportunity to be heard).  Under the Supreme Court's decision in *Guaranty Trust*, U.S. courts may not give effect to the acts of the illegitimate Maduro regime in any way.  *See, e.g., Guaranty Tr.*, 304 U.S. at 138; *The Maret*, 145 F.2d 431, 442 (3d Cir. 1944) (refusing to recognize supplier's lien on nationalized ship, and holding, "[s]ince the decrees of nationalization and transfer made by the Soviet Republic of Estonia may not be recognized, we cannot hold that the supplies furnished to the Maret were furnished upon the order of her owner").  Enforcing an award issued by a court or tribunal that recognized only the Maduro regime would make nonsense of this requirement, enabling plaintiffs to obtain U.S. court enforcement of judgments and awards that no U.S. court would grant.  Indeed, this Court has noted that another ICSID panel's refusal to recognize Mr. Hernández, cited by lawyers hired by the Maduro regime as authority for their unsuccessful attempt to be recognized in federal court, was not "consistent with the D.C. Circuit precedent [recognizing the Guaidó government's right to represent the Republic] that the Court is bound to follow."  *See OI European Group* v. *Bolivarian Republic of Venezuela*, 2019 WL 2185040, at *5 n.4 (D.D.C. May 21, 2019).  Enforcing the award here based on the Maduro regime's participation in the annulment proceedings would also be

inconsistent with years of U.S. foreign policy, which has refused to recognize that regime and its representatives.[6]

Rather than "[r]efusing to second-guess the Committee's decision," the Court must make its own assessment of whether that decision comports with basic due process principles. Because the only recognized representative of the Republic was indisputably denied the Republic's right to appeal the award, that award falls beneath the floor of due process protections, and thus should not be enforced.

## II.   THE R&R FAILS TO APPLY THE CORRECT POST-JUDGMENT INTEREST RATE UNDER 28 U.S.C. § 1961 (R&R § II.B).

The R&R also erroneously recommends that Venezuela be ordered to pay "compound interest at Libor + 2% rate from January 23, 2013, until the date of payment."  R&R at 26.  The correct post-judgment interest rate is calculated under 28 U.S.C. § 1961, which applies to all judgments in federal courts, including judgments enforcing other foreign arbitral awards (R&R at 22–23) and, as discussed below, to judgments enforcing state court judgments.  That statute provides that interest shall be calculated from the date of the entry of judgment at a rate "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment."  R&R at 19; 28 U.S.C. § 1961(a).

In *OI European Group B.V.* v. *Bolivarian Republic of Venezuela*, Judge Amy Berman Jackson of this District found that "§ 1961 applies [to judgments confirming ICSID awards], and the interest rate set forth in the federal statute [applies] post-judgment."  2019 WL

---

[6]     *See* U.S. Dep't of State, *U.S. Relations with Venezuela: Bilateral Relations Fact Sheet* (Mar. 10, 2022), https://www.state.gov/u-s-relations-with-venezuela/ (noting that the U.S. government considers the National Assembly to be "the only legitimate federal institution" in Venezuela and condemning the "illegitimate Maduro regime").

2185040, at *7.  Judge Jackson held that § 1961 was applicable because "once the Award is confirmed, it merges with the judgment."  *Id.* at *6.  Likewise, in *Miminco, LLC* v. *Democratic Republic of the Congo*, Judge Contreras held that "because the Court recognizes the award as if it were its own judgment, the Court must order that post-judgment interest be paid on the full award amount" and applied § 1961 to an ICSID award.  79 F. Supp. 3d 213, 218–20 (D.D.C. 2015).  The R&R disagrees with Judges Jackson and Contreras and concludes that § 1961 is inapplicable to ICSID awards because the Magistrate Judge believed that, unlike other types of arbitral awards, an ICSID award does not "merge" into the federal court decision enforcing it.  R&R at 21–22.  The R&R based this conclusion on the language of the ICSID enabling statute requiring that ICSID awards be "enforced and . . . given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States," 28 U.S.C. § 1650a(a).  R&R at 21.  According to the Magistrate Judge, because the statute makes a "judgment enforcing an ICSID award . . . akin to a *state* court judgment, not a *federal* court judgment," "§ 1961's mandatory post-judgment interest rate for *federal* judgments does not apply."  *Id.* at 23 (emphasis in original).

But the R&R's reasoning leads to the *opposite* conclusion:  federal judgments enforcing state court judgments, while rare,[7] bear post-judgment interest *at the federal rate*.  *See, e.g.,* Amended Final Default Judgment Granting Full Faith & Credit to State Judgment, *Hausler et al.* v. *The Republic of Cuba et al.*, Case No. 08-cv-20197-AJ (S.D. Fla. Aug. 20, 2008) (attached as Annex A); Stipulation and Order to Correct Judgment, *Janet Ray Weininger* v. *Fidel Castro, et al.*, Case No. 05-civ-7214-VM (S.D.N.Y. June 29, 2007) (Annex B).  For example, in *Hausler*, the

---

[7]    *See Siag* v. *Arab Republic of Egypt*, 2009 WL 1834562, at *1 (S.D.N.Y. June 19, 2009) (noting that "[c]onversion of a state court judgment into a federal court judgment is not common").

Southern District of Florida granted full faith and credit to a Florida state court judgment and ordered that post-judgment interest would apply "at the rate set by 28 U.S.C. § 1961." *Id.*  The relevant text of the Amended Final Default Judgment in *Hausler* reads:

> Pursuant to 28 U.S.C. § 1738, full faith and credit, and federal recognition, is given to the Amended Final Judgment Dated January 19, 2007, in *Hausler et al. v. Republic of Cuba et al.*, No. 02-12475 (Div. 04), Eleventh Judicial Circuit, in and for Miami-Dade County, Florida ("Amended Judgment"), which awarded the plaintiffs 400 million dollars in damages against the defendants jointly and severally, and bore interest at the rate of 9% per annum under Florida law until satisfied.
>
> Given that the Amended Judgment has not been satisfied, interest on the judgment (at the rate of 9%) stands at 54 million dollars as of July 19, 2008.  The Amended Judgment is therefore now 400 million dollars in damages, plus 54 million dollars in interest, in favor of the plaintiffs and against the defendants against whom final default judgment is hereby entered.
>
> The Amended Judgment will bear post-judgment interest from July 28, 2008, the date of this Court's prior Order, at the rate set by 28 U.S.C. § 1961.

*Accord* Stipulation and Order to Correct Judgment in *Weininger* ¶ 3 ("For the time periods *after* entry of their respective federal judgments, the Clerk should use the corresponding federal rate applicable to each federal judgment and not state court interest rates.") (emphasis in original).

In short, because ICSID awards must be treated "as if the award were a final judgment of a court of general jurisdiction of one of the several [s]tates," and state court judgments enforced in federal court are subject to § 1961, § 1961 applies to ICSID awards as well.  If the R&R were adopted, it would create an unjustified exception to the requirement of § 1961(a) setting the rate of interest to "be allowed on *any* money judgment in a civil case recovered in a district court." (emphasis added).

The R&R relies on the difference between the language of the ICSID enabling statute and the Federal Arbitration Act to explain the different treatment that the R&R proposes for judgments confirming ICSID arbitration awards and judgments confirming other awards, which the R&R acknowledges accrue interest at the federal rate.  R&R at 22–23.  But the FAA

merely provides for judgment to be entered confirming an award "as if it was rendered in an action," and for such judgment to be enforced "as if it had been rendered in an action in the court in which it is entered."  9 U.S.C. § 13.[8]  That language simply says that a judgment entered confirming an award (that is, issuing a judgment on the award) is treated like any other judgment issued in a civil action.   The same is true for ICSID awards: the ICSID enabling statute contemplates that a *federal* judgment be issued in order to enforce an ICSID award, just as federal judgments are issued to enforce state court judgments.  *Mobil Cerro Negro, Ltd.* v. *Bolivian Republic of Venezuela*, 863 F.3d 96, 121–22 (2d Cir. 2017).  In all these cases, the resulting federal court judgment is subject to all of the rules applicable to other federal court judgments, including the rate of post-judgment interest set forth in 28 U.S.C. § 1961.

## CONCLUSION

For the foregoing reasons, the Republic respectfully objects to Sections II.A and II.B of the R&R's Discussion, as well as to its Conclusion, and requests that the Court reject the recommendations set forth in those sections of the R&R and instead grant the Republic's motion for summary judgment.

<div style="margin-left:auto; width:50%">

 /s/ Judson O. Littleton
</div>

| | |
|---|---|
| Joseph E. Neuhaus (*pro hac vice*) | Judson O. Littleton |
| Sergio J. Galvis | D.C. Bar No. 1027310 |
| James L. Bromley (*pro hac vice*) | SULLIVAN & CROMWELL LLP |
| SULLIVAN & CROMWELL LLP | 1700 New York Avenue, N.W., Suite 700 |
| 125 Broad Street | Washington, D.C.  20006-5215 |
| New York, New York  10004 | Telephone:  202-956-7500 |
| Telephone:  212-558-4000 | Facsimile:  202-293-6330 |
| Facsimile:  212-558-3588 | littletonj@sullcrom.com |
| neuhausj@sullcrom.com | |
| galviss@sullcrom.com | |
| bromleyj@sullcrom.com | *Attorneys for Defendant Bolivarian* |
| | *Republic of Venezuela* |

---

[8]      The FAA was enacted in 1925 and reflects the concepts and forms of action at that time.

Dated:  August 17, 2022

# Annex A

CFN 2008R0800318 OR BK 26590 Pgs 4783 - 4784 (2pgs)
RECORDED 10/01/2008 08:19:04
HARVEY RUVIN, CLERK OF COURT, MIAMI-DADE COUNTY, FLORIDA

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-20197-CIV-JORDAN

JEANNETTE HAUSLER as
Successor Personal Representative
of the Estate of ROBERT OTIS FULLER,
("BOBBY FULLER"), Deceased, on behalf
of THOMAS CASKEY as Personal
Representative of the Estate of LYNITA
FULLER CASKEY, surviving daughter
of ROBERT OTIS FULLER, The
ESTATE OF ROBERT OTIS FULLER,
FREDERICK FULLER, FRANCES
FULLER, GRACE LUTES, JEANNETTE
HAUSLER, AND IRENE MOSS

**CLOSED
CIVIL
CASE**

            Plaintiffs,

vs.

THE REPUBLIC OF CUBA, FIDEL CASTRO
RUZ, individually and as President of the
State and Council Of Ministers, Head of
the Communist Party and Commander-in
Chief of the Military, RAUL CASTRO RUZ,
individually and as First Vice President Of
the Council of State and Council of Ministers
and Head of the Cuban Revolutionary
Armed Forces, The CUBAN
REVOLUTIONARY ARMED FORCES,
and EL MINISTERIO DEL INTERIOR,



            Defendants

---

**AMENDED FINAL DEFAULT JUDGMENT GRANTING FULL FAITH & CREDIT TO STATE JUDGMENT[1]**

The plaintiffs' motion for final default judgment [D.E. 36] against defendants The Republic of
Cuba, Fidel Castro Ruz, Raul Castro Ruz, and The Cuban Revolutionary Armed Forces is GRANTED.

---

[1] Amended solely to exclude Defendant El Ministerio Del Interior.

Pursuant to 28 U.S.C. § 1738, full faith and credit, and federal recognition, is given to the Amended Final Judgment Dated January 19, 2007, in *Hausler et al. v. Republic of Cuba et al.*, No. 02-12475 (Div. 04), Eleventh Judicial Circuit, in and for Miami-Dade County, Florida ("Amended Judgment"), which awarded the plaintiffs 400 million dollars in damages against the defendants jointly and severally, and bore interest at the rate of 9% per annum under Florida law until satisfied.

Given that the Amended Judgment has not been satisfied, interest on the judgment (at the rate of 9%) stands at 54 million dollars as of July 19, 2008.  The Amended Judgment is therefore now 400 million dollars in damages, plus 54 million dollars in interest, in favor of the plaintiffs and against the defendants against whom final default judgment is hereby entered.

The Amended Judgment will bear post-judgment interest from July 28, 2008, the date of this Court's prior Order, at the rate set by 28 U.S.C. § 1961.

The Clerk is hereby ordered to administratively re-open this matter.

DONE AND ORDERED in chambers in Miami-Dade County, Florida, this ____ day of August, 2008.

Adalberto Jordan
United States District Judge

cc: All counsel of record

Certified to be a true and correct copy of the document on file
Steven M. Larimore, Clerk,
U.S. District Court
Southern District of Florida

By _____ Deputy Clerk

Date SEP 2 2 2008

# **Annex B**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- x
                         :

JANET RAY WEININGER, Individually, and as          ECF Case
Administrator, Executor, Personal Representative, and/or   :
Guardian of the Estate of her father, Thomas Willard      05 Civ. 7214 (VM)
Ray,                                      :

                 Plaintiff,               :

            - against -             **STIPULATION AND ORDER TO**

                                            : **CORRECT JUDGMENT**

FIDEL CASTRO, as an individual, agency, and           :
instrumentality of The Republic of Cuba, RAUL
CASTRO, as an individual, agency, and instrumentality    :
of The Republic of Cuba, the ARMY OF THE
REPUBLIC OF CUBA, an agency and instrumentality of   .
The Republic of Cuba; and THE REPUBLIC OF CUBA,     :
a foreign state,                            :

               Defendants.             :

               - and -                    :

JPMORGAN CHASE BANK, N.A.,             :

               Garnishee-Respondent.         :

----------------------------------------------------------------------- x
                         :

JPMORGAN CHASE BANK, N.A.,             :

               Garnishee-Respondent and
               Third-Party Petitioner,      :

            - against -             :

DOROTHY ANDERSON MCCARTHY, as Personal      :
Representative of the Estate of Howard Anderson,
RABINOWITZ, BOUDIN, STANDARD, KRINSKY &    .
LIEBERMAN, P.C., in Its Capacity as Alleged Fiduciary
in Respect of the Rabinowitz Boudin Special Account (as   .
Defined in the Third-Party Petition), BANCO

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

NACIONAL DE CUBA, EMPRESA CUBANA
EXPORTADORA DE ALIMENTOS Y PRODUCTOS        :
VARIOS (CUBANEXPORT), EMPRESA DE
TELECOMUNICACIONES INTERNACIONALES DE       :
CUBA (EMTELCUBA), EMPRESA DE
TELECOMUNICACIONES DE CUBA SA (ETECSA),     :
EMPRESA DE RADIOCOMUNICACIÓN Y
DIFUSIÓN DE CUBA (RADIOCUBA), AT&T CORP.,    :
CUBAN AMERICAN TELEPHONE AND
TELEGRAPH COMPANY, JOHN W. SNOW,            :
SECRETARY OF THE TREASURY, In His Official
Capacity,                                    :

                    Adverse Claimants-       :
                    Respondents.

                                             :
          - and -

                                             :
JANET RAY WEININGER, Individually, and as
Administrator, Executor, Personal Representative, and/or   :
Guardian of the Estate of her father, Thomas Willard
Ray,                                         :

                    Plaintiff and Adverse    :
                    Claimant-Respondent.

-------------------------------------------------------------------- X
                                             :
JANET RAY WEININGER, Individually, and as
Administrator, Executor, Personal Representative, and/or  :
Guardian of the Estate of her father, Thomas Willard
Ray,                                         :

                    Petitioner,              :

          - against -                        :

JPMORGAN CHASE BANK, N.A.,                   :

                    Respondent.              :
-------------------------------------------------------------------- X

485726_1

2

JANET RAY WEININGER, Individually, and as       :
Administrator, Executor, Personal Representative, and/or   :
Guardian of the Estate of her father, Thomas Willard
Ray,                                            :

                 Petitioner,
                                               :

      - against -
                                               :

RABINOWITZ, BOUDIN, STANDARD, KRINSKY &
LIEBERMAN, P.C.,                               :

                 Respondent.           :

-------------------------------------------------------------------- X

         WHEREAS, by Decision and Order of the Court dated November 17, 2006 (the "Decision and Order"), the Court granted the plaintiffs/petitioners Janet Ray Weininger and Dorothy Anderson McCarthy their respective motions pursuant to Rules 13 and 69 of the Federal Rules of Civil Procedure for partial summary judgment ordering turnover of certain funds maintained at third-party petitioner JPMorgan Chase Bank, N.A. ("JPM Chase");

         WHEREAS, the Decision and Order ordered the Clerk to enter judgment in favor of each of the claimants and directed the Clerk to calculate interest for purposes of permitting the claimants to recover amounts not in excess of certain amounts with interest for purposes of the turnover which is the subject of the Decision and Order;

         WHEREAS, on November 27, 2006, this Court entered two orders entitled "Stipulation and Order" (Docket Entries 172 and 173) (the "Stipulations and Orders"), which modified certain figures and information contained in the Decision and Order;

         WHEREAS, in addition to determining the amount of attorneys fees payable to JPM Chase, one such Stipulation and Order (Docket Entry 173) corrected a bank account number and modified a specified sum of money with respect to the Weininger proceeding, and the other

3

485726_1

Stipulation and Order (Docket Entry 172) amended the Decision and Order with respect to the amount to remain in the AT&T Long Lines account;

WHEREAS, on December 1, 2006, the Clerk issued a Judgment (Docket Entry 174), which was based on the Decision and Order but that did not, however, incorporate the amendments to the Decision and Order encompassed within the Stipulations and Orders referred to above;

WHEREAS, Janet Ray Weininger ("Weininger") obtained her original Florida state court judgment on November 18, 2004, which awarded Weininger $21,562,000.00 in compensatory damages (a judgment later amended by the Florida court on June 15, 2005, but without changing the $21,562,000.00 award of compensatory damages);

WHEREAS, on December 13, 2005, this Court entered a federal judgment based on the Weininger Florida judgment, which included an incorrect interest computation;

WHEREAS, on April 17, 2003, Dorothy Anderson McCarthy obtained her original Florida state court judgment against the Republic of Cuba, which awarded her $67,000,000.00 in compensatory damages;

WHEREAS, on February 2, 2005, the United States District Court for the Southern District of Florida, in Case No. 04-21153-Civ-King, issued a federal judgment based on Dorothy Anderson McCarthy's Florida state court judgment (which Dorothy Anderson McCarthy registered in the Southern District of New York);

WHEREAS, Rule 60 of the Federal Rules of Civil Procedure provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders";

485726_1

WHEREAS, 18 U.S.C. § 1961 provides that, with respect to interest on federal judgments, "[s]uch interest shall be calculated from the date of entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment";

WHEREAS, Weininger and Gary Anderson, as the Personal Representative of the Estate of Howard Anderson ("Anderson"),[1] have reached an agreement concerning correcting inaccuracies in the Judgment arising from clerical errors;

NOW THEREFORE, it is stipulated and agreed by Weininger and Anderson, with the agreement of counsel for JPM Chase and AT&T Corp./Cuban American Telephone and Telegraph Company, that this Court should correct the clerical errors in the Judgment dated December 1, 2006, including the corresponding interest calculations (see Docket Entry 174) pursuant to Rule 60 of the Federal Rules of Civil Procedure, and they state as follows:

1.    In connection with the preparation and entry of the Judgment, the following provisions from the Stipulations and Orders were not incorporated: (1) the correction of the account number for "Rabinowitz Boudin SPL for the AC of the Republic of Cuba & Its Agencies BLK ACCT (Account No. 092-037119)" (see Docket Entry 173 at ¶ 2); (2) the amendment of the relevant figure to be used for the calculation with respect to the Weininger proceeding, namely "the sum of twenty-two million, eight hundred fifty-two thousand, one hundred seventy-

---

[1]    Dorothy Anderson McCarthy has passed away, and Gary Anderson (her son and the son of decedent Howard Anderson) has since been appointed Personal Representative of the Estate of Howard Anderson by the Circuit Court in and for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

485726_1

five dollars and fifty-six cents ($22,852,175.56)" (see Docket Entry 173 at ¶ 3);[2] and (3) the amendment to change the principal amount of the AT&T Long Lines account from $6,332,843.49 to $6,157,179.76 (see Docket Entry 172 at ¶¶ 1, 2).

2.  Furthermore, in addition to taking into consideration the revision of principal amounts dictated by the Stipulations and Orders, the interest calculations reflected in the Judgment need to be corrected, both as a result of the changes to the principal amounts reflected in the Stipulations and Orders as well as the rates used to compute interest.[3] As this case involves the execution upon federal judgments, Section 1961 of the United States Code applies to the calculation of post-judgment interest. Under the formula applicable to federal judgments, the rate applicable to the Anderson federal judgment is 2.89%, which was the weekly average 1-year constant maturity Treasury yield on January 28, 2005 (i.e., the week before the February 2, 2005, federal judgment in Anderson). The rate applicable to the Weininger federal judgment is 4.35%, which was the weekly average 1-year constant maturity Treasury yield on December 9, 2005 (i.e., the week before the December 13, 2005, federal judgment in Weininger).

3.  For the time periods *after* entry of their respective federal judgments, the Clerk should use the corresponding federal rate applicable to each federal judgment and not state court interest rates.

4.  Likewise, for the same reason, the Florida state rate of interest applies to the Florida judgments during the period before they were entered as federal judgments. Accordingly, as this Court issued a federal judgment based on Weininger's Florida judgment, the

---

[2]  As explained below, this figure requires further correction as it is based on a previous interest calculation that needs to be corrected.

[3]  In adding interest to the Weininger Order and Judgment dated December 13, 2005, the Clerk apparently used a 12% interest rate from June 15, 2005, through December 13, 2005. (See D.E. 71 at 3.) As explained herein, the parties agree that this interest calculation should instead have entailed calculating a 7% interest rate from November 18, 2004, through December 13, 2005.

6

7% Florida rate of interest applicable to 2004 judgments applies to the Weininger judgment from November 18, 2004 (i.e., the date of the original Weininger Florida judgment) through December 13, 2005 (i.e., the date of the Weininger federal judgment). Weininger and Anderson each reserve the right to seek the state (as opposed to federal) rate of interest for the time periods preceding their federal judgments.

     5.    Based on the foregoing, it is evident that these are the types of clerical calculations that require correction pursuant to Rule 60 of the Federal Rules of Civil Procedure. The Clerk is directed to issue a corrected judgment in the form attached hereto as Exhibit A.

Dated: June ___, 2007

GREENBERG TRAURIG, LLP

By: _____
James W. Perkins, Esq. (JWP 6684)
*Attorneys for Petitioner, Adverse-Claimant*
*Respondent Janet Ray Weininger*
MetLife Building, 200 Park Avenue
New York, New York 10166
(212) 801-9200

TEW CARDENAS LLP

By: _____
Joseph A. DeMaria (JD 5668)
Bryan T. West (BW 8739)
*Attorneys for Petitioner, Adverse-Claimant*
*Respondent Dorothy Anderson McCarthy, as*
*the Personal Representative of the Estate of*
*Howard Anderson*
Four Seasons Tower
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131-3407
(305) 536-1112

DAVIS POLK & WARDWELL

By: _____
James L. Kerr, Esq. (JK-3900)
*Attorneys for Garnishee-Respondent*
*Third-Party Petitioner JPMorgan Chase Bank, N.A.*
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SIDLEY AUSTIN LLP

By: _____
Lynn A. Dummett, Esq. (LD-2717)
*Attorneys for Adverse Claimants-Respondents*
*AT&T Corp. and Cuban American Telephone*
*and Telegraph Company*
787 Seventh Avenue
New York, New York 10019
(212) 839-5938

SO ORDERED: 2 2 June 2007

_____
VICTOR MARRERO
U.S.D.J

8

485726_1

Dated: June ___, 2007

GREENBERG TRAURIG, LLP

By: _____
James W. Perkins, Esq. (JWP 6684)
*Attorneys for Petitioner, Adverse-Claimant*
*Respondent Janet Ray Weininger*
MetLife Building, 200 Park Avenue
New York, New York 10166
(212) 801-9200

TEW CARDENAS LLP

By: _____
Joseph A. DeMaria (JD 5668)
Bryan T. West (BW 8739)
*Attorneys for Petitioner, Adverse-Claimant*
*Respondent Dorothy Anderson McCarthy, as*
*the Personal Representative of the Estate of*
*Howard Anderson*
Four Seasons Tower
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131-3407
(305) 536-1112

DAVIS POLK & WARDWELL

By: _____
James L. Kerr, Esq. (JK-3900)
*Attorneys for Garnishee-Respondent*
*Third-Party Petitioner JPMorgan Chase Bank, N.A.*
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SIDLEY AUSTIN LLP

By: _____
Lynn A. Dummett, Esq. (LD-2717)
*Attorneys for Adverse Claimants-Respondents*
*AT&T Corp. and Cuban American Telephone*
*and Telegraph Company*
787 Seventh Avenue
New York, New York 10019
(212) 839-5938

SO ORDERED: 22 June 2007

_____
VICTOR MARRERO
U.S.D.J

8

485726_1

Dated: June ___, 2007

GREENBERG TRAURIG, LLP

By: _____
James W. Perkins, Esq. (JWP 6684)
*Attorneys for Petitioner, Adverse-Claimant*
*Respondent Janet Ray Weininger*
MetLife Building, 200 Park Avenue
New York, New York 10166
(212) 801-9200

TEW CARDENAS LLP

By: _____
Joseph A. DeMaria (JD 5668)
Bryan T. West (BW 8739)
*Attorneys for Petitioner, Adverse-Claimant*
*Respondent Dorothy Anderson McCarthy, as*
*the Personal Representative of the Estate of*
*Howard Anderson*
Four Seasons Tower
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131-3407
(305) 536-1112

DAVIS POLK & WARDWELL

By: _____
James L. Kerr, Esq. (JK-3900)
*Attorneys for Garnishee-Respondent*
*Third-Party Petitioner JPMorgan Chase Bank, N.A.*
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SIDLEY AUSTIN LLP

By: _____
Lynn A. Dummett, Esq. (LD-2717)
*Attorneys for Adverse Claimants-Respondents*
*AT&T Corp. and Cuban American Telephone*
*and Telegraph Company*
787 Seventh Avenue
New York, New York 10019
(212) 839-5938

SO ORDERED: 2 7 June 2007

VICTOR MARRERO
U.S.D.J

485726_1

8

Dated: June 18, 2007

GREENBERG TRAURIG, LLP

By: _____
James W. Perkins, Esq. (JWP 6684)
*Attorneys for Petitioner, Adverse-Claimant*
*Respondent Janet Ray Weininger*
MetLife Building, 200 Park Avenue
New York, New York 10166
(212) 801-9200

TEW CARDENAS LLP

By:_____
Joseph A. DeMaria (JD 5668)
Bryan T. West (BW 8739)
*Attorneys for Petitioner, Adverse-Claimant*
*Respondent Dorothy Anderson McCarthy, as*
*the Personal Representative of the Estate of*
*Howard Anderson*
Four Seasons Tower
1441 Brickell Avenue, 15th Floor
Miami, Florida 33131-3407
(305) 536-1112

DAVIS POLK & WARDWELL

By:_____
James L. Kerr, Esq. (JK-3900)
*Attorneys for Garnishee-Respondent*
*Third-Party Petitioner JPMorgan Chase Bank, N.A.*
450 Lexington Avenue
New York, New York 10017
(212) 450-4000

SIDLEY AUSTIN LLP

By:_____
Lynn A. Dummett, Esq. (LD-2717)
*Attorneys for Adverse Claimants-Respondents*
*AT&T Corp. and Cuban American Telephone*
*and Telegraph Company*
787 Seventh Avenue
New York, New York 10019
(212) 839-5938

SO ORDERED: 22 June 2007

_____
VICTOR MARRERO
U.S.D.J

485726_1

8

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

JANET RAY WEININGER,

                   Plaintiff,                      05 **CIVIL** 7214 (VM)

         -against-                       **AMENDED JUDGMENT**

FIDEL CASTRO, et al.,

                   Defendants.
-------------------------------------------------------X

       WHEREAS the above-captioned action having come before this Court, and the matter having

come before the Honorable Victor Marrero, United States District Judge, and the Court, on

November 17, 2006, having rendered its Decision and Order granting the motions (Docket Nos. 122

and 124) for partial summary judgment on claims for turnover order of plaintiffs Janet Ray

Weininger ("Weininger") and Dorothy Anderson McCarthy ("McCarthy"), granting the cross-motion

(Docket No. 143) for relief in the nature of interpleader of JPMorgan Chase Bank, N.A. ("JPM

Chase"), entering judgment in favor of Weininger and against JPM Chase and Rabinowitz, Boudin,

Standard, Krinsky & Lieberman, P.C. ("Rabinowitz Boudin"), in their capacities as garnishees,

directing JPM Chase and Rabinowitz Boudin to turn over to the United States Marshal, the entire

balance of the following accounts: (1) AT&T Long Lines (Account No. G00875) (less the portion

of this account that Plaintiffs have voluntarily excluded from their claims - approximately

$6,332,843.49 as of September 30, 2005, plus any additional interest accruing thereon from

September 30, 2005), (2) the Rabinowitz Boudin Republic of Cuba (Account No. 092-6371190); and

(3) Empresa de Telecomunicaciones de Cuba (Account No. 395-507995), not to exceed in total the

sum of twenty-three million, nine hundred thirty-nine thousand, three hundred one dollars and ninety

five cents ($23,939,301.95), with interest thereon from December 13, 2005, to be calculated by the

Clerk of Court, plus costs and disbursements to be taxed by the Clerk of Court, less a pro rata share

of any reasonable attorney's fees and costs granted to JPM Chase by the Court on separate application, entering judgment in favor of McCarthy and against JPM Chase and Rabinowitz Boudin, in their capacities as garnishees, directing JPM Chase and Rabinowitz Boudin to turn over to the United States Marshal, the entire remaining balance of the following accounts: (1) AT&T Long Lines (Account No. G00875) (less the portion of this account that Plaintiffs have voluntarily excluded from their claims - approximately $6,332,843.49 as of September 30, 2005, plus any additional interest accruing thereon from September 30, 2005); (2) Rabinowitz Boudin Republic of Cuba (Account No. 092-6371190); and (3) Empresa de Telecomunicaciones de Cuba (Account No. 395-507995), not to exceed in total the sum of sixty-seven million dollars ($67,000,000.00), with interest thereon from February 2, 2005, to be calculated by the Clerk of Court, plus costs and disbursements to be taxed by the Clerk of Court, less a pro rata share of any reasonable attorney's fees and costs granted to JPM Chase by the Court on separate application;

WHEREAS on November 27, 2006, this Court entered two orders entitled "Stipulation and Order" (Docket Nos. 172 and 173), which modified certain figures and information contained in the November 17, 2006, Decision and Order; and

WHEREAS this Court has ordered the correction of the Judgment in this case dated December 1, 2006 (Docket No. 174) pursuant to a Stipulation and Order to Correct Judgment, it is

**ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the Court's Decision and Order dated November 17, 2006, as amended, the motions (Docket Nos. 122 and 124) for partial summary judgment on claims for turnover order of plaintiffs Weininger and McCarthy are granted; the cross-motion (Docket No. 143) for relief in the nature of interpleader of JPM Chase is granted; judgment is entered in favor of Weininger and against JPM Chase and Rabinowitz

2

Boudin, in their capacities as garnishees, directing JPM Chase and Rabinowitz Boudin to turn over to the United States Marshal, the entire balance of the following accounts: (1) AT&T Long Lines (Account No. G00875) (less the portion of this account that Plaintiffs have voluntarily excluded from their claims - approximately $6,157,179.76 as of September 30, 2005, plus any additional interest accruing thereon from September 30, 2005), (2) the Rabinowitz Boudin SPL for the AC of the Republic of Cuba & Its Agencies BLK ACCT (Account No. 092-037119); and (3) Empresa de Telecomunicaciones de Cuba (Account No. 395-507995), not to exceed in total the sum of twenty-one million five hundred sixty-two thousand dollars ($21,562,000.00), with interest thereon, for a total sum of twenty-four million one hundred forty-one thousand three hundred ninety dollars and ninety-seven cents ($24,141,390.97) (as of November 29, 2006), plus costs and disbursements to be taxed by the Clerk of Court, less a pro rata share of the reasonable attorney's fees and costs granted to JPM Chase in the amount of three hundred forty-four thousand seven hundred sixty-six dollars and twenty-three cents ($344,766.23), entering judgment in favor of McCarthy and against JPM Chase and Rabinowitz Boudin, in their capacities as garnishees, directing JPM Chase and Rabinowitz Boudin to turn over to the United States Marshal, the entire remaining balance of the following accounts: (1) AT&T Long Lines (Account No. G00875) (less the portion of this account that Plaintiffs have voluntarily excluded from their claims - approximately $6,157,179.76 as of September 30, 2005, plus any additional interest accruing thereon from September 30, 2005), (2) the Rabinowitz Boudin SPL for the AC of the Republic of Cuba & Its Agencies BLK ACCT (Account No. 092-037119); and (3) Empresa de Telecomunicaciones de Cuba (Account No. 395-507995), not to exceed in total the sum of sixty-seven million dollars ($67,000,000.00), with interest thereon, for a total sum of seventy million five hundred twenty-seven thousand seven hundred seventy-nine

3

dollars and forty-five cents ($70,527,779.45) (as of November 29, 2006), plus costs and disbursements to be taxed by the Clerk of Court, less a pro rata share of the reasonable attorney's fees and costs granted to JPM Chase by the Court in the amount of two hundred forty thousand six hundred ninety-one dollars and seventy-two cents ($240,691.72); accordingly, the case is closed, subject to its being reopened for the purpose of considering any application for reasonable attorney's fees and costs as provided in the Decision and Order dated November 17, 2006, as amended.

**Dated:**     New York, New York
　　　　　　　　　　_____, 2007     **J. MICHAEL McMAHON**

_____
**Clerk of Court**

By:

_____
**Deputy Clerk**

4