**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| VALORES MUNDIALES, S.L., |
| -and- |
| CONSORCIO ANDINO, S.L., |
| *Plaintiffs,* |
| v. |
| BOLIVARIAN REPUBLIC OF VENEZUELA, |
| *Defendant.* |

No. 1:19-cv-0046-FYP-RMM

**DEFENDANT'S REPLY MEMORANDUM**
**IN SUPPORT OF ITS OBJECTIONS TO THE**
**MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDATIONS**

Sergio J. Galvis
Joseph E. Neuhaus (*pro hac vice*)
James L. Bromley (*pro hac vice*)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Telephone:  212-558-4000
Facsimile:  212-558-3588
galviss@sullcrom.com
neuhausj@sullcrom.com
bromleyj@sullcrom.com

Judson O. Littleton
D.C. Bar No. 1027310
SULLIVAN & CROMWELL LLP
1700 New York Avenue, N.W., Suite 700
Washington, D.C.  20006-5215
Telephone:  202-956-7500
Facsimile:  202-293-6330
littletonj@sullcrom.com

*Attorneys for Defendant Bolivarian*
*Republic of Venezuela*

Dated:  September 7, 2022

## TABLE OF CONTENTS

*Page*

INTRODUCTION ................................................................................................................1

ARGUMENT ......................................................................................................................2

    I.    THE MAGISTRATE JUDGE IMPROPERLY FAILED TO CONDUCT AN
           INDEPENDENT INQUIRY INTO WHETHER THE CONSTITUTIONAL
           FLOOR OF DUE PROCESS WAS SATISFIED. ...................................................2

    II.    28 U.S.C. § 1961 APPLIES TO THE ENFORCEMENT OF ICSID AWARDS
           BECAUSE ICSID AWARDS MUST BE ENFORCED AS THOUGH THEY
           WERE  STATE COURT JUDGMENTS. .............................................................7

CONCLUSION..................................................................................................................10

# TABLE OF AUTHORITIES

*Page(s)*

CASES

*Cohen* v. *Bd. of Trustees of Univ. of D.C.*,
   311 F. Supp. 3d 242 (D.D.C. 2018) ............................................................................5

*Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*,
   932 F.3d 126 (3d Cir. 2019) .......................................................................................6

*Guaranty Tr. Co.* v. *United States*,
   304 U.S. 126 (1938) ...................................................................................................6

*In re Hamilton*,
   584 B.R. 310 (B.A.P. 9th Cir. 2018) ..........................................................................9

*Hausler et al.* v. *The Republic of Cuba et al.*,
   Case No. 08-cv-20197-AJ (S.D. Fla. Aug. 20, 2008) ................................................8

*Janet Ray Weininger* v. *Fidel Castro, et al.*,
   Case No. 05-civ-7214-VM (S.D.N.Y. June 29, 2007) ................................................8

*Miminco, LLC* v. *Democratic Republic of the Congo*,
   79 F. Supp. 3d 213 (D.D.C. 2015) ..............................................................................9

*Mullane* v. *Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ................................................................................................3, 4

*OI European Group* v. *Bolivarian Republic of Venezuela*,
   2019 WL 2185040 (D.D.C. May 21, 2019) ............................................................6, 9

*Pennzoil Co.* v. *Texaco, Inc.*,
   481 U.S. 1 (1987) .......................................................................................................4

*Texaco, Inc.* v. *Pennzoil Co.*,
   626 F. Supp. 250 (S.D.N.Y. 1986) .............................................................................4

*Texaco, Inc.* v. *Pennzoil Co.*,
   784 F.2d 1133 (2d Cir. 1986) .....................................................................................4

STATUTES

22 U.S.C. § 1650a ...........................................................................................................3, 8

28 U.S.C. § 1961 .........................................................................................................2, 7, 8

**OTHER AUTHORITIES**

Christoph G. Schreuer, *The ICSID Convention: A Commentary* (2d ed. 2009) ............................8

Convention on the Settlement of Investment Disputes between States and
Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270 ........................................................8

Fed. R. Civ. P. 72 ......................................................................................................................................1

Inter-American Convention on International Commercial Arbitration, Jan. 30,
1975, 1438 U.N.T.S. 245 ............................................................................................................8

Local R. Civ. P. 72.3 ................................................................................................................................1

New York Convention on the Recognition and Enforcement of Foreign Arbitral
Awards, June 10, 1958, 330 U.N.T.S. 3 ...................................................................................8

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and Local Civil Rule 72.3(b), Defendant Bolivarian Republic of Venezuela submits this reply memorandum in support of its August 17, 2022 objections to portions of the Magistrate Judge's R&R.  For the reasons set forth below, the Republic requests that this Court (1) reject the Magistrate Judge's recommendation to grant Plaintiffs' Motion for Summary Judgment, and instead (2) issue an order granting the Republic's Cross-Motion for Summary Judgment.

## INTRODUCTION

Plaintiffs' opposition to the Republic's objections ("Pls.' Opp."), like the R&R it asks this Court to adopt, rests on a series of erroneous legal conclusions both with respect to the due process standards at issue and the applicable post-judgment interest rate.  Plaintiffs' arguments and the Magistrate Judge's recommendations should be rejected.

*First*, Plaintiffs argue that federal courts enforcing ICSID awards have no independent obligation to ensure that arbitration proceedings comply with due process, despite acknowledging that the ICSID implementing statute incorporates "the full faith and credit standard's due process requirements."  But like Magistrate Judge Meriweather's recommendation to simply defer to the ICSID annulment committee's flawed decision in this case, Plaintiffs' argument ignores federal courts' well-established *independent* obligation to ensure that the "constitutional floor of due process" is satisfied before affording full faith and credit to a given judgment.  Plaintiffs also contend that because the ICSID award is against Venezuela, "not a particular government," Venezuela "suffered no due process violations" when the Interim Government was denied the right to appear in the annulment proceeding.  This argument asks this Court to disregard the foreign policy decisions of two successive U.S. administrations and ignores federal courts' obligation under *Guaranty Trust* to recognize the Interim Government as the sole legitimate representative of Venezuela.

*Second*, Plaintiffs argue that the mandatory federal post-judgment interest rate under 28 U.S.C. § 1961 should not apply here because the ICSID implementing statute directs courts to enforce the "pecuniary obligations" imposed by ICSID awards.  Notably, this argument does not defend the *R&R's* rationale, which was premised on the idea that the statute makes enforcement of ICSID awards akin to enforcing a state court judgment.  As the Republic explained, the R&R failed to recognize that when enforcing state court judgments, federal courts apply the *federal* post-judgment interest rate, not the state rate.

Despite their attempted pivot, Plaintiffs' new argument fares no better.  The ICSID Convention, like the treaties governing enforcement of other foreign arbitral awards, contemplates that a signatory will enforce awards using the country's own procedures, which in this case requires imposition of the federal rate of post-judgment interest.  The statute's instruction to enforce the "pecuniary obligations" imposed by ICSID awards does not change that; that is a *limitation* on signatory courts' obligation to enforce arbitral awards, not an expansion, and federal courts have long applied the federal rate to judgments enforcing the pecuniary obligations imposed by arbitral awards.  Plaintiffs have not been able to point to a single example—other than an overturned, out-of-district case—of a federal court refusing to apply the federal post-judgment interest rate to enforcement of an ICSID award.  This Court should decline to tread that new ground here.

## ARGUMENT

## I.   THE MAGISTRATE JUDGE IMPROPERLY FAILED TO CONDUCT AN INDEPENDENT INQUIRY INTO WHETHER THE CONSTITUTIONAL FLOOR OF DUE PROCESS WAS SATISFIED.

Both the Magistrate Judge and Plaintiffs recognize that 22 U.S.C. § 1650a(a) "appears to incorporate the full faith and credit standard's due process requirements."  Pls.' Opp. at 7; R&R at 13–14.  The Magistrate Judge also correctly recognized that, although a federal court conducting that due process inquiry generally will look first to whether the state court itself would

decline to enforce the judgment, federal courts also conduct a limited, independent review "to ensure" that the procedures giving rise to the underlying judgment met "a constitutional floor of due process."  R&R at 15.  Nevertheless, the Magistrate Judge declined to conduct that essential inquiry, believing instead that courts could not "second-guess" the ICSID annulment committee's determination that the Interim Government was not entitled to represent Venezuela in the annulment proceeding afforded to every ICSID arbitration participant.  R&R at 18.

   In their opposition, Plaintiffs claim that when applying the full faith and credit standard to an ICSID award, "federal courts do not conduct an independent inquiry into whether the underlying arbitration proceeding complied with due process."  Pls.' Opp at 1.  According to Plaintiffs, the full faith and credit standard asks only "whether the state court judgment is binding *under the issuing state's rules*, since a federal court must give the judgment 'the "same" preclusive effect as the courts of the [s]tate from which the judgment emerged.'"  Pls.' Opp. at 8–9 (emphasis in original).  Plaintiffs rely on *Mullane* v. *Cent. Hanover Bank & Tr. Co.* to support this idea, arguing in a footnote that the Supreme Court in that case overturned a state court judgment that did not comply with due process standards purportedly "because it would not have qualified as binding under New York law," on the theory that New York law necessarily incorporates federal constitutional standards.  Pls.' Opp. at 9, n.1 (citing *Mullane*, 339 U.S. 306, 320 (1950)).

   This entirely circular argument finds no support in what the Supreme Court actually said in *Mullane*.  In that case, the Supreme Court reversed a judgment from the New York Court of Appeals that held that notice provided to certain account beneficiaries (through publication in a local newspaper) pursuant to the requirements of a New York banking law complied with due process.  *Mullane*, 339 U.S. at 320.  The Supreme Court did not defer to the requirements of state law—indeed, the New York Court of Appeals, the final arbiter of what New York law says, had

reached a different conclusion—and nothing in the Supreme Court's reasoning suggests that. Rather, the Court conducted its own inquiry into whether the notice complied with due process under the United States Constitution, concluded that the requirements of the state banking law were "incompatible with the requirements of the Fourteenth Amendment" as applied to certain account beneficiaries, and reversed the state court judgment on that basis. *Id.* at 313–20.

   Plaintiffs' attempted dismissal of *Texaco* and *Cohen* similarly misrepresents those cases. In *Texaco, Inc.* v. *Pennzoil Co.*, the District Court for the Southern District of New York enjoined Pennzoil from enforcing a Texas state court judgment against Texaco because the supersedeas bond and lien provisions of Texas law violated the Due Process Clause. 626 F. Supp. 250, 251, 257 (S.D.N.Y. 1986). The Second Circuit affirmed. 784 F.2d 1133 (2d Cir. 1986). Plaintiffs say that "the Supreme Court ultimately reversed the judgment and ruled that the federal court should *not* have enjoined enforcement of the Texas state court judgment and should have instead deferred to the Texas state courts' adjudication of Texaco's federal due process claims." Pls.' Opp at 11, n.2 (citing *Pennzoil Co.* v. *Texaco, Inc.*, 481 U.S. 1 (1987)). This is at best a misleading rendition of what the Supreme Court held. The Supreme Court reversed on the ground of *Younger* abstention, which instructs that federal courts should abstain from hearing certain constitutional claims where those claims have not been first presented to the state court. *Pennzoil*, 481 U.S. at 11. *Younger* abstention has no role here, both because it does not apply to arbitral tribunals and because the Interim Government's objections to being excluded from the annulment committee's review *were* presented to the annulment committee.[1]

---

[1]   Plaintiffs do not dispute that the Venezuelan Supreme Tribunal—on whose decision the ICSID annulment committee based its rejection of the Interim Government's representation—has been widely recognized as corrupt and illegitimate. *See* Objection at 4, n.4.

Plaintiffs also argue that *Cohen*, in which a court from this District concluded that a terminated tenured university professor was denied procedural due process where his union declined to pursue an available arbitral appeal of the university's decision, has no relevance here because *someone* purporting to act on behalf of the Republic "duly exercised [Venezuela's] right to seek annulment before ICSID" and that annulment request "was duly heard" by the ICSID annulment committee. Pls.' Opp at 11.  Under Plaintiffs' reading, the full content of federal due process is notice and an opportunity for *someone* to appeal on behalf of a particular party.  But federal due process is not so simplistic.  In *Cohen*, the court found that Cohen's due process rights were violated because, under the terms of the relevant agreement, when the union chose not to pursue the arbitral appeal of the termination decision, there was no "independent review of [the university's] adverse employment actions."  *Cohen* v. *Bd. of Trustees of Univ. of D.C.*, 311 F. Supp. 3d 242, 256 (D.D.C. 2018).  It was not enough that the *union* had the right to appeal, or that Cohen had an opportunity to appeal the *union's* decision not to do so to the Public Employee Relations Board, because that review did "not assess the merits of the underlying employment action."  *Id.* The teaching of *Cohen* is that a state may not decide that one party (the union) has full control over pursuing the right to appeal where another party (Professor Cohen) is, under federal standards, the person to whom the appeal right belongs.  The same is true here, where ICSID improperly denied Mr. Hernández, the only recognized representative of Venezuela, the Republic's right to appeal the award.

Plaintiffs attempt to avoid application of the well-established due process principles from *Texaco* and *Cohen* by pointing to the fact that the criminal Maduro regime participated in the annulment proceeding, claiming that "the question of which government may represent Venezuela in U.S. courts is irrelevant."  Pls.' Opp. at 12.  This argument ignores controlling and well-

established law.  Across two successive presidential administrations, the U.S. government has consistently reiterated its recognition and support of the Interim Government led by Juan Guaidó, and its condemnation of the regime led by Maduro.  *See* S.J. Brief at 4; Objection at 3, n.2.  To credit an ICSID decision that denied the Interim Government the right to participate in the annulment proceedings would directly contravene this executive branch policy.

The Supreme Court has long held that courts may not disregard such executive branch foreign policy decisions in the way Plaintiffs now urge.  Under *Guaranty Trust*, U.S. courts are—for all purposes—*required* to recognize the Interim Government led by Juan Guaidó as the sole legitimate representative of Venezuela, due to the Trump and Biden administrations' continued recognition of that government.  *See Guaranty Tr. Co.* v. *United States*, 304 U.S. 126, 138 (1938) (executive branch's "action in recognizing a foreign government" "is conclusive on all domestic courts"); *see also Crystallex Int'l Corp.* v. *Bolivarian Republic of Venezuela*, 932 F.3d 126, 135 n.2 (3d Cir. 2019) (following *Guaranty Trust* and recognizing the Guaidó government "as authorized to speak and act on behalf of Venezuela").  In short, in *federal* courts, it is *federal* law that conclusively establishes a government's proper representative for any and all purposes, including for purposes of attempting to enforce awards issued by other tribunals.  The fact that other tribunals have recognized the corrupt regime of Mr. Maduro as the representative of Venezuela, based again on a decision by the corrupt Venezuelan Supreme Tribunal, is thus irrelevant, because *U.S.* courts must give effect to the executive branch's recognition of Interim President Guaidó.  *See OI European Group* v. *Bolivarian Republic of Venezuela*, 2019 WL 2185040, at *5 n.4 (D.D.C. May 21, 2019) (explaining that "a decision by an ICSID arbitration

panel denying representation by Guaidó government lawyers" was not "consistent with the D.C. Circuit precedent that the Court is bound to follow").[2]

## II.   28 U.S.C. § 1961 APPLIES TO THE ENFORCEMENT OF ICSID AWARDS BECAUSE ICSID AWARDS MUST BE ENFORCED AS THOUGH THEY WERE STATE COURT JUDGMENTS.

According to Plaintiffs, in determining that the mandatory default federal post-judgment interest rate does not apply here, the R&R "concluded that this Court should enforce the full pecuniary obligations under the Award by applying the post-judgment interest rate specified in the Award" and simply fulfilled "the obligation to construe U.S. statutes 'so as not to conflict with international law or with an international agreement of the United States.'"  Pls.' Opp. at 14. This rendition of the Magistrate Judge's reasoning is Plaintiffs' invention, and the fact that Plaintiffs had to reach to such invention reveals the weakness of what the R&R actually said.  The R&R's reasoning did not rest on the concept of "pecuniary obligations" or U.S. treaty obligations. The R&R instead focused on the idea that, because the statute makes a "judgment enforcing an ICSID award . . . akin to a *state* court judgment, not a *federal* court judgment," "§ 1961's mandatory post-judgment interest rate for *federal* judgments does not apply."  R&R at 23 (emphasis in original).  But because federal courts enforcing state court judgments in fact *do* apply

---

[2]     Contrary to Plaintiffs' argument (at 12), because of *Guaranty Trust* and the executive branch's consistent recognition of the Interim Government as the sole authority to speak for the Republic, there is no "dispute about whether" the metaphorical "firing" of the Maduro regime for purposes of the ICSID proceeding "had in fact happened" for purposes of U.S. law.  For all purposes in U.S. court proceedings, only the Interim Government— not the fraudulent Maduro regime—has the right to speak for Venezuela.  This Court should reject Plaintiffs' argument that, for federal constitutional purposes, the Republic's due process rights may be safeguarded by a corrupt and criminal regime that the U.S. Government has refused to recognize across the past two administrations.

§ 1961 upon entry of the federal judgment, under the R&R's own reasoning, § 1961 also applies

to the enforcement of ICSID awards.[3]

Even if the Magistrate Judge had based her reasoning on the "pecuniary

obligations" language of the implementing statute, that language does not support departing from

otherwise-applicable law in federal courts.  That language is a *limitation* on the signatory states'

obligation to enforce the award, not an expansion.[4]   In other words, the reference to "pecuniary

obligations" in § 1650a does not mean that federal courts' obligation to enforce ICSID awards

differs from the obligations under the New York Convention to enforce other arbitral awards.  Both

the ICSID Convention and the New York Convention direct courts to enforce awards in

accordance with local procedures.[5]   As the now-uncontradicted record in this case makes clear,

---

[3]     Plaintiffs point out that in both *Hausler et al.* v. *The Republic of Cuba et al.*, Case No. 08-cv-20197-AJ (S.D. Fla. Aug. 20, 2008), and *Janet Ray Weininger* v. *Fidel Castro, et al.*, Case No. 05-civ-7214-VM (S.D.N.Y. June 29, 2007)—which expressly applied the federal post-judgment interest rate to judgments enforcing state court judgments—the applicable post-judgment rate was not contested.  Pls.' Opp. at 15–16.  If anything, this lends further support to the idea that the federal rate should apply here:  the parties in those cases clearly recognized that the federal rate would apply regardless of whatever interest rate was in the state court judgment.  Notably, plaintiffs cite *no case* in which a federal court applied a state post-judgment interest rate in enforcing a state court judgment.

[4]     *See* Christoph G. Schreuer, *The ICSID Convention: A Commentary* 1136 (2d ed. 2009) (explaining that "[t]he obligation to enforce extends only to the pecuniary obligations" in an ICSID award and "does not extend" to other forms of relief "such as restitution…or an injunction").

[5]     *See* Convention on the Settlement of Investment Disputes between States and Nationals of Other States, art. 54, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention") (requiring contracting states to "recognize an award rendered pursuant to [the ICSID Convention] as binding and enforce the pecuniary obligations imposed by that award within its territories *as if it were a final judgment of a court in that State*"); New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. 3, June 10, 1958, 330 U.N.T.S. 3 (the "New York Convention") (requiring contracting states to "recognize arbitral awards as binding and enforce them *in accordance with the rules of procedure of the territory where the award is relied upon*"); *see also* Inter-American Convention on International Commercial Arbitration, art. 4, Jan. 30, 1975, 1438 U.N.T.S. 245 (the "Panama Convention") (requiring contracting states to give arbitral awards "the

under federal court procedures, federal court judgments bear interest at federal court rates, not state court rates. *See* Objection at 13–14.

Plaintiffs have pointed to *no* examples—other than the single, now-reversed and out-of-district decision in *Mobil Cerro Negro, Ltd.* v. *Bolivarian Republic of Venezuela*—of a federal court declining to apply the federal post-judgment interest rate to an ICSID award. *See* S.J. Br. at 16; *OI European Group B.V.* v. *Bolivarian Republic of Venezuela*, 2019 WL 2185040, at *7 (D.D.C. May 21, 2019) (expressly rejecting *Mobil*); *Miminco, LLC* v. *Democratic Republic of the Congo*, 79 F. Supp. 3d 213, 218–20 (D.D.C. 2015) (applying federal post-judgment rate). Lacking any on-point examples, Plaintiffs note that in the bankruptcy context, a bankruptcy court may sometimes apply the state interest rate "where there is a valid prepetition state court judgment for the debt" even after the bankruptcy court determines the nondischargeability of the debt. Pls.' Opp. at 16, n.6. But Plaintiffs admit that when the bankruptcy court issues a money judgment for the debt, "federal law governs pre- and post-judgment interest." *Id.* That is precisely the point: if a *federal* court issues a *federal* court judgment, *federal* law dictates the rate of interest that the amounts awarded will bear. As stated by the very case on which Plaintiffs rely, if courts "issue a money judgment for the debt, . . . federal law would govern." *In re Hamilton*, 584 B.R. 310, 324 (B.A.P. 9th Cir. 2018), *aff'd*, 785 F. App'x 438 (9th Cir. 2019). Because Plaintiffs are asking this Court to enter a federal judgment, § 1961 applies.

---

force of a final judicial judgment" and permitting execution or recognition "in the same manner as that of decisions handed down by national or foreign ordinary courts, *in accordance with the procedural laws of the country where it is to be executed* and the provisions of international treaties") (emphasis added in all three cases).

## CONCLUSION

For the foregoing reasons, the Republic respectfully requests that the Court reject the recommendations set forth in Sections II.A and II.B of the R&R's Discussion, as well in its Conclusion, and instead grant the Republic's motion for summary judgment.

| | |
|---|---|
| | _/s/ Judson O. Littleton_ |
| Joseph E. Neuhaus (*pro hac vice*) | Judson O. Littleton |
| Sergio J. Galvis | D.C. Bar No. 1027310 |
| James L. Bromley (*pro hac vice*) | SULLIVAN & CROMWELL LLP |
| SULLIVAN & CROMWELL LLP | 1700 New York Avenue, N.W., Suite 700 |
| 125 Broad Street | Washington, D.C.  20006-5215 |
| New York, New York  10004 | Telephone:  202-956-7500 |
| Telephone:  212-558-4000 | Facsimile:  202-293-6330 |
| Facsimile:  212-558-3588 | littletonj@sullcrom.com |
| neuhausj@sullcrom.com | |
| galviss@sullcrom.com | |
| bromleyj@sullcrom.com | *Attorneys for Defendant Bolivarian* |
| | *Republic of Venezuela* |

Dated:  September 7, 2022