UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **VALORES MUNIDALES, S.L.** and **CONSORCIO ANDINO, S.L.**<br><br>*Plaintiffs*,<br><br>v.<br><br>**BOLIVARIAN REPUBLIC OF VENEZUELA**<br><br>*Defendant*. | Case No. 1:19-cv-00046-ACR-RMM |

**MEMORANDUM OPINION**

Plaintiffs Valores Mundiales and Consorcio Andino (together, Valores) brought this action to recognize and enforce an arbitral award issued against the Bolivarian Republic of Venezuela under the International Convention on the Settlement of Investment Disputes between States and Nationals of Other States. Dkt. 1 (Complaint) ¶ 1. The Court referred the case to Magistrate Judge Robin M. Meriweather for a Report & Recommendation on four motions, two regarding a default that the Clerk entered on October 23, 2020, Dkts. 16 and 20, and cross-motions for summary judgment, Dkts. 24 and 25.

On August 3, 2022, Judge Meriweather recommended that the Court set aside the default and confirm the arbitral award. Dkt. 33 (Report and Recommendation). Valores does not object to setting the default motion aside, but Venezuela objects to the Court confirming the arbitral award. Dkt. 34 (Objections). Valores has responded to Venezuela's Objections, Dkt. 35, and Venezuela has replied, Dkt. 36.

Upon consideration of the Report and Recommendation, the Objections, the applicable case law, and the entire record, the Court over-rules the Objections. Venezuela's Motion for

1

Summary Judgment is **DENIED,** and Valores's Motion for Summary Judgment is **GRANTED**.[1]
Without objection, Venezuela's Motion to Set Aside Default is **GRANTED**, and Valores's Motion for Default Judgment is **DENIED** as moot. The Court will enter judgment for Valores.

I.   BACKGROUND

   A.  The ICSID Convention and Implementing Statute

The International Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270 ("Convention"), is a multilateral treaty designed "to promote economic development and private international investment by providing a legal framework . . . to resolve . . . disputes between private investors and governments." *Micula v. Gov't of Romania*, 104 F. Supp. 3d 42, 44 (D.D.C. 2015). In turn, the ICSID Convention established the International Centre for Settlement of Investment Disputes— commonly known as "ICSID"—which has the authority to convene arbitration panels "to adjudicate disputes between international investors and host governments in 'Contracting States.'" *Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 101 (2d Cir. 2017).

The United States is a signatory to the ICSID Convention, *see* Int'l Ctr. for Settlement of Inv. Disputes, *List of Contracting States and Other Signatories of the Convention*[2], and Congress has enacted implementing legislation, *see* Convention on the Settlement of Investment Disputes

---

[1] Before Judge Meriweather, the parties disputed the proper means of calculating post-judgment interest. Judge Meriweather recommended that the Court apply post-judgment interest at the rate specified in the arbitral award. Dkt. 33 at 25–26. Subsequently, the parties filed a Joint Status Report advising that they had come to agreement on the interest calculation. Dkt. 41. Namely, Valores consented to the application of the statutory interest rate set forth in 28 U.S.C. § 1961. The Court will apply the interest rate agreed by the Parties and takes no position on Judge Meriweather's recommendation concerning the calculation of interest.

[2] Available at: https://icsid.worldbank.org/sites/default/files/ICSID%203/ICSID-3--ENG.pdf.

Act of 1966, Pub. L. 89–532, 80 Stat. 334 (1966) (codified at 22 U.S.C. §§ 1650 and 1650a). This legislation confers exclusive jurisdiction on the federal district courts to enter awards, *see* 22 U.S.C. § 1650a(b), and provides that an ICSID arbitration award "shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." 22 U.S.C. § 1650a(a).

### B. ICSID Proceedings and Enforcement

When a dispute between an investor and a state arises, either the state or the investor may file a request to convene an ICSID arbitral panel. Convention Art. 37. So long as ICSID appears to have jurisdiction, ICSID registers the request and appoints an arbitral tribunal. *Id.* Arts. 36–37. Both parties to the arbitration may be represented by counsel. ICSID Arbitration Rule 2(2). Arbitration proceeds through written and oral phases at which the parties present evidence and legal arguments. *Id.* Rules 29–36. The tribunal must then decide the parties' dispute and issue a written award. Convention Arts. 41–49. The award must address "every question submitted" to the tribunal, and "state the reasons upon which [the award] is based." *Id.* Art. 48(2)-(3).

ICSID awards may only be set aside through the Convention's internal annulment process. As relevant here, Article 52(1)(d) provides for annulment where "there has been a serious departure from a fundamental rule of procedure." This standard is similar to procedural due process and guarantees basic procedural fairness including impartiality and equality of treatment, the right to be heard, an opportunity to present evidence, and prompt resolution of the claim. *See* Christoph H. Schreuer, *Schreuer's Commentary on the ICSID Convention* 1316-32 (Stephan W. Schill et al. eds., 3d ed. 2022) ("Schreuer"). An *ad hoc* annulment committee made up of three neutral arbitrators conducts the annulment proceedings. Convention Art. 52(3).

3

Obtaining an award is one thing, but enforcing it is quite another. And, "ICSID is not empowered to enforce awards." *TECO Guatemala Holdings, LLC v. Republic of Guatemala*, 414 F. Supp. 3d 94, 97 (D.D.C. 2019); *see also* Convention Art. 54. The prevailing party must instead seek enforcement in the courts of a contracting state. Convention Art. 54. Those courts, "play only a limited role." *TECO Guatemala Holdings*, 414 F. Supp. 3d at 97. They must "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories . . . as if it were a final judgment of the courts of a constituent state." Convention Art. 54(1). For the system to work as envisioned, the limited nature of this role is critical. Exclusive review and independence from domestic procedures distinguish ICSID from other arbitration mechanisms by promoting finality and thus avoiding protracted and costly review processes. *See* Schreuer at 1453.[3]

### C. The Underlying ICSID Arbitration

Valores and Consorcio Andino, Spanish shareholders of Venezuelan companies dedicated to food production and commercialization, commenced ICSID proceedings against Venezuela seeking indemnification for losses stemming from an expropriation decree. Dkt. 1-1 (ICSID Case No. ARB/13/11, Arbitral Award) ¶ 6. Venezuela, then a signatory to the Convention, participated in the ensuing arbitration. Upon receiving the arbitration request, ICSID constituted an arbitral tribunal consisting of "Eduardo Zuleta (Colombian) . . . appointed by the Chairman of the Administrative Council in accordance with Article 38 of the ICSID

---

[3] The drafters of the ICSID Convention considered allowing the enforcement court to annul awards, but "[a] vote was taken and the proposal to maintain the system embodied in the draft, providing for internal review only, was carried with no opposition." Schreuer at 1225. The drafters instead concluded that "[a] domestic court . . . may not re-examine the ICSID tribunal's jurisdiction. It may not re-examine the award on the merits. Nor may it examine the fairness and propriety of the proceedings before the ICSID tribunal." *Id*. at 1499.

4

Convention; Horacio Grigera Naón (Argentine), appointed by the Claimants; and Yves Derains (French), appointed by the Chairman of the Administrative Council in accordance with Article 38 of the ICSID Convention." Dkt. 24-4 (Procedural Timeline) at 2. The proceeding consisted of "two rounds of briefing, a week-long jurisdictional and merits hearing featuring multiple expert and fact witnesses, and post-hearing briefing." Dkt. 24 at 3 (citing Dkt. 1-1 ¶¶ 79-80, 82-84). On July 25, 2017, the ICSID tribunal awarded Valores $430.4 million "as compensation for . . . damages and lost profit" and almost $6 million in costs. Award ¶ 167. Predictably, Venezuela initiated ICSID annulment proceedings. Dkt. 25-2 (Venezuela's Statement of Undisputed Material Facts) ¶ 6. ICSID appointed a three-member *ad hoc* committee to hear Venezuela's annulment request. *Id.* ¶ 8.

In January 2019, while the annulment proceedings were pending, widespread unrest ripped through Venezuela. Dkt. 20-1 (Venezuela's Motion to Set Aside Default) at 9; Dkt. 27-1 (Valores's Response to Venezuela's Statement of Material Facts) ¶ 13. The National Assembly disavowed President Nicolás Maduro and named Juan Guaidó as the Interim President.[4] Dkt. 20-1 at 5. Although many countries, including the United States, recognized Guaidó as Venezuela's leader, not all followed suit and Maduro controlled key institutions. *See id.*

In March 2019, José Ignacio Hernández, the Special Attorney General for the Guaidó government, sought to replace Maduro's representative in the ongoing ICSID annulment

---

[4] The Guaidó government later faced its own dissension and dissolved in December 2022. Mayela Armas, *Venezuela Opposition Removes Interim President Guaido*, REUTERS (Dec. 30, 2022, 8:16 PM). The parties agreed at a March 16, 2023, Status Conference that the Guaidó government's dissolution has no bearing on the present motions. Hearing Tr. (Mar. 16, 2023) at 9:4–24. The development does, however, underscore that "when a foreign government changes, the nation remains." *See Republic of Iraq v. ABB AG*, 768 F.3d 145, 163-64 (2d Cir. 2014) (quotations omitted). Venezuela, the nation, was heard during the ICSID proceedings.

proceedings between Valores and Venezuela. He informed the ICSID Secretary-General that "the judicial representation of . . . Venezuela, including in arbitral proceedings, is vested exclusively [in Mr. Hernández] as Special Attorney General of Venezuela, appointed by . . . Interim President [Guaidó] acting under the control of the Venezuelan National Assembly." Dkt. 31-2 (Letter from J. Hernández to ICSID, dated March 27, 2019).

By that point, the parties had concluded the written phase of the annulment proceeding and a hearing had been set for May 2019. The *ad hoc* committee suspended that hearing and requested briefing on the status of Venezuela's representation. Dkt. 20-7 (ICSID Case No. ARB/13/11, Procedural Resolution No. 2) ¶ 3. Although representatives of both the Guaidó and Maduro governments briefed the issue, only the Maduro government bothered to file a reply brief. *Id.* ¶¶ 6–8. "The committee . . . considered it unnecessary to receive oral arguments, among other reasons, because no Party had requested it." *Id.* ¶ 8. In a written opinion dated August 29, 2019, the *ad hoc* committee considered the parties' positions (¶¶ 10–26), its own jurisdiction (¶¶ 28–38), and both international and Venezuelan law (¶¶ 39–50) before concluding that Mr. Hernández did not carry his burden to prove "his legitimacy to represent Venezuela either based on domestic or international law" (¶ 51). *Id.* The *ad hoc* committee held a two-day merits hearing in October 2020, and issued a final decision affirming the award on December 21, 2021. Dkt. 32 (Joint Status Report, dated January 21, 2022) ¶ 2; Dkt. 41-1 (ICSID Case No. ARB/13/11, Annulment Decision); *Case Details: ICSID Case No. ARB/13/11*.[5]

### D. Valores's Efforts to Confirm the Award in the United States

Valores filed this suit seeking enforcement of the ICSID award in January 2019, before the *ad hoc* committee rendered its final decision. On October 23, 2019, the Clerk entered default

---

[5] Available at: https://icsid.worldbank.org/cases/case-database/case-detail?CaseNo=ARB/13/11.

6

against Venezuela, Dkt. 15, which had not appeared, and Valores moved for entry of a default judgment, Dkt. 16. The Court referred the Motion for Default Judgment to Judge Meriweather for a Report and Recommendation. Minute Order (Oct. 28, 2019).

On March 2, 2020, counsel for Venezuela entered appearances, answered the Complaint, and requested that the Court set aside the Default, Dkts. 17–19; Dkt. 20; Dkt. 21.[6] Because the annulment process had not yet ended, the Court stayed the case. Minute Order (Nov. 17, 2020). And when the *ad hoc* committee issued its final decision, the Court lifted the stay. Minute Order (Jan. 24, 2022).

With the stay lifted, the parties cross-moved for summary judgment. Dkts. 24 and 25. Valores argued that the companies obtained an authentic arbitral award against Venezuela. With nothing left to consider, according to Valores, the Court should enforce the award. Dkt. 33 at 15. Not so fast, replied Venezuela. The Court is required to review its argument that the *ad hoc* committee violated its due process rights by failing to recognize the Guaidó government's counsel. *Id*. Because, according to Venezuela, the *ad hoc* committee did violate its rights, the Court should not enforce the award.

On August 3, 2022, Judge Meriweather issued a Report and Recommendation addressing both the default motions and the parties' cross-motions for summary judgment. She recommended that the Court set aside the default and rule accordingly on the parties' default motions. *Id.* at 10–11. Neither party objected to this recommendation.

---

[6] In its Answer, Venezuela conceded that the Court has jurisdiction and that the Award is authentic. Dkt. 21 ¶¶ 5–7, 13. Judge Meriweather conducted an independent jurisdictional inquiry and found that the Court has jurisdiction. Dkt. 33 at 9–10. The parties have not challenged this part of the Report and Recommendation, and the Court adopts it here.

Judge Meriweather then turned to enforcement. After reviewing the parties' submissions and the applicable case law, she found that a federal court can review ICSID's procedures "to ensure they satisfy a constitutional floor of due process." *Id.* at 15. She conducted such a review and found that ICSID's procedures satisfy due process. *Id*. Judge Meriwether also reviewed the proceedings and found that Venezuela was afforded "sufficient process to give full faith and credit to the ICSID Award." Dkt. 33 at 15. There was "no evidence that Venezuela was deprived of representation or the right to be heard." *Id.* at 18.

## II. LEGAL STANDARD

A court reviews "only those issues that the parties have raised in their objections to the Magistrate Judge's report." *Taylor v. District of Columbia*, 205 F.Supp.3d 75, 79 (D.D.C. 2016) (quotations omitted). Pursuant to 28 U.S.C. § 636(b)(1)(C) and LCvR 72.3(c), the Court reviews *de novo* the portions of the Report & Recommendation that drew objections.

In reviewing cross-motions for summary judgment, the Court applies the Rule 56 standard: "summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). The Court reviews each cross-motion "separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *McMullen v. Synchrony Bank*, 300 F. Supp. 3d 292, 300 (D.D.C. 2018).

## III. ANALYSIS

Venezuela objects to the recommendation that the Court affirm the award on two main grounds. First, it claims that the Report "neglects the federal court's own independent obligation

to ensure that the constitutional floor of due process was satisfied." Dkt. 34 at 10–11.  Second, it "ignores the principal that *federal courts*—regardless of what the ICSID annulment committee decided—must recognize the Interim Government as the legitimate representative of Venezuela."  *Id*.  Not so.  Judge Meriweather conducted a due process inquiry and correctly found that no violation occurred.  And neither Judge Meriweather's recommendation nor this Court's opinion concerns the merits of ICSID's decision on whom to recognize as the legitimate representative of Venezuela.

### A. Courts have Limited Power to Review ICSID Awards

The Court turns first to the scope of its power to review ICSID awards.  Recall that ICSID awards are not self-enforcing and that 22 U.S.C. § 1650a governs their enforcement by federal courts.  Section 1650a adopts the standard found in 28 U.S.C. § 1738, which requires federal courts to afford the same full faith and credit to state court judgments that would apply in the state's own courts.  *Kremer v. Chem. Constr. Co.*, 456 U.S. 461, 463 (1982).  "[A] federal court should decline to give full faith and credit to a state court judgment only if the state court would *itself* decline to enforce the judgment."  *TECO Guatemala Holdings*, 414 F. Supp. 3d at 103; *see also Durfee v. Duke*, 375 U.S. 106, 110 (1963).  "By extension, therefore, if the state court—or, here, ICSID—would treat the judgment—or, here, the award—as binding, so must the federal district court."  *TECO Guatemala Holdings*, 414 F. Supp. 3d at 103.

There is more.  Section 1650a also provides that the Federal Arbitration Act, "shall not apply to enforcement of awards rendered pursuant to the [Convention]."  Congress thus precluded "courts from engaging in the more robust . . . form of judicial review applicable under the Federal Arbitration Act . . . ."  *TECO Guatemala Holdings*, 414 F. Supp. 3d at 101.  This was no small decision.  The FAA allows federal courts to annul an arbitral award in cases of fraud,

corruption, partiality, misconduct, or denial of due process.  9 U.S.C. § 10; *see Anatolie Stati v. Republic of Kazakhstan*, 302 F. Supp. 3d 187, 204 (D.D.C. 2018), *aff'd sub nom. Stati v. Republic of Kazakhstan*, 773 F. App'x 627 (D.C. Cir. 2019).  Allowing such review in ICSID cases, however, "would be contrary to the provisions of the Convention."  112 CONG. REC. 13,148–49 (June 15, 1966) (statement of Sen. Fulbright).  In rejecting even this form of limited judicial review, Congress markedly constrained a court's power to review ICSID awards.

It follows then that a domestic court has no power to review ICSID proceedings *de novo*.  Under both the ICSID Convention and the U.S. implementing legislation, a U.S. court is not "permitted to examine an ICSID award's merits, its compliance with international law, or the ICSID tribunal's jurisdiction to render the award . . . ."  *See Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 102 (2d Cir. 2017).  Yet this is precisely what Venezuela asks the Court to do—undertake a *de novo* review of the *ad hoc* committee's decision to recognize the representatives of the Maduro government as counsel.  The Court cannot undertake that review.

What the Court can—indeed, must—do is assess whether the award is authentic and whether ICSID would treat it as binding.  *See TECO Guatemala Holdings*, 414 F. Supp. 3d at 97, 103.  It is and ICSID would.  Venezuela does not contend otherwise on either point.

B.  **The ICSID Committee's Procedures Satisfied Due Process**

Venezuela contends that section 1650a, "requires federal courts enforcing ICSID awards to conduct the same full faith and credit inquiry they would apply to an authenticated state court judgment."  Dkt. 34 at 10.  From that proposition, Venezuela concludes that federal courts must

10

ensure that a "constitutional floor of due process" is satisfied when reviewing ICSID awards.[7] *Id.* The argument then flows as follows: by declining to recognize a representative of the Guaidó government in the annulment proceedings, ICSID denied Venezuela the right to be heard on appeal; this denial was a due process violation; and the Court must deny enforcement of the award.[8]

The key flaw with this argument is that no due process violation occurred. "The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)). Here, Venezuela had every opportunity to be heard. Consistent with Article 52, ICSID promptly assembled an *ad hoc* committee to conduct the appeal when Venezuela requested annulment proceedings. Dkt. 24-3 (ICSID Decision on the Stay of Enforcement of the Award) ¶¶ 2–7. Per ICSID's rules, the committee members did not participate in the initial arbitration and were not of the same nationality as either party. *See id.* ¶¶ 6, 12. The parties submitted two rounds of briefing on the annulment's merits and then scheduled an oral hearing. Dkt. 24-4 at 6.

When the *ad hoc* committee received Mr. Hernández's letter stating that he was Venezuela's true representative, it suspended the proceedings and assessed the merits of that claim. Dkt. 20-7 ¶ 3. It permitted the Guaidó government to file a submission and respond to

---

[7] Valores contends that courts cannot conduct the due process inquiry Venezuela requests here. The argument is that courts can consider due process defenses under the FAA; section 1650a does not permit courts to employ FAA defenses; and thus, courts cannot conduct a due process review in an ICSID enforcement action. Dkt. 24 at 16 (citing 9 U.S.C. §§ 10(a), 207 and case law). The Court does not need to, and does not, address this argument because Venezuela has not established that any due process violation occurred.

[8] Venezuela argued in its default and summary judgment briefing that the Court should review the ICSID proceedings under the Fourteenth Amendment's due process standard. *See* Dkt. 20-1 at 13; Dkt. 31 at 12–13. It does not make that argument in the Objections. *See* Dkt. 34.

11

any submitted by Valores or the Maduro government. *Id*. ¶¶ 6–8. After reviewing the briefing, and both Venezuelan and international law, the *ad hoc* committee issued a long and reasoned decision rejecting the Guaidó government's claim. *See generally id.* The *ad hoc* committee then conducted the delayed hearing on the merits of Venezuela's appeal, and later, upheld the award in another lengthy and reasoned decision. *Case Details: ICSID Case No. ARB/13/11*.[9] Venezuela was represented by counsel, acting on its behalf, throughout every step of the arbitration and the annulment proceedings.

Venezuela leans heavily on *Texaco, Inc. v. Pennzoil Co.* and *Cohen v. Bd. of the Univ. of the Dist. of Columbia* for the proposition that "abrogation of the right to pursue an available appeal is a violation of due process." Dkt. 25-1 at 13–16 (discussing *Texaco, Inc. v. Pennzoil Co.*, 626 F. Supp. 250 (S.D.N.Y. 1986), *aff'd as modified and remanded*, 784 F.2d 1133 (2d Cir. 1986), *rev'd*, 481 U.S. 1 (1987) and *Cohen v. Bd. of Trustees of Univ. of D.C.*, 311 F. Supp. 3d 242 (D.D.C. 2018)). Fair enough. And if ICSID had refused to hold an annulment proceeding, Venezuela might have an argument. But that is not what happened. Venezuela had a meaningful appeal during which it was represented by counsel. Throughout that appeal, the *ad hoc* committee acted in accordance with ICSID's procedural rules, allowed Venezuela to be heard, and issued opinions grounding its decisions in domestic and international law. *Texaco* and *Cohen* are irrelevant because ICSID neither denied Venezuela the opportunity to appeal nor erected barriers that rendered the appeals process meaningless.

*Texaco* is helpful, though. A comparison with this case shows why Venezuela's claim fails. In *Texaco*, the Southern District of New York preliminarily enjoined Pennzoil from

---

[9] Available at: https://icsid.worldbank.org/cases/case-database/case-detail?CaseNo=ARB/13/11.

seeking to enforce a multi-billion-dollar judgment it had obtained in Texas against Texaco.[10]  To stay judgment execution pending appeal, Texas rules required Texaco to post a supersedeas bond of more than $12 billion.  *Texaco*, 626 F. Supp. at 257.  This struck the district court as "absurd," and "impractical."  *Id*.  Enforcing the bond requirement would "paralyze" Texaco and render its appeal "meaningless."  *Id*.  That outcome would not only irreparably harm Texaco, it would also cause an, "imminent disruption to the national economy."  *Id*. at 253.  A far cry from the present facts.

### C.  The Maduro Government's Legitimacy Is Not Before the Court

Venezuela further contends that the Court should decline to enforce the award because, "U.S. courts may not give effect to the acts of the illegitimate Maduro regime in any way . . . ."  Dkt. 34 at 15.  "Enforcing an award issued by a court or tribunal that recognized only the Maduro regime," Venezuela argues, would "[enable] plaintiffs to obtain U.S. court enforcement of judgments and awards that no U.S. court would grant."  *Id.*  Therefore, it argues, to enforce the award would be to recognize the Maduro government's participation in the ICSID annulment proceedings.  And because the Court cannot recognize that government, it cannot enforce the award.

To be sure, the identity of a foreign sovereign's representative before a federal court is left to the Executive.  *See Guar. Tr. Co. of New York v. United States*, 304 U.S. 126, 137–38 (1938).  And if lawyers for the Maduro government had attempted to enter notices of

---

[10] A Texas jury had found that Texaco unlawfully beat out Pennzoil in the 1984 battle to buy Getty Oil Co.  The multi-month trial was a battle royale deftly recounted in *The Taking of Getty Oil:  Pennzoil, Texaco, and the Takeover Battle that Made History*, by Steve Coll.  The Court commends the book to the interested reader.  With the "pacing of a novel," it is, "a larger-than-life account of family, greed, and a courtroom showdown between big oil rivals."  *Id.* (back cover).

13

appearances on behalf of Venezuela in *this* proceeding over the objection of the government that the U.S. Executive recognized, the Court would likely reject those notices. But that has not happened. In enforcing the award, the Court is not recognizing any regime as the current official government of Venezuela.

Venezuela relies on Judge Jackson's decision in *OI European Group v. Bolivarian Republic of Venezuela*, Case No. 16-cv-1533, 2019 WL 2185040 (D.D.C. 2019). That case underscores the distinction the Court draws here. There, Judge Jackson considered an ICSID opinion declining to recognize Mr. Hernández in the context of her decision not to recognize the Maduro government *in American court proceedings*. Here, the question is not whether representatives of the Maduro government may proceed in this courtroom but whether the Court has the power to second-guess the ICSID arbitrators' decision to recognize the Maduro government in their own proceedings. It does not.

## IV.     FEES

Valores is entitled to all fees and costs ordered by the annulment committee. On December 21, 2021, the annulment committee issued a decision upholding the award and ordering Venezuela to pay Valores approximately $2.3 million in attorneys' fees and costs stemming from the annulment proceedings. Venezuela asks this Court to exclude this added sum from the award. Dkt. 41 (Joint Status Report) ¶ 5.

Venezuela first contends that the Court should exclude the sum from the award because "Plaintiffs never requested an award of fees and costs associated with the annulment proceeding in their summary judgment briefing." *Id*. The Court finds that argument unpersuasive because the annulment decision was issued *after* the parties completed their summary judgment briefing.

The Court will not penalize Valores for declining to raise costs and fees that had not yet been awarded.

Second, Venezuela argues that Valores cannot claim fees and costs because "Plaintiffs told the Court in the January 21, 2022 Joint Status Report the Parties submitted after the conclusion of the annulment proceeding that 'the final decision of the ICSID Committee does not impact the Parties' position before this Court.'" *Id.* Venezuela takes Valores's prior representation out of context. In the January 21, 2022 Joint Status Report, the parties stated that "[d]ispositive motions have been fully briefed and are pending for the Court's decision (ECF Nos. 24, 25). The final decision of the ICSID Committee does not impact the Parties' positions before this Court." Dkt. 32 ¶ 4. The Court understands that statement to mean that "the final decision of the ICSID Committee does not impact" the merits of the summary judgment briefing. *Id.*

On the merits, Venezuela cites no authority for its suggestion that the award of attorneys' fees and costs by the annulment committee is subject to different principles than those governing the award's enforcement. The Court therefore recognizes the annulment committee's award of attorneys' fees and costs and includes that amount in its final order.

## V.     CONCLUSIONS

For these reasons, the undersigned **GRANTS** Venezuela's Motion to Set Aside Default, **DENIES** Valores's Motion for Default Judgment as moot, **DENIES** Venezuela's Motion for Summary Judgment, and **GRANTS** Valores's Motion for Summary Judgment.

*A separate Order and Judgment consistent with this Opinion will follow.*

Dated:  May 15, 2023

_____
ANA C. REYES
United States District Court Judge